1   Mark McKane, P.C. (SBN 230552)
    KIRKLAND & ELLIS LLP
2   555 California Street, 27th Floor
    San Francisco, CA 94104
3   Tel.: (415) 439-1400
    Fax: (415) 439-1500
4   Email: mark.mckane@kirkland.com

5   Tracie L. Bryant (SBN 287508)
    Gregg F. LoCascio, P.C. (*pro hac vice* pending)
6   Michael A. Glick, P.C. (*pro hac vice* pending)
    Terence J. McCarrick (*pro hac vice* pending)
7   Elizabeth Hedges (*pro hac vice* pending)
    KIRKLAND & ELLIS LLP
8   1301 Pennsylvania Avenue, N.W.
    Washington, D.C. 20004
9   Tel: (202) 389-5000
    Fax: (202) 389-5200
10  Email:   tracie.bryant@kirkland.com
    Email:   glocascio@kirkland.com
11  Email:   michael.glick@kirkland.com
    Email:   tj.mccarrick@kirkland.com
12  Email:   elizabeth.hedges@kirkland.com

13  *Attorneys for Defendant Abbott Laboratories*

14              **UNITED STATES DISTRICT COURT**

15             **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 16   CONDALISA LEGRAND and LARISSA BATES, on behalf of themselves, all others similarly situated, and the general public,<br><br>18                    Plaintiffs,<br><br>19             v.<br><br>20   ABBOTT LABORATORIES,<br><br>21                    Defendant. | CASE NO. 3:22-cv-05815-TSH<br><br>**ABBOTT LABORATORIES' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: Honorable Thomas S. Hixson<br>Hearing Date: February 9, 2023<br>Time: 10:00 a.m.<br>Location: Via Zoom |

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on the 9th day of February 2023, at 10:00 a.m. or as soon thereafter as this Motion may be heard by the Honorable Thomas S. Hixson via Zoom in accordance with the Court's protocols, Abbott Laboratories will, and hereby does, move the Court for an order dismissing the Complaint of Condalisa LeGrand and Larissa Bates, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 9(b).  The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the entire file in this matter, and the arguments of counsel.

DATED:  December 12, 2022

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Tracie L. Bryant*
Tracie L. Bryant

Mark McKane, P.C. (SBN 230552)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Tel.: (415) 439-1400
Washington, D.C. 20004
Email:  mark.mckane@kirkland.com

Tracie L. Bryant (SBN 287508)
Gregg F. LoCascio, P.C. (*pro hac vice* pending)
Michael A. Glick, P.C. (*pro hac vice* pending)
Terence J. McCarrick (*pro hac vice* pending)
Elizabeth Hedges (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-5000 / Fax: (202) 389-5200
Email:  tracie.bryant@kirkland.com
Email:  glocascio@kirkland.com
Email:  michael.glick@kirkland.com
Email:  tj.mccarrick@kirkland.com
Email:  elizabeth.hedges@kirkland.com

*Attorneys for Defendant Abbott Laboratories*

# **TABLE OF CONTENTS**

**Page**

I.    NO REASONABLE CONSUMER WOULD FIND THE CHALLENGED
      STATEMENTS MISLEADING AS A MATTER OF LAW. ............................................. 4

      A.    Ensure®'s Label Truthfully Discloses the Product's Nutrition and Sugar
            Content, Defeating Any Plausible Theory of Falsity. ................................ 6

      B.    Plaintiffs Do Not Allege Facts Showing that Challenged Statements on the
            Ensure® Label Are False or Misleading. ................................................ 9

      C.    Plaintiffs Challenge Vague and Qualified Claims About Quality, Which
            Are Inactionable Puffery. .................................................................... 12

II.   LEGRAND'S STATUTORY CLAIMS SHOULD BE DISMISSED AS TO
      PRODUCTS SHE DID NOT PURCHASE AND STATEMENTS SHE DID NOT
      RELY ON. .................................................................................................... 13

III.  PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW TO THE
      EXTENT THEY DEPEND ON REPRESENTATIONS ABOUT NUTRIENT
      CONTENT. .................................................................................................... 14

IV.   ANY FRAUD-BASED CLAIMS MUST BE DISMISSED FOR FAILURE TO
      COMPLY WITH RULE 9(B). ............................................................................ 17

V.    PLAINTIFFS FAIL TO PLEAD NEGLIGENT MISREPRESENTATION,
      BREACH OF WARRANTY, AND UNJUST ENRICHMENT. ...................................... 19

      A.    New York Negligent Misrepresentation Claims Require a Special
            Relationship, Which Plaintiffs Do Not Allege. ...................................... 19

      B.    Plaintiffs Fail to Plead Warranty Claims Under California Law. ........................ 20

      C.    Plaintiffs' Unjust Enrichment Claims Fail. ............................................ 21

VI.   BATES' CLAIMS MUST BE DISMISSED FOR LACK OF PERSONAL
      JURISDICTION. .............................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005)....................................................................................................19

*Alvarez v. NBTY, Inc.*,
2017 WL 6059159 (S.D. Cal. Dec. 6, 2017).........................................................................23

*Anderson v. Bungee Int'l Mfg. Corp.*,
44 F. Supp. 2d 534 (S.D.N.Y. 1999).......................................................................................12

*Andrade-Heymsfield v. Danone US, Inc.*,
2019 WL 3817948 (S.D. Cal. Aug. 14, 2019).......................................................................13

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ..................................................................................................21

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ....................................................................................................4

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ....................................................................................................4

*Beasley v. Lucky Stores, Inc.*,
400 F. Supp. 3d 942 (N.D. Cal. 2019) ...................................................................................18

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ..............................................................................................4, 5

*Beers v. Mars Wrigley Confectionery US, LLC*,
2022 WL 493555 (S.D.N.Y. Feb. 17, 2022)................................................................5, 10, 21

*Blue Buffalo Co. Ltd. v. Nestlé Purina Petcare Co.*,
2015 WL 3645262 (E.D. Mo. June 10, 2015) ...................................................................11, 12

*Borenkoff v. Buffalo Wild Wings, Inc.*,
2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ...........................................................................21

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
137 S. Ct. 1773 (2017)................................................................................................22, 23, 24

*Brown v. Abbott Laby's, Inc.*,
2011 WL 4496154 (N.D. Ill. Sept. 27, 2011) ........................................................................10

*Brown v. Kerry Inc.*,
2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021)..........................................................6, 17, 18, 22

*Cheslow v. Ghirardelli Chocolate Co.,*
   445 F. Supp. 3d 8 (N.D. Cal. 2020) ...........................................................................5

*Clark v. Perfect Bar, LLC,*
   2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) ............................................................8

*Collishaw v. Coop. Regions of Organic Producer Pools,*
   2022 WL 3290563 (S.D.N.Y. Aug. 11, 2022) .......................................................4, 5

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014) ...................................................................................................22

*Duchimaza v. Niagara Bottling, LLC,*
   --- F. Supp. 3d ---, 2022 WL 3139898 (S.D.N.Y. Aug. 5, 2022) .......................17, 18

*Edmunson v. Procter & Gamble Co.*
   2011 WL 1897625 (S.D. Cal. May 17, 2011) ...........................................................12

*Eidmann v. Walgreen Co.,*
   522 F. Supp. 3d 634 (N.D. Cal. 2021) ......................................................................17

*Fernandez v. Atkins Nutritionals, Inc.,*
   2018 WL 2128450 (S.D. Cal. May 9, 2018) ..............................................................9

*Fink v. Time Warner Cable,*
   714 F.3d 739 (2d Cir. 2013) ........................................................................................5

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,*
   2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) .........................................................24

*Fraker v. KFC Corp.,*
   2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ..........................................................13

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.,*
   905 F.3d 597 (9th Cir. 2018) .....................................................................................22

*Gaines v. Gen. Motors, LLC,*
   2018 WL 3752336 (S.D. Cal. Aug. 7, 2018) ............................................................23

*Gibson v. Al Jazeera Int'l (USA) LLC,*
   2022 WL 16949940 (N.D. Cal. Nov. 14, 2022) ........................................................17

*Hadley v. Kellogg Sales Co.,*
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ....................................................................10

*Hadley v. Kellogg Sales Co.,*
   273 F. Supp. 3d 1052 (N.D. Cal. 2017) ..............................................................12, 16

*Hall v. Sea World Ent., Inc.,*
   2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ............................................................4

*Harris v. Mondelēz Glob. LLC*,
    2020 WL 4336390 (E.D.N.Y. July 28, 2020) ........................................................11

*Health & Res. Ctr., Ltd. v. Promologics, Inc.*,
    2018 WL 3474444 (N.D. Ill. July 19, 2018) .........................................................24

*Horowitz v. AT&T Inc.*,
    2018 WL 1942525 (D.N.J. Apr. 25, 2018) ...........................................................23

*Izquierdo v. Mondelez Int'l, Inc.*,
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .............................................17, 18, 19

*Kahn v. FCA US LLC*,
    2019 WL 3955386 (C.D. Cal. Aug. 2, 2019) ........................................................21

*Kane v. Chobani, Inc.*,
    2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ....................................................14

*Kennedy v. Mondelēz Glob. LLC*,
    2020 WL 4006197 (E.D.N.Y. July 10, 2020) .......................................................11

*Krommenhock v. Post Foods, LLC*,
    255 F. Supp. 3d 938 (N.D. Cal. 2017) ....................................................16, 17, 20

*La Fosse v. Sanderson Farms, Inc.*,
    2020 WL 3617786 (N.D. Cal. July 2, 2020) ........................................................24

*Lavie v. Procter & Gamble Co.*,
    105 Cal.App.4th 496 (2003) ..................................................................................5

*Lilly v. ConAgra Foods, Inc.*,
    743 F.3d 662 (9th Cir. 2014) .................................................................................9

*Love v. Assoc. Newspapers, Ltd.*,
    611 F.3d 601 (9th Cir. 2010) .................................................................................4

*Mazella v. Coca-Cola Co.*,
    548 F. Supp. 3d 349 (S.D.N.Y. 2021) ...................................................................6

*McMorrow v. Mondelez Int'l, Inc.*,
    2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) ............................................. *passim*

*Melendez v. ONE Brands, LLC*,
    2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) .....................................................5, 8

*Morgan v. Wallaby Yogurt Co., Inc.*,
    2013 WL 5514563 (N.D. Cal. Oct. 4, 2013) ..........................................................8

*Morris v. Walmart Inc.*,
    2020 WL 5645812 (N.D. Ala. Sept. 22, 2020) ...............................................10, 11

*Myers v. Wakefern Food Corp.*,
    2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ...................................................19

*Nathan v. Vitamin Shoppe, Inc.*,
    2018 WL 828135 (S.D. Cal. Feb. 12, 2018) ..................................................20

*Otis-Wisher v. Medtronic, Inc.*,
    616 F. App'x 433 (2d Cir. 2015) ................................................................14

*Parks Sch. of Bus., Inc. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995) .......................................................................4

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ......................................................................4

*Pilgrim v. Gen. Motors Co.*,
    --- F. Supp. 3d ---, 2019 WL 5779892 (C.D. Cal. Oct. 4, 2019) .................23

*Reed v. NBTY, Inc.*,
    2014 WL 12284044 (C.D. Cal. Nov. 18, 2014).............................................14

*Samet v. Procter & Gamble Co.*,
    2013 WL 3124647 (N.D. Cal. June 18, 2013) ................................................3

*In re Samsung Galaxy Smartphone Mktg. & Sales Practs. Litig.*,
    2018 WL 1576457 (N.D. Cal. Mar. 30, 2018)................................22, 23, 24

*Sarr v. BEF Foods, Inc.*,
    2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) .................................................19

*Simpson v. Kroger Corp.*,
    219 Cal.App.4th 1352 (2013) ................................................................5, 13

*Solak v. Hain Celestial Grp., Inc.*,
    2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018)........................................9, 10, 12

*Spurck v. Demet's Candy Co., LLC*,
    2022 WL 2971957 (S.D.N.Y. July 27, 2022) ...............................................19

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
    992 F. Supp. 2d 962 (C.D. Cal. 2014) ........................................................21

*Thomas v. Costco Wholesale Corp.*,
    2014 WL 5872808 (N.D. Cal. Nov. 12, 2014) .............................................20

*Tomek v. Apple Inc.*,
    636 F. App'x 712 (9th Cir. 2016) ...............................................................18

*Truxel v. Gen. Mills Sales, Inc.*,
    2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ....................................6, 8, 12

*Turnipseed v. Simply Orange Juice Co.*,
    2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ...........................................................18, 19

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021) ............................................................................19

*VanCleave v. Abbott Laby's*,
    No. 19CV345045 (Cal. Super. Dec. 23, 2019) ...............................................10, 11, 17

*Vaughn v. Bay Envtl. Mgmt., Inc.*,
    567 F.3d 1021 (9th Cir. 2009) ........................................................................................4

*Watkins v. MGA Ent., Inc.*,
    550 F. Supp. 3d 815 (N.D. Cal. 2021) ....................................................................13, 17

*Weber v. Allergan, Inc.*,
    940 F.3d 1106 (9th Cir. 2019) ......................................................................................14

*Weiss v. Trader Joe's Co.*,
    2018 WL 6340758 (C.D. Cal. Nov. 20, 2018) ...............................................10, 11, 12

*Workman v. Plum Inc.*,
    141 F. Supp. 3d 1032 (N.D. Cal. 2015) ..........................................................................9

**Rules**

Fed. R. Civ. P. 9(b) ..........................................................................................2, 17, 18

Fed. R. Civ. P. 12(b)(2) .........................................................................................4, 22

Fed. R. Civ. P. 12(b)(6) ................................................................................................4

**Statutes**

21 U.S.C. § 343-l(a)(5) ...............................................................................................14

21 U.S.C. § 343(r)(l) ..................................................................................................14

Cal. Bus. & Prof. Code § 17203 .................................................................................14

California Consumers Legal Remedies Act.................................................... *passim*

California False Advertising Law .................................................................... *passim*

Food, Drug, and Cosmetic Act .................................................................2, 14, 15, 16

N.Y. Gen. Bus. Law § 349...........................................................................................21

N.Y. Gen. Bus. Law § 350...........................................................................................21

California Unfair Competition Law................................................................. *passim*

**Regulations**

21 C.F.R. § 101.13(b)(2)(ii)...................................................................................................14

21 C.F.R. § 101.65(d)(1)(ii)...................................................................................................14

21 C.F.R. § 101.65(d)(l)........................................................................................................15

## INTRODUCTION

This is the latest in a series of allegedly-false labeling lawsuits brought by Plaintiffs' counsel targeting the sugar content of food products. In this case, Plaintiffs stitch together various statements from the front, side, and back of the label for Ensure® nutrition drinks and shakes produced by Abbott Laboratories ("Abbott"), claiming that—taken separately and together—those statements communicate the message that Ensure® is "balanced, nutritious, and healthy." *See* Compl. ¶ 2. According to Plaintiffs, this message is false and misleading because there is (in their view) a "vast body of scientific evidence demonstrating that consuming sugar sweetened beverages harms rather than supports overall health." *Id.* Plaintiffs' theory fails as a matter of law and common sense. ***Not one*** of the labeling statements Plaintiffs challenge as supposedly false or misleading actually says anything about sugar. To the extent Plaintiffs (or any reasonable consumer) had questions or doubts about Ensure®'s sugar content, they could readily consult the federally-mandated Nutrition Facts Panel on each bottle of Ensure®, which plainly discloses the sugar content, and which has been providing consumers with nutrition information for decades. Tellingly, Plaintiffs do not allege they were unaware of the information disclosed on the Nutrition Facts Panel. Instead, they allege, based upon supposed (and inconsistent) expert recommendations about appropriate sugar levels, that Ensure® was not as "healthy" as Plaintiffs believed it to be. Yet Plaintiffs specifically disclaim having expectations regarding sugar levels or any specialized knowledge about what levels may or may not impact "health." As a result, Plaintiffs cannot parlay subjective and generalized impressions of "healthiness" into a claim premised on non-existent expectations about sugar.

These compounding legal defects compel dismissal of all of Plaintiffs' claims, which also should be dismissed for additional independent reasons:

***No misrepresentations or omissions.*** Plaintiffs' claims under California and New York statutory and common law fail because they do not identify any material information that Abbott omitted from the labels of the Ensure® products or any false or misleading statements within the labels. The best Plaintiffs can muster is a collection of vague and general statements about quality, such as "Complete, Balanced Nutrition," which are non-actionable puffery of the sort courts routinely reject as a basis for false labeling claims. The remainder of the challenged labeling statements are either factually true or lack affirmative

1  factual content, and because Abbott discloses the sugar content of each challenged product on its label,

2  Plaintiffs cannot plausibly allege that they were uninformed about it for the reasons discussed above.

3  **No statutory standing.**  The named Plaintiffs allege that they bought one type of Ensure® product

4  apiece at some unspecified point during the class period.  Yet they seek to represent a class of consumers

5  who purchased any of six Ensure® products, including products containing a number of label statements

6  to which Plaintiffs do not allege they were exposed.  Under California's consumer protection statutes, a

7  plaintiff has standing to sue only as to products that she was exposed to and representations that she relied

8  on.  California plaintiff LeGrand's claims under the Consumers Legal Remedies Act ("CLRA"), Unfair

9  Competition Law ("UCL"), and False Advertising Law ("FAL") should be dismissed as to products and

10  representations she did not personally encounter.

11  **Preemption of nutrient content claims.**  The federal Food, Drug, and Cosmetic Act's (FDCA)

12  provisions expressly preempt state law purporting to regulate "nutrient content" claims on the labels of

13  products like Ensure®.  This means that claims made in connection or association with a statement about

14  a nutrient in a product—*e.g.*, the nature or amount of protein, fiber, minerals, vitamins, or other nutrients—

15  cannot form the basis of a state-based false labeling claim.  Plaintiffs' claims regarding a significant

16  number of Abbott's representations run headlong into the FDCA, because the challenged label statements

17  appear in the context of descriptions of Ensure®'s nutritional content.  Therefore, any state-law claims

18  based on those statements are preempted.

19  **Failure to satisfy Rule 9(b).**  Plaintiffs do not meet Federal Rule of Civil Procedure 9(b)'s

20  heightened pleading standard for fraud-based claims.  They fail to allege the circumstances of their alleged

21  product purchases with particularity, leaving out critical details such as the dates of purchase and amounts

22  paid for the products.  Equally problematic, Plaintiffs do not plead even circumstantial facts regarding

23  Abbott's alleged fraudulent intent.

24  **Failure to plead unjust enrichment, breach of warranties, or negligent misrepresentation.**  In

25  addition to the broad-based problems with Plaintiffs' allegations of false or misleading labeling, Plaintiffs

26  fail to plead required elements of their New York negligent misrepresentation claim, California breach of

27  express and implied warranty claims, and unjust enrichment claims under the laws of both states.

28

***No jurisdiction over out-of-state named plaintiff.*** Finally, at a minimum, New York plaintiff Bates' claims must be dismissed for lack of personal jurisdiction. Her alleged purchases of Ensure® in New York have no nexus to the California forum she has selected, and she cannot piggyback on claims of California purchasers properly brought in this Court.

The Court should dismiss the Complaint in full.

## BACKGROUND

Abbott is a healthcare company that manufactures, markets, and distributes nutrition shakes and drinks under its Ensure® brand. *See* Compl. ¶ 1. To help provide nutrition, Ensure®—which comes in multiple product lines in different sizes and flavors—contains numerous vitamins and minerals, as well as protein, fat, and carbohydrates like sugar, all of which are expressly disclosed on Ensure®'s label. *See id.* ¶ 1 & n.1; Decl. of M. Glick in Supp. of Abbott's Mot. to Dismiss Pls.' Compl., Exs. 2–7.[1] Because of their nutritional value, Abbott accurately describes certain Ensure® products as "nutrition shake[s]," "drink[s]" or "powder[s]," states that they provide "Complete, Balanced Nutrition," and represents that Ensure® offers various benefits, such as Zinc; Vitamins A, C, and E, and Selenium for "Immune" support; Protein for "Muscle" growth; "Plant-Based Omega-3 ALA" for "Heart"; Fiber for "Digestion"; and "Vitamin D and Calcium" for "Bone" growth. *See* Compl. ¶¶ 13, 15, 18, 19, 22, 23, 27, 30, 33; Exs. 2–7. Ensure® is also described as the "#1 Doctor Recommended Brand." *See* Compl. ¶¶ 15, 22, 27, 30; Exs. 2–7. Nothing on Ensure®'s front label markets the products as "healthy," nor does the label make any reference to the product's sugar content, apart from truthfully disclosing the amount of sugar in the product on the federally-mandated Nutrition Facts Panel. *See* Exs. 2–7.

Notwithstanding Abbott's sugar disclosures, Plaintiffs bring various causes of action under California and New York's consumer protection laws (Counts I-III, VI-VII) and for breach of warranty (Counts IV-V), unjust enrichment (Count VIII), negligent misrepresentation (Count IX), and intentional misrepresentation (Count X). Plaintiffs do not allege when they specifically purchased Ensure®, only

---

[1]    The Court may take judicial notice of the challenged products' labels because "neither party objects to the authenticity of the labels and the labels are central to the [Plaintiffs'] complaint." *Samet v. Procter & Gamble Co.*, 2013 WL 3124647, at *2 n.21 (N.D. Cal. June 18, 2013).

that they purchased some products "at different times during the [c]lass [p]eriod."  Compl. ¶¶ 106, 108.

Nor do Plaintiffs claim that: (i) they purchased **all** of the different Ensure® products referenced in the

Complaint, *id.* ¶ 1 n.1; (ii) they saw, or relied upon, **all** of the different statements described in the

Complaint in purchasing the Ensure® products that they did buy, *id.* ¶¶ 106, 108; or (iii) they were

unaware of the sugar disclosures on Ensure®'s Nutrition Facts Panel.  Abbott now moves to dismiss.

## LEGAL STANDARD

**Rule 12(b)(2)**: When a defendant challenges personal jurisdiction pursuant to Rule 12(b)(2), the

plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant.  *Pebble*

*Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  The plaintiff must "make a prima facie showing

of jurisdictional facts" to withstand the motion to dismiss, *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601,

608 (9th Cir. 2010), which requires that she "demonstrate facts that if true would support jurisdiction over

the defendant," *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

**Rule 12(b)(6)**: A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims

alleged in the Complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the

absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*,

901 F.2d 696, 699 (9th Cir. 1990).  As relevant here, a dismissal based on a lack of "statutory standing"—

that is, for failing to plead the required elements to establish standing under a statute—"is properly viewed

as a dismissal for failure to state a claim" under Rule 12(b)(6).  *See Vaughn v. Bay Env't Mgmt., Inc.*, 567

F.3d 1021, 1024 (9th Cir. 2009).

## ARGUMENT

**I.     NO REASONABLE CONSUMER WOULD FIND THE CHALLENGED STATEMENTS MISLEADING AS A MATTER OF LAW.**

All of Plaintiffs' claims fail because no reasonable consumer would find Ensure®'s label false or

misleading.  Plaintiffs alleging false labeling claims under California or New York law must "plausibly

allege that a significant portion of the general consuming public or of targeted customers, acting

reasonably in the circumstances, could be misled."  *Collishaw v. Coop. Regions of Organic Producer*

*Pools*, 2022 WL 3290563, at *4 (S.D.N.Y. Aug. 11, 2022) (citations omitted); *see Becerra v. Dr*

1   *Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–29 (9th Cir. 2019) ("[T]he reasonable consumer standard

2   requires a probability 'that a significant portion of the general consuming public or of targeted consumers,

3   acting reasonably in the circumstances, could be misled.'"); *Fink v. Time Warner Cable*, 714 F.3d 739,

4   741 (2d Cir. 2013) ("Plaintiffs must establish that [the] allegedly deceptive advertisements were likely to

5   mislead a reasonable consumer acting reasonably under the circumstances."). This "reasonable

6   consumer" standard "requires more than a 'mere possibility that [an allegedly misleading label] might

7   conceivably be misunderstood by some few consumers viewing it in an unreasonable matter.'" *Becerra*,

8   945 F.3d 1225 at 1228 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 507–08 (2003));

9   *see Beers v. Mars Wrigley Confectionery US, LLC*, 2022 WL 493555, at *3 (S.D.N.Y. Feb. 17, 2022)

10  ("Plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some

11  few consumers." (citation omitted)). "[C]ontext is crucial" "in determining whether a reasonable

12  consumer would have been misled by a particular advertisement," and "the presence of a disclaimer or

13  similar clarifying language may defeat a claim of deception." *See Fink*, 714 F.3d at 742. "Such

14  clarification can come from an area of the packaging where 'consumers are trained to look' for such

15  information, such as the ingredients panel." *Melendez v. ONE Brands, LLC*, 2020 WL 1283793, at *6

16  (E.D.N.Y. Mar. 16, 2020) (citation omitted); *see, e.g.*, *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp.

17  3d 8, 20 (N.D. Cal. 2020) ("[W]here the actual ingredients are disclosed, a plaintiff may not ignore the

18  ingredient list."). In other words, there can be no false labeling claim when an allegedly deceptive practice

19  is disclosed.

20      Even at the pleading stage, "it is well settled that a court may determine as a matter of law that an

21  allegedly deceptive advertisement would not have misled a reasonable consumer." *Collishaw*, 2022 WL

22  3290563, at *4 (citations and internal quotation marks omitted); *see also Fink*, 714 F.3d at 741 (same);

23  *Simpson v. Kroger Corp.*, 219 Cal.App.4th 1352, 1370 (2013) (dismissing FAL, UCL, and CLRA claims

24  where the "plaintiff has not, and as a matter of law cannot, allege that a reasonable consumer would have

25  been misle[d] by the labels here"). That is the conclusion the Court should reach in this case: nothing on

26  Ensure®'s labeling is false or misleading, and its sugar content is fully and truthfully disclosed.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A.  Ensure®'s Label Truthfully Discloses the Product's Nutrition and Sugar Content, Defeating Any Plausible Theory of Falsity.**

Plaintiffs' primary theory proceeds from the mistaken premise that, even if viewed by consumers, the fact that the amount of sugar is disclosed on each product's Nutrition Facts Panel is "not sufficient to allow consumers to make accurate assessments of the healthfulness of foods and beverages." Compl. ¶ 83; *see also id.* ¶¶ 82–89.  This sweeping theory of liability would have the effect of rendering valuable ingredient information disclosed on federally-mandated Nutrition Facts Panels a dead letter.  Worse, Plaintiffs' view of the law would absolve consumers of any responsibility for self-serving misinterpretations of product labels, no matter how unreasonable and regardless of the level of information disclosed on them.  Nothing in law or logic requires that result, which would destabilize false labeling law and mark a significant departure from existing case law.  Plaintiffs' claims should be dismissed.

"[A]s a matter of law, a reasonable consumer cannot be misled about a food product's purported 'excessive' sugar content where the food's label plainly discloses the sugar content." *Truxel v. Gen. Mills Sales, Inc.*, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019); *see also, e.g.*, *Brown v. Kerry Inc.*, 2021 WL 5446007, at *6 (S.D.N.Y. Nov. 22, 2021) (dismissing New York statutory and common law claims based on sale of "Slightly Sweet" chai tea latte where "the Product's Nutrition Fact Panel lists the sugar and calorie contents of the beverage"), *report and recommendation adopted*, 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022); *Mazella v. Coca-Cola Co.*, 548 F. Supp. 3d 349, 357 (S.D.N.Y. 2021) (dismissing New York General Business Law ("GBL"), fraud, and negligent misrepresentation claims and reasoning that "because the Product discloses the number of calories and amount of sugar on the label, a reasonable consumer would not assume the definition of 'Slightly Sweet' is 'low sugar' or 'low calories'").  Plaintiffs therefore cannot plead viable claims based on Ensure®'s sugar content, as that content is truthfully disclosed and Plaintiffs nowhere allege that they failed to read the Nutrition Facts Panel.  *See* Compl. ¶¶ 107, 109–10; Exs. 2–7.

It is no answer for Plaintiffs to say that, because they—or consumers more generally—"[are] not familiar with the science," they "believe that [Ensure®] provide[s] the represented benefits notwithstanding their added sugar content."  *See* Compl. ¶ 81; *see also id.* ¶¶ 82–89.  Indeed, this allegation only brings into view the fundamental mismatch between the challenged statements and

Plaintiffs' theory of falsity. Plaintiffs claim that Ensure®'s label creates the misimpression that the product is "healthy," when it is allegedly not because of the product's sugar levels. *See, e.g.*, *id.* ¶ 2. At the same time, Plaintiffs maintain that consumers have "low health literacy" and "difficulty accurately assessing the healthfulness of foods and beverages," in part because "[t]he average consumer is not intimately familiar with the scientific evidence regarding the health effects of consuming added sugar." *See id.* ¶¶ 80, 86–87. This is an irreconcilable contradiction that falls under its own logic and cannot support a false advertising claim. A consumer cannot claim that a label is false and misleading because her subjective and *generalized* expectations about a product—*i.e.*, that it is "healthy" or "promotes general health and wellness," *e.g.*, *id.* ¶ 176—are purportedly inconsistent with *specific*, *expert-level* information regarding the product's potential health effects that she alleges consumers like herself do not possess and cannot understand. Indeed, the upshot of Plaintiffs' argument is that it would make no difference even if Ensure® disclosed the product's sugar content in large font on the front label. Under Plaintiffs' theory, there is no logical reason why a front-label sugar disclosure would be any more effective than a back-label disclosure in curing a purported deception if, as Plaintiffs say, consumers are unable to understand the import of ingredient disclosures. At bottom, Plaintiffs' argument therefore is that ingredient disclosures are incapable of curing alleged deception *regardless* of wherever those disclosures appear.

Here, Plaintiffs specifically allege that consumers have no expectation whatsoever about: (i) "the extent to which consuming high amounts of added sugar . . . detrimentally affects overall health" or more specifically "immune, digestive, and heart health"; or (ii) "what amount of free sugar might have such an effect." *Id.* ¶ 80. Taking these allegations as true, then, there is no meaningful nexus between Plaintiffs' expectations about Ensure® and how they were purportedly harmed, *i.e.*, about alleged health effects that they have no ability to judge one way or the other. Plaintiffs cannot use general impressions that a product is "healthy"—or irrelevant proposed FDA guidance about the use of the term "healthy," *see id.* ¶¶ 67, 77—a claim nowhere found on Ensure® labels—to create a theory of falsity based on specialized knowledge that neither Plaintiff purports to have (and, in fact, disclaims). Indeed, neither Plaintiff even alleges that sugar was material to their purchasing decisions, let alone that they understood the relevant nutrition science. For this reason alone, Plaintiffs' claims must be dismissed.

Unsurprisingly, Plaintiffs' same theory about "healthy" claims and sugar content has been rejected by federal courts in this district (and others) because ingredient disclosures enable consumers to judge for themselves whether a product is healthy.  In *Clark v. Perfect Bar, LLC*, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018), *aff'd*, 816 F. App'x (9th Cir. 2020), plaintiffs (represented by the same counsel bringing this lawsuit) alleged that the packaging for defendant's nutrition bars "led them to believe that the bars would be 'healthy' when . . . added sugar rendered them unhealthy or, in the alternative, less healthy from what they otherwise had believed."  *Id.* at *1.  The district court rejected that theory, calling it "untenable." *Id.*  The court explained:

> The actual ingredients were fully disclosed.  Reasonable purchasers could decide for themselves how healthy or not the sugar content would be.  No consumer, on notice of the actual ingredients described on the packing including honey and sugar, could reasonably overestimate the health benefits of the bar merely because the packaging elsewhere refers to it as a health bar and describes its recipe as having been handed down from a health-nut parent.  The honey/sugar content was properly disclosed—that is the end of it—period.

*Id.*

Other courts have reached the same conclusion.  In *Truxel v. General Mills Sales*, a case recently decided in this District that involved some of the same plaintiffs' counsel as here, the complaint alleged deceptive advertising claims under California law based on General Mills' marketing of cereals and other products with "health and wellness claims" despite their added sugar content.  2019 WL 3940956, at *1. Similar to Plaintiffs here, the *Truxel* plaintiffs alleged that they purchased the products while "unaware of the extent to which consuming high levels of added sugar in any form adversely affect[s] blood sugar." *Id*.  The court dismissed the complaint, holding that "the actual ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own conclusions about whether or not the sugar content was healthy for them."  *Id*. at *4; *see id.* ("Plaintiffs cannot plausibly claim to be misled about the sugar content of their cereal purchases because Defendant provided them with all truthful and required objective facts about its products."); *Morgan v. Wallaby Yogurt Co., Inc.*, 2013 WL 5514563, at *8 (N.D. Cal. Oct. 4, 2013) ("If a reasonable consumer was concerned about sugar content, he or she can see how much sugar is in [the] product next to the ingredient list."); *see also Melendez*, 2020 WL 1283793, at *3 ("The ONE Bars' carbohydrate and caloric contents are contained in the mandatory nutrition facts panel, which is 'exactly the spot consumers are trained to look' for such information . . . . [N]o reasonable

consumer could have been misled[.]" (citation omitted)); *Solak v. Hain Celestial Grp., Inc.*, 2018 WL 1870474, at *5 (N.D.N.Y. Apr. 17, 2018) ("[T]he list of ingredients included on the Packaging makes abundantly clear that the Product contains only processed derivatives of the pictured vegetables . . . . It therefore strains credulity that any consumer would honestly conclude that the Product contains any non-processed vegetables.").

The outcomes of these cases make sense: for decades, the FDA has mandated that a Nutrition Facts Panel be included on virtually each and every food product. *See Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014) (observing that Congress enacted the Nutrition Labeling and Education Act in 1990, "which established uniform food labeling requirements, including the familiar and ubiquitous Nutrition Facts Panel found on most food packages"); *see also Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 2128450, at *4 (S.D. Cal. May 9, 2018) (describing "the familiar 'nutrition facts' box found on food labels across the country"). To the extent a consumer was legitimately concerned about sugar, she would know precisely where to look for such information—particularly when no other statements on the label make any representation about sugar whatsoever. "Every *reasonable* shopper knows that the devil is in the details." *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (emphasis added). The Court need not credit Plaintiffs' apparent unwillingness to engage with the Nutrition Facts Panel on Ensure®'s label (which appears directly beside a number of the challenged statements) in order to confirm whether their subjective understanding as to the product's sugar content was in fact correct.

### B. Plaintiffs Do Not Allege Facts Showing that Challenged Statements on the Ensure® Label Are False or Misleading.

Even setting aside Ensure®'s sugar disclosures, Plaintiffs' claims fail because the challenged statements are not false or misleading, on their face or by implication:

***First***, Plaintiffs' challenge to the statement "#1 Doctor Recommended Brand" fails because the statement is indisputably true. Plaintiffs never once contend that the statement is not literally true—*i.e.*, they do not claim that doctors recommend another brand of nutrition drink more often than they recommend Ensure®—but instead argue that the "#1 Doctor Recommended Brand" statement is misleading because it "materially reinforces and lends credibility" to the notion that Ensure® is "healthy, effective at providing [ ] claimed benefits, and backed by scientific evidence." Compl. ¶ 15. This

challenge fails.  In rejecting a nearly identical challenge to the marketing of PediaSure products as the "#1 Pediatrician Recommended Brand," a California state court in *VanCleave v. Abbott Laboratories*, No. 19CV345045 (Cal. Super. Dec. 23, 2019), explained that the plaintiffs were "read[ing] more into the statement than what is actually stated" in suggesting that it implied widespread pediatrician endorsement of the health benefits of the product.  Because the plaintiff in *VanCleave* did "not allege the statement [was] false or incorrect," her challenge to the statement could be dismissed on the pleadings.  Order re Demurrer to Pl.'s Compl. & Alternative Mot. to Strike at 7.  So too here: courts regularly dismiss false labeling challenges in circumstances like these, where there is no allegation that a statement is false.  *See also, e.g.*, *Brown v. Abbott Lab'y's, Inc.*, 2011 WL 4496154, at *4 n.3 (N.D. Ill. Sept. 27, 2011) (dismissing challenge to statement "# 1 brand fed in hospitals" on infant formula, because that statement is "not even arguably misleading"); *Beers*, 2022 WL 493555, at *3 (challenge to "Milk Chocolate" description on label failed "because Plaintiff concedes that the predominant ingredient in the Product's coating is milk chocolate ... and because no reasonable consumer would understand the representations on the front label to communicate that the product contained only milk chocolate"); *Weiss v. Trader Joe's Co.*, 2018 WL 6340758, at *5 (C.D. Cal. Nov. 20, 2018) (dismissing allegation that "ionized to achieve the perfect balance" was misleading where "the Water's label does not claim that there are any health benefits from any particular internal pH balance"), *aff'd*, 838 F. App'x 302 (9th Cir. 2021); *Solak*, 2018 WL 1870474, at *3 (dismissing claims where the "label simply presents the consumer with a factually true statement— that the Straws are somehow derived from vegetable-based products"); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1093 (N.D. Cal. 2017) (*Hadley I*) (dismissing claims where "the statement 'MADE WITH Real Fruit' is a factually true statement" and "Plaintiff does not contest that it is factually true that the [defendant's products] are made with real fruit").  Plaintiffs' challenge to the statement "#1 Doctor Recommended Brand" therefore should be dismissed.

**Second**, the statement "With Nutrients for Immune System Support" is also true, and Plaintiffs offer no reason to believe a reasonable consumer would believe it to be misleading.  Plaintiffs do not allege, for instance, that Ensure® does ***not*** contain nutrients for immune system support, which again dooms their claims.  In *Morris v. Walmart Inc.*, 2020 WL 5645812 (N.D. Ala. Sept. 22, 2020), plaintiffs challenged labels for Walmart's "Parent's Choice Pediatric Shake," including statements substantially

10

similar to those at issue here: "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow." *Id.* at *1, 5. In dismissing the case, the district court explained that "[t]he complaint does not claim that the shakes are completely devoid of nutritional value, which would render the labels false and misleading. Nor does the complaint explain in any detail how the shakes fail to provide balanced nutrition or nutrition to help kids grow." *Id.* at *5. Although the *Morris* plaintiffs alleged that high sugar content and "empty calories" prevented the shakes from achieving those goals, the court reasoned that "[t]he relevant question [was] not whether the shakes are the healthiest delivery mechanism for the vitamins and minerals they contain," but whether they provided ***any*** nutrition to help children grow, as the label stated. *Id.* Because "large amounts of sugar and empty calories d[id] not necessarily prevent the shakes from providing vitamins and minerals to help children thrive"—as Walmart accurately represented—the court held that the plaintiffs failed to allege falsity, and dismissed their claims. *Id.*[2] Other courts have reached the same result in analogous circumstances. *See, e.g.*, *Harris v. Mondelēz Glob. LLC*, 2020 WL 4336390, at *2 (E.D.N.Y. July 28, 2020) (dismissing allegation that "Always Made With Real Cocoa" claim was misleading on Oreos, because "[p]laintiffs do not dispute that the challenged products are in fact made with cocoa, which is fatal to their case"); *Kennedy v. Mondelēz Glob. LLC*, 2020 WL 4006197, at *12 (E.D.N.Y. July 10, 2020) (holding that "the grahams are 'made with real honey' is a factually true statement about the product"); *Weiss*, 2018 WL 6340758, at *4 (dismissing claims where "[t]he label states that the Water 'hydrates,' and Plaintiff does not dispute that fact"). Any challenge to the statement "With Nutrients for Immune System Support" thus fails as a matter of law.

**Third**, Plaintiffs' challenges to statements lacking any factual content fail. For example, Plaintiffs rely on a smattering of statements, such as "Discover More at Ensure.Com," "Learn About Ensure Complete Nutrition and Benefits," and "Chat Live with a Registered Dietitian About Nutrition." *See* Compl. ¶ 18. None of these statements purport to describe the product at all, and instead are instructions

---

[2] Although the state court in *VanCleave* reached a different result with respect to certain challenged statements on PediaSure's label at the pleading stage, including "Complete, Balanced Nutrition" and "Nutrition to Help Kids Grow," this result is, respectfully, an outlier, as federal courts have repeatedly rejected false labeling challenges to similar statements. *See, e.g.*, *Morris*, 2020 WL 5645812, at *5 (rejecting challenge to nutrition drink label statements "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow"); *Blue Buffalo Co. Ltd. v. Nestlé Purina Petcare Co.*, 2015 WL 3645262 (E.D. Mo. June 10, 2015) (rejecting challenge to "complete" and "balanced" nutrition statements).

for how customers can learn more about the product.  Plaintiffs allege no theory under which such statements can support a false labeling claim, and any claims based on them should be dismissed.

**C.      Plaintiffs Challenge Vague and Qualified Claims About Quality, Which Are Inactionable Puffery.**

1.      Several Challenged Statements Are Too Vague to Support a Claim.

Under both California and New York law, "[g]eneralized, vague, [or] unspecified" statements cannot support a false advertising claim.  *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1081 (N.D. Cal. 2017) (*Hadley II*).  Yet Plaintiffs rest several of their claims on such statements—in particular, the phrase "Complete, Balanced Nutrition" and all variations on that phrase; the adjective "Complete;" and descriptions of the products as "Advanced" and "most advanced."  Compl. ¶¶ 15, 18, 22–24, 27, 33, 170. The modifier "Complete," which is a component of several statements challenged by Plaintiffs, is a textbook example of puffery that cannot support a false labeling claim.  In *Blue Buffalo Co. Ltd. v. Nestlé Purina Petcare Co.*, 2015 WL 3645262 (E.D. Mo. June 10, 2015), the court rejected a challenge virtually identical to Plaintiffs' here, holding that "whether something is complete or balanced nutrition is merely an opinion about quality and is not capable of being proven true or false."  *Id.* at *10.  This same logic has led courts to dismiss claims premised on descriptions of a product as "nutritious," "superior," and "premium."  *See, e.g.*, *Truxel*, 2019 WL 3940956, at *2 ("nutritious, long-lasting energy" is "non-actionable puffery"); *Solak*, 2018 Wl 1870474, at *6 ("smart and wholesome" is not "a factual representation upon which a consumer might rely"); *Weiss*, 2018 WL 6340758, at *4 (claims that product would "refresh" and "satisfy" were puffery); *Hadley II*, 273 F. Supp. 3d at 1084 ("positively nutritious" and "unbelievably nutritious" are too general to be deceptive); *Edmunson v. Procter & Gamble Co.*, 2011 WL 1897625, at *3 (S.D. Cal. May 17, 2011) ("superior" is "subjective representation[]," not objectively verifiable fact); *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999) (advertising that a product was "Premium Quality" was puffery and not actionable for a breach of express warranty claim).  Because descriptions of Ensure® as "advanced" or "complete" are non-quantifiable, vague statements, they cannot form the basis of Plaintiffs' claims under California or New York law.

2.     <u>Qualified Statements Cannot Support Plaintiffs' Claims.</u>

In addition to the broad, qualitative statements that are puffery, Plaintiffs challenge several qualified representations about potential uses of Ensure®.  In particular, they challenge statements such as "most advanced nutritional product, designed to ***help*** rebuild your strength and energy from the inside, with an All-in-One blend to support your health," and "[r]ecommend[s] 2 bottles per day as ***part*** of a healthy diet."  *E.g.*, Compl. ¶¶ 1, 22–23 (emphases added).  Courts regularly reject these sorts of qualified statements as the basis for false labeling claims because they are incapable of measurement.  *See, e.g.*, *McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022, at *11, *13 (S.D. Cal. Aug. 17, 2018) (dismissing claims based on "part of a balanced breakfast" as "general and vague" and noting the statements were "immeasurable because [they were] dependent on the other components of the consumer's" diet); *Fraker v. KFC Corp.*, 2007 WL 1296571, at *3 (S.D. Cal. Apr. 30, 2007) (dismissing claims based on "You can enjoy 'fast food' as part of a sensible balanced diet"); *Simpson*, 219 Cal.App.4th at 1371 (where advertising uses "qualifying language," it is not actionable).  Such statements do not constitute factual representations about Ensure® and are limited on their face.  To the extent Plaintiffs' claims rest on these qualified descriptions, they should be rejected.

## II.     **LEGRAND'S STATUTORY CLAIMS SHOULD BE DISMISSED AS TO PRODUCTS SHE DID NOT PURCHASE AND STATEMENTS SHE DID NOT RELY ON.**

Although her allegations are far more sprawling, LeGrand alleges exposure to only ***one*** of the products identified in the Complaint and fewer than half a dozen variations of the challenged statements: she alleges that she purchased <u>Ensure® Original Nutrition Shakes</u> and relied on the representations "<u>nutrition shake</u>," "<u>Complete, Balanced Nutrition</u>," "<u>Complete, Balanced Nutrition for everyday health</u>," and "<u>Doctor Recommended</u>."  Compl. ¶ 107.  Her UCL, CLRA, and FAL claims related to ***other*** challenged statements and ***other*** products (*i.e.*, Ensure® Complete Nutrition Shake, Ensure® Enlive Advanced Nutrition Shake, Ensure® Compact Therapeutic Nutrition Shake, Ensure® Clear Nutrition Drink, and Ensure® Original Nutrition Powder) therefore must be dismissed for lack of standing.  *See Andrade-Heymsfield v. Danone US, Inc.*, 2019 WL 3817948, at *2 (S.D. Cal. Aug. 14, 2019) ("In order to have standing to bring a UCL, FAL, or CLRA claim, Plaintiffs must plead that they relied on the misleading materials."), *appeal dismissed*, 2020 WL 5513552 (9th Cir. Aug. 13, 2020); *see also Watkins*

*v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 833–34 (N.D. Cal. 2021) ("[A] plaintiff has standing to sue under the Unfair Competition Law, the false advertising law and the CLRA only if she 'actual[ly] reli[ed]' on whatever defect in a product label allegedly makes it actionable when making her decision to buy the product." (citation omitted)); *Reed v. NBTY, Inc.*, 2014 WL 12284044, at *9 (C.D. Cal. Nov. 18, 2014) ("Because Plaintiffs did not view the representations as printed on the websites or labels, they do not have standing to state [claims] based on misrepresentations printed thereon.").  It makes no difference that LeGrand seeks to bring claims on behalf of a class of potential plaintiffs who ***may*** have been exposed to some or all of those other products or statements.  *See Kane v. Chobani, Inc.*, 2013 WL 5289253, at *8 (N.D. Cal. Sept. 19, 2013) (dismissing UCL, FAL, and CLRA claims where plaintiffs did "not allege that they ever viewed [d]efendant's website"); *Hall v. Sea World Ent., Inc.*, 2015 WL 9659911, at *5 (S.D. Cal. Dec. 23, 2015) (dismissing UCL, FAL, and CLRA claims for lack of standing "[b]ecause the complaint does not allege (let alone with any specificity) that any of the named plaintiffs saw and relied on SeaWorld's statements about its treatment of whales when purchasing their tickets"); *see generally* Cal. Bus. & Prof. Code § 17203 ("Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204.").

### III.   PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW TO THE EXTENT THEY DEPEND ON REPRESENTATIONS ABOUT NUTRIENT CONTENT.

Even if Plaintiffs' claims did not fail on their own terms, many of the challenged statements constitute protected nutrient content statements under federal law.  Where a federal statute expressly preempts state law, federal law governs.  *See generally Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433, 434 (2d Cir. 2015); *Weber v. Allergan, Inc.*, 940 F.3d 1106, 1114 (9th Cir. 2019).  Here, the federal FDCA expressly preempts states from establishing "requirement[s] respecting," among other things, "implied nutrient [] claim[ s ]," which are statements that (1) "[s]uggest[] that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices," and (2) "[are] made in association with an explicit [or implicit] claim or statement about a nutrient[.]"   21 U.S.C. § 343-l(a)(5); 21 U.S.C. § 343(r)(l); 21 C.F.R. §§ 101.13(b)(2)(ii), 101.65(d)(1)(ii).  If a statement, viewed in context, "suggest[s] that [the] food because of its nutrient content may help consumers maintain healthy dietary practices" and is "made in [association] with an explicit or implicit claim or statement about a nutrient," it is an implied

1  nutrient claim.  21 C.F.R. § 101.65(d)(l); *see* FDA Guidance for Indus.: A Labeling Guide for Restaurants

2  & Other Retail Establishments Selling Away-From-Home Foods, 2008 WL 2155726, at *10 (April 2008)

3  ("nutritious" is implied nutrient content claim when used "in association" with a statement about a

4  nutrient).   In some circumstances, "[a]n implied nutrient content claim might also make a general

5  nutritional claim[] (a subcategory of an implied nutrient claim)[,] consisting of an express or implied claim

6  that the nutrient content of a food may help consumers maintain healthy dietary practices."  *McMorrow*,

7  2018 WL 3956022, at *5 (emphasis and citations omitted).

8       Plaintiffs' challenges to at least five labeling claims are expressly preempted by the FDCA because

9  the challenged statements suggest Ensure® can help consumers maintain healthy dietary practices in light

10  of its nutrient content, and are therefore protected by federal law:[3]

11  • ***Ensure® Complete***: The statement "Complete, Balanced Meal Replacement" on the multi-pack is

12    made in connection with a chart identifying various nutrients in the product (*e.g.*, "Excellent Source
      of Zinc, Vitamin A, and Antioxidants Vitamins C, E, and Selenium," "30g High-Quality Protein," "4g

13    Comfort Fiber Blend," and "Vitamin D and Calcium"), as well as various benefits associated with
      those nutrients (*e.g.*, "Immune," "Muscle," "Heart," "Digestion," and "Bone").  *See* Compl. at 4

14    (¶¶ 17-20); *see* Ex. 3.



25  • ***Ensure® Enlive Advanced Nutrition Shake***: The statements "our most advanced nutritional product"

26    and "All-in-One blend to support your health" appear in the same paragraph on this bottle as statements

---

3     These examples refer to particular versions of labeling and packaging for the challenged products
that Plaintiffs feature in the complaint.

about the product's nutrients, including "HMB + Protein," "Vitamin D," "Omega-3," and "Antioxidants (Vitamins C & E, & Selenium)." *See id.* at 5 (¶ 21). Likewise, the statements "advanced nutrition shake" and "All In One … Heart[,] Immune[, and] Digestion" are made with statements about the product's nutrient content—specifically, "20g Protein" and "26 Vitamins & Minerals." *Id.* Perhaps most obviously, the statements "Heart," "Immune," and "Digestion" appear beside the nutrients that provide benefits related to those items. *Id.* at 4 (¶¶ 21-25); *see* Ex. 4.



- **Ensure® Compact**: The statement "therapeutic nutrition shake" on the multi-pack is made in connection with descriptions of the product's nutrient content, including "9g Protein" and "26 Vitamins & Minerals." *Id.* at 7 (¶¶ 26-28). The phrase "Complete, Balanced Nutrition" likewise appears beside those statements and expressly states that it is being contrasted with the nutritional characteristics of "Ensure Original." *Id.*

- **Ensure® Clear**: The statement "nutrition drink" is made with descriptions of this product's nutrient content, including "8g Protein" and "0g Fat." *Id.* at 8 (¶¶ 29-31); *see* Ex. 6.

- **Ensure® Original Powder**: The description of Ensure® Original as a "nutrition powder" is made with a description of Ensure® Original's nutrients—notably, "9g Protein" and "25 Vitamins & Minerals." *Id.* at 9 (¶¶ 32-34); *see* Ex. 7.

All of these statements are made in connection with undisputed representations about the nutrient content of the product, which are expressly permitted by federal law—meaning that any state law challenge premised on these statements is preempted. *See McMorrow*, 2018 WL 3956022, at *8 (federal law preempted a California state-law challenge to the terms "wholesome grains" and "slow-release carbs" because, in the context of the label, they "suggest[ed] the Products include[d] a high amount of fiber, [which] is an implied nutrient content claim"); *Hadley II*, 273 F. Supp. 3d at 1077–78 (FDCA preempted a challenge to several statements where "the context and other statements on the box . . . connect the presence of fiber with the health of the consumer"); *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d

938, 956–57 (N.D. Cal. 2017) (cereal box's statement that "each serving helps start the day in a healthy way" was a "permissible nutrient content claim" because it was "followed immediately by a specific listing of nutrients present in the product," and UCL, CLRA, and FAL claims were preempted); *VanCleave*, No. 19CV345045, at 5 (holding that the placement of the statement "Nutrition to Help Fill Gaps" "directly above statements regarding protein and vitamins & minerals shows a connection between the statements and makes the nutrition statements implied nutrient content claims").

## IV.   ANY FRAUD-BASED CLAIMS MUST BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 9(B).

Plaintiffs' fraud-based claims must be dismissed because they fail to comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  Rule 9(b) requires Plaintiffs to allege "the particular circumstances surrounding [the] representations at issue."  *Watkins*, 550 F. Supp. 3d at 833 (citation omitted); *see Duchimaza v. Niagara Bottling, LLC*, --- F. Supp. 3d ---, 2022 WL 3139898, at *11 (S.D.N.Y. Aug. 5, 2022).  Rule 9(b) "applies regardless of whether the statements at issue are misleading because they are affirmative misrepresentations or because they contain material omissions," *Watkins*, 550 F. Supp. 3d at 833, and it extends to claims for common law intentional misrepresentation (or fraud), negligent misrepresentation, and California UCL, CLRA, and FAL claims, insofar as they are premised on allegedly fraudulent statements or omissions.  *See, e.g.*, *Gibson v. Al Jazeera Int'l (USA) LLC*, 2022 WL 16949940, at *7 (N.D. Cal. Nov. 14, 2022); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021), *appeal dismissed*, 2021 WL 4785889 (9th Cir. May 17, 2021); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016).  Here, because Plaintiffs fail to plead "facts sufficient to give rise to an inference of fraudulent intent," *Duchimaza*, 2022 WL 3139898, at *13, and fail to allege the "who, what, when, where, and how" of the alleged misconduct with particularity, *Eidmann*, 522 F. Supp. 3d at 641, their fraud-based claims should be dismissed.

In a case premised on the purchase of allegedly mislabeled goods, it is critical for the plaintiff to allege with particularity "facts that give rise to a strong inference of fraudulent intent."  *Brown*, 2021 WL 5446007, at *10.  *Brown v. Kerry* is instructive.  There, the court dismissed a New York fraud claim where the plaintiff "allege[d] only that Oregon Chai's fraudulent intent is 'evinced by its failure to accurately identify the Product on the front label, when it knew its statements were neither true nor accurate and

misled consumers.'"  *Id.*   Similarly, in *Duchimaza*, the court held that an allegation that defendant "marketed [its 'recyclable'] bottles to 'capitalize on consumer demand for "green" products'" was "insufficient to give rise to a strong inference of fraudulent intent."  2022 WL 3139898, at *11–12.  The same is true here: Plaintiffs make only vague allegations that the challenged "labeling representations" were "intended to appeal to consumers interested in health and wellness and intended to convince those consumers that the Products are … healthy," Compl. ¶ 75, and that "Abbott intends that Plaintiffs and other consumers rely on [the alleged] misrepresentations," *id.* ¶ 212.  Those "conclusory allegation[s] fall[] short of the Rule 9(b) standard for pleading fraudulent intent," and Plaintiffs' fraud-based claims should be dismissed.  *See Brown*, 2021 WL 5446007, at *10; *see also, e.g.*, *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016); *Turnipseed v. Simply Orange Juice Co.*, 2022 WL 657413, at *7 (S.D.N.Y. Mar. 4, 2022).

Plaintiffs also fail to plead required detail about the circumstances of their purchases.  LeGrand alleges that she "has purchased Ensure Original Nutrition Shakes at different times during the [c]lass [p]eriod," Compl. ¶ 106; and Bates alleges that she "has purchased Ensure Complete Nutrition Shakes during the [c]lass [p]eriod," *id.* ¶ 108.  Those skeletal descriptions fall well short of Rule 9(b)'s specificity requirement.  For instance, in *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942 (N.D. Cal. 2019), the court held that "allegations that [plaintiff] 'repeatedly' purchased [the challenged product] and purchased the product 'during the class period once per month' are too general to satisfy the 'when' requirement of Rule 9(b)," where the plaintiff alleged that the class period began "on or after" a particular date but did not allege an end date.  *Id.* at 955-56 (citations omitted); *Izquierdo*, 2016 WL 6459832, at *9 (dismissing allegations that "fail[ed] to state when Izquierdo purchased the Candy, where precisely he purchased the Candy," or "how much Izquierdo paid for the Candy").  Plaintiffs' allegations provide no clarity as to how many purchases there were, how much Plaintiffs paid for the products, at what specific dates and times the purchases occurred—or even what year.  As such, Plaintiffs' allegations are deficient.

1

2

**V.    PLAINTIFFS FAIL TO PLEAD NEGLIGENT MISREPRESENTATION, BREACH OF WARRANTY, AND UNJUST ENRICHMENT.**

3

**A.    New York Negligent Misrepresentation Claims Require a Special Relationship, Which Plaintiffs Do Not Allege.**

4

Under New York law, a plaintiff alleging a negligent misrepresentation claim must plead, *inter*

5

*alia*, "the existence of a special or privity-like relationship imposing a duty on the defendant to impart

6

correct information to the plaintiff." *Turnipseed*, 2022 WL 657413, at *6 (citation omitted).  This "privity-

7

like relationship" must be more than that of buyer and seller.  *See id.* ("[G]enerally, a special relationship

8

does not arise out of an ordinary arm's length business transaction between two parties." (citation

9

omitted)); *Spurck v. Demet's Candy Co., LLC*, 2022 WL 2971957, at *4 (S.D.N.Y. July 27, 2022) ("[T]he

10

11

relationship between Defendant, as the manufacturer and seller, and Plaintiff as the buyer, does not rise to

12

the level of the kind of special relationship—approaching that of privity—that would impose a duty to

13

speak on Defendant."); *Izquierdo*, 2016 WL 6459832, at *9.

14

Here, Bates pleads nothing more than an attenuated consumer-manufacturer connection with

15

16

Abbott, alleging only that she purchased Ensure® products at third-party retailers.  Compl. ¶ 108.  Though

17

Plaintiffs allege that Abbott "is a large sophisticated company that holds itself out as hav[ing] expert

18

knowledge regarding the impact of consuming the Products," Compl. ¶ 99, it is not enough for a plaintiff

19

to allege that the defendant "hold[s] itself out as having special knowledge and experience in the sale of

20

the product type."  *Myers v. Wakefern Food Corp.*, 2022 WL 603000, at *6 (S.D.N.Y. Mar. 1, 2022).  To

21

the contrary, "no duty of care arises" when the alleged misrepresentation is "directed at a faceless or

22

23

unresolved class of persons."  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir.

24

2005) (citation and internal quotation marks omitted); *see also, e.g.*, *Twohig v. Shop-Rite Supermarkets,*

25

*Inc.*, 519 F. Supp. 3d 154, 166–67 (S.D.N.Y. 2021) (rejecting claim of special relationship based on

26

allegation that defendant "held itself out as having special knowledge and experience in the production,

27

service, and/or sale of the product type" (citation omitted)); *Sarr v. BEF Foods, Inc.*, 2020 WL 729883,

28

at *6–7 (E.D.N.Y. Feb. 13, 2020) (dismissing negligent misrepresentation claim based on labeling

statements and reasoning that "BEF's status as a trusted brand . . . does not give rise to a duty to impart correct information"). What Bates alleges is exactly the sort of run-of-the-mill commercial relationship that courts in New York routinely reject as the basis for a negligent misrepresentation claim. Bates' negligent misrepresentation claims therefore should be dismissed.

### B.     Plaintiffs Fail to Plead Warranty Claims Under California Law.

LeGrand's claims for breach of express and implied warranty under California law are deficient in multiple respects and should be dismissed:

*First*, any express warranty claim fails because LeGrand does not allege factual promises of the sort that could create a warranty. "A representation on a product label does not . . . create an express warranty if it 'is of such a general nature that a reasonable consumer would not rely on it as a statement of fact regarding' the product." *See McMorrow*, 2018 WL 3956022, at *12. Here, LeGrand's allegations do little more than "stitch together multiple different representations on a package to form a basis for a breach of warranty claim," which is not a legitimate basis for such a claim. *See Krommenhock*, 255 F. Supp. 3d at 966. But even taken on their individual terms, the challenged statements do not amount to warranties. Most notably, statements that suggest Ensure® can "support" or "help[]" health, provide "Complete, Balanced Nutrition," be used as "part of" a healthy diet, and the like are not specific enough to form an express warranty. *See, e.g.*, *Nathan v. Vitamin Shoppe, Inc.*, 2018 WL 828135, at *3 (S.D. Cal. Feb. 12, 2018) (holding that "weight management" and "appetite control" statements were not specific affirmations of fact). LeGrand thus has not pled the existence of an express warranty with respect to the purported health benefits of the challenged Ensure® products.

*Second*, LeGrand also does not allege that the products she purchased were unfit for consumption, and thus her claim for breach of the implied warranty of merchantability fails. "Mislabeling of a product is not the sort of fundamental defect that the implied warranty of merchantability is designed to protect against[.]" *See Thomas v. Costco Wholesale Corp.*, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014).

1  Rather, "[t]o allege a breach of implied warranty of merchantability," a complaint "must show that the

2  product 'did not possess even the most basic degree of fitness for ordinary use'"—a standard the

3  allegations here do not even approach.  *McMorrow*, 2018 WL 3956022, at *12 (citation omitted).

4       **C.    Plaintiffs' Unjust Enrichment Claims Fail.**

5       Plaintiff's unjust enrichment claims under both California and New York law fail, albeit for

6  different reasons.  In California, unjust enrichment is not a standalone cause of action.  *See Astiana v.*

7  *Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("[I]n California, there is not a standalone

8  cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'"); *Tae Hee Lee v. Toyota*

9  *Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 981 (C.D. Cal. 2014) (noting that "California law does not

10  recognize such a claim for relief" and collecting state and federal cases).  LeGrand's unjust enrichment

11  claim, which "is predicated on the same factual allegations" as her other claims, therefore should be

12  dismissed.  *Kahn v. FCA US LLC*, 2019 WL 3955386, at *8 (C.D. Cal. Aug. 2, 2019).

13       In New York, courts reject unjust enrichment claims that are duplicative of claims under GBL

14  §§ 349 and 350.  *See Beers*, 2022 WL 493555, at *7 ("[C]ourts in the Second Circuit have consistently

15  held that unjust enrichment claims are duplicative of GBL claims." (citation omitted)).  Here, Plaintiffs

16  allege unjust enrichment based on the same allegations underlying their GBL claims.  *Compare* Compl.

17  ¶¶ 181–93 (alleging GBL violations premised on alleged misleading labeling resulting in financial injury)

18  *with id.* ¶ 196 (alleging unjust enrichment because "Abbott's financial benefits resulting from their

19  unlawful and inequitable conduct are economically traceable to Plaintiffs' and Class Members' purchases

20  of the Ensure Nutrition Drinks").  The duplicative nature of those allegations renders them deficient.  *See*

21  *Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *5 (S.D.N.Y. Jan. 19, 2018) ("The essence of

22  Borenkoff's unjust enrichment claim is that (1) she purchased defendants' food items as a result of their

23  material omissions, and (2) defendants[] unjustly retained the revenue from those purchases.  Those

allegations are entirely duplicative of Borenkoff's GBL § 349 claim, and therefore the unjust enrichment claim must be dismissed under New York law."); *Brown*, 2021 WL 5446007, at *10.

## VI.    BATES' CLAIMS MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

Separate and apart from any merits defects, the Court should dismiss Bates' claims because the Court lacks general or specific personal jurisdiction over Abbott with respect to her claims.  *See Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018) ("To avoid dismissal [under Rule 12(b)(2)], the plaintiff bears the burden of demonstrating that its allegations establish a prima facie showing of personal jurisdiction.").

As an initial matter, there is no general personal jurisdiction over Abbott in California.  "With respect to a corporation, the place of incorporation and principal place of business are 'paradigm . . . bases for general jurisdiction.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014) (brackets and citation omitted)).  By Plaintiffs' own allegations, Abbott "is an Illinois corporation with its principal place of business in Abbott Park, Illinois."  Compl. ¶ 10.

Absent general jurisdiction in California, the Court thus must have specific personal jurisdiction over Abbott to adjudicate Bates' claims here.  But Bates cannot establish specific personal jurisdiction either, which requires that her "*suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017) (brackets and internal quotation marks omitted); *see also In re Samsung Galaxy Smartphone Mktg. & Sales Practs. Litig.*, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018) ("Specific jurisdiction is based on the defendant's connections to the state *with regard to the particular controversy at issue*." (emphasis added)). In *Bristol-Myers Squibb*, the Supreme Court held that a California court did not have personal jurisdiction over the claims of out-of-state plaintiffs who "were not prescribed [the challenged drug] in California, did not purchase [the challenged drug] in California, did not ingest [the challenged drug] in California, and were not injured by [the challenged drug] in California."  137 S. Ct. at 1781.  In particular, the Supreme

Court explained that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested [the challenged drug] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.*

Any straightforward application of *Bristol-Myers Squibb* requires dismissal of Bates' claims here—including her GBL, unjust enrichment, and negligent and intentional misrepresentation claims and therefore the putative New York subclass asserting such claims.  Bates concedes that she resides in New York and purchased Abbott's products in New York retail stores.  *See* Compl. ¶¶ 10, 108.  Bates does not allege any relationship between California and her purported injury, and as such, she cannot establish specific jurisdiction over her claims by bandwagoning on purchases or injuries of California consumers. *See Bristol-Myers Squibb*, 137 S. Ct. at 1781.

Nor does the fact that Bates asserts claims on behalf of a putative class let her off the hook in meeting her burden of alleging facts that would establish personal jurisdiction over Abbott.  "[I]t is well settled law that a defendant can challenge personal jurisdiction relating to each named plaintiff in a class action." *Alvarez v. NBTY, Inc.*, 2017 WL 6059159, at *5 (S.D. Cal. Dec. 6, 2017).  Indeed, "many district courts that have considered whether *Bristol-Myers* applies to out-of-state named plaintiffs in class actions have concluded that it does." *Pilgrim v. Gen. Motors Co.*, --- F. Supp. 3d ---, 2019 WL 5779892, at *5 (C.D. Cal. Oct. 4, 2019) (citing *Gaines v. Gen. Motors, LLC*, 2018 WL 3752336, at *3 (S.D. Cal. Aug. 7, 2018) ("The Court agrees with the many other federal courts that have found no reason *Bristol-Myers*' limitation on personal jurisdiction would not apply to named parties in putative class actions.") (dismissing claims of out-of-state named plaintiffs and denying leave to amend), and *Horowitz v. AT&T Inc.*, 2018 WL 1942525, at *15 (D.N.J. Apr. 25, 2018) ("[A] court does not have specific jurisdiction over individual claims asserted by nonresident named plaintiffs because there is no connection between their claims and the corporation's activities within the forum, even if those claims are similar or identical to claims brought in the same case by a resident named plaintiff against the same defendant.")); *see also, e.g.*, *In re Samsung*,

1  2018 WL 1576457, at *2 (dismissing claims of named Maryland plaintiff brought in this district where he

2  "purchased his S6 in Maryland and suffered all of his injuries in Maryland"); *La Fosse v. Sanderson*

3  *Farms, Inc.*, 2020 WL 3617786, at *4 (N.D. Cal. July 2, 2020) (dismissing non-California claims of named

4  plaintiffs).   This case is indistinguishable from those cases, as Bates is nothing more than "a named

5  plaintiff seeking to represent a statewide class of non-forum residents proceeding under non-forum law."

6  *In re Samsung*, 2018 WL 1576457, at *2.  The Court should dismiss her claims.[4]

7

8  ## CONCLUSION

9  For the foregoing reasons, Abbott respectfully requests that the Court dismiss the Complaint in its

10 entirety.

11

12

13

14

15

16

17

18

19

20

21

---

22  [4] Lower courts are divided on whether *Bristol-Myers Squibb's* holding precludes specific personal

23  jurisdiction over the claims of out-of-state *unnamed* plaintiffs in putative nationwide classes.  *Compare Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, 2018 WL 3474444, at *4 (N.D. Ill. July 19, 2018) ("The Court lacks jurisdiction over the [d]efendants as to the claims of the nonresident, proposed class

24  members . . . . [T]hose class members who are not Illinois residents and who allegedly received the fax outside of this state's borders may not be part of this case."), *with Fitzhenry-Russell v. Dr. Pepper Snapple*

25  *Grp., Inc.*, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) ("[T]he Supreme Court did not extend its reasoning to bar the [unnamed] nonresident plaintiffs' claims here, and *Bristol-Myers* is meaningfully

26  distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff."), *motion to certify appeal denied*, 2017 WL 11505620 (N.D. Cal. Dec. 19, 2017).  Abbott

27  reserves all rights to challenge personal jurisdiction as to the claims of such unnamed plaintiffs in this litigation.  But lower courts are in agreement that *Bristol-Myers Squibb* applies to out-of-state *named*

28  plaintiffs, like Bates, as explained herein.  Because only her claims—and not those of unnamed out-of-state class members—are asserted here, Abbott only moves with regard to her claims at this time.

1    DATED:  December 12, 2022            Respectfully submitted,

2                                        KIRKLAND & ELLIS LLP

3
                                         */s/ Tracie L. Bryant*
4                                        Tracie L. Bryant

5                                        Mark McKane, P.C. (SBN 230552)
                                         KIRKLAND & ELLIS LLP
6                                        555 California Street, 27th Floor
                                         San Francisco, CA 94104
7                                        Tel.: (415) 439-1400
                                         Washington, D.C. 20004
8                                        Email:   mark.mckane@kirkland.com

9                                        Tracie L. Bryant (SBN 287508)
                                         Gregg F. LoCascio, P.C. (*pro hac vice* pending)
10                                       Michael A. Glick, P.C. (*pro hac vice* pending)
                                         Terence J. McCarrick (*pro hac vice* pending)
11                                       Elizabeth Hedges (*pro hac vice* pending)
                                         KIRKLAND & ELLIS LLP
12                                       1301 Pennsylvania Avenue, N.W.
                                         Washington, D.C. 20004
13                                       Tel.: (202) 389-5000 / Fax: (202) 389-5200
                                         Email:   tracie.bryant@kirkland.com
14                                       Email:   glocascio@kirkland.com
                                         Email:   michael.glick@kirkland.com
15                                       Email:   tj.mccarrick@kirkland.com
                                         Email:   elizabeth.hedges@kirkland.com
16
                                         *Attorneys for Defendant Abbott Laboratories*
17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

On December 12, 2022, I electronically filed the foregoing with the Clerk of the Court by using

the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All

copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Tracie L. Bryant*
Tracie L. Bryant