**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619)215-1741

***Counsel for Plaintiffs***

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONDALISA LEGRAND and LARISSA BATES, on, on behalf of themselves, all others similarly situated, and the general public,<br><br>    Plaintiffs,<br><br>       v.<br><br>ABBOTT LABORATORIES,<br><br>    Defendant. | Case No. 3:22-cv-05815-TSH<br><br>**PLAINTIFFS' OPPOSITION ABBOTT'S MOTION TO DISMISS [DKT. NO. 18]**<br><br>Judge: Honorable Thomas S. Hixson<br>Hearing Date: February 9, 2023<br>Time: 10:00 a.m.<br>Location: Via Zoom |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................iii

INTRODUCTION ............................................................................................................... 1

STANDARD OF REVIEW .................................................................................................. 2

ARGUMENT ..................................................................................................................... 2

    I.    Plaintiffs Plausibly State Consumer Fraud Claims ............................................. 2

        A.    Plaintiffs Plausibly Allege that Defendant's Labeling Deceives Reasonable
            Consumers ................................................................................................. 2

            1.    Plaintiffs Allege Deceptive Misrepresentations and
                Omissions ........................................................................................ 3

            2.    That Some Challenged Statements Are Literally True Does
                Not Shield Abbott ............................................................................ 8

            3.    The Challenged Health and Wellness Representations
                Should Not Be Dismissed as Puffery as They Contribute to
                the Deceptive Message ................................................................... 10

        B.    Plaintiffs' Claims are Not Preempted ........................................................ 11

            1.    In Seeking to Invalidate Plaintiffs' Claims, Abbott Bears a
                "Considerable Burden" of Overcoming the Strong
                Presumption Against Preemption ..................................................... 11

            2.    Abbott Has Not Met its Burden of Establishing that
                 Preemption Applies ......................................................................... 13

        C.    Plaintiffs Satisfy the Particularity Requirement by Identifying Each
            Challenged Labeling Claim, with Exemplars, and Explaining Why Each is
            Misleading ................................................................................................. 15

        D.    Ms. LeGrand May Assert Claims on Behalf of Class Members Who
            Purchased Substantially Similar Products that She did Not Personally
            Purchase ..................................................................................................... 17

    II.    Ms. LeGrand States Breach of Warranty Claims.............................................. 18

    III.    Ms. Bates Alleges a Special Relationship and States a Negligent Misrepresentation
        Claim.................................................................................................................. 20

    IV.    Plaintiffs State Claims for Unjust Enrichment ................................................... 21

i

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

V.     Abbott is Subject to Personal Jurisdiction for Ms. Bates' Claims ......................................... 22

CONCLUSION ................................................................................................................................ 24

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ................................................................................... 23

*Allen v. ConAgra Foods, Inc.*,
   2018 WL 6460451 (N.D. Cal. Dec. 10, 2018) ........................................................... 23

*Allen v. Hylands, Inc.*,
   2012 WL 1656750 (C.D. Cal. May 2, 2012) .............................................................. 19

*Altria Group, Inc. v. Good*,
   555 U.S. 70 (2008) ...................................................................................................... 11

*Anderson v. Fishback*,
   2009 U.S. Dist. LEXIS 68775 (E.D. Cal. Aug. 6, 2009) ............................................ 2

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) .................................................................................................. 2

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   2011 WL 2111796 (N.D. Cal. May 26, 2011) ........................................................... 15

*Avedisian v. Mercedes-Benz USA, LLC*,
   2013 WL 2285237 (C.D. Cal. May 22, 2013) ........................................................... 16

*Bates v. Dow Agrosciences, LLC*,
   544 U.S. 431(2005) ..................................................................................................... 11

*Boswell v. Costco Wholesale Corp.*,
   2016 WL 3360701 (C.D. Cal. June 6, 2016) ............................................................... 5

*Braynina v. TJX Cos.*,
   2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016) .......................................................... 16

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
   137 S. Ct. 1773 (2017) ................................................................................................ 22

*Bronson v. Johnson & Johnson, Inc.*,
   2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ........................................................... 20

*Bruesewitz v. Wyeth LLC*,
   562 U.S. 223 (2011) .................................................................................................... 13

iii

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

*Bruton v. Gerber Prods. Co.*,
  2014 WL 172111 (N.D. Cal. Jan. 15, 2014) .................................................................. 8, 10

*Chacanaca v. Quaker Oats Co.*,
  752 F. Supp. 2d 1111 (N.D. Cal. 2010) .................................................................... 4, 15

*Cipollone v. Liggett Group, Inc.*,
  505 U.S. 504 (1992) ........................................................................................................ 11

*Clark v. Perfect Bar, LLC*,
  2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) ................................................................. 6

*Coe v. General Mills, Inc.*,
  2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ............................................................... 10

*Colgan v. Leatherman Tool Group, Inc.*,
  135 Cal. App. 4th 663 (2006) .......................................................................................... 3

*Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Serv., Inc.*,
  911 F.2d 242 (9th Cir. 1990) ......................................................................................... 10

*Dang v. Samsung Elecs. Co*,
  2018 WL 6308738 (N.D. Cal. Dec. 3, 2018) ................................................................. 21

*Donaldson v. Read Mag., Inc.*,
  333 U.S. 178 (1948) ......................................................................................................... 8

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004) .......................................................................................... 20

*Feller v. Transamerica Life Ins. Co.*,
  2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ............................................................... 22

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) .............................................................. 22

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ............................................................................................. 2

*Greene v. Gerber Prod. Co.*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ............................................................................ 20

*Gustavson v. Wrigley Sales Co.*,
  961 F. Supp. 2d 1100 (N.D. Cal. 2013) ........................................................................ 12

*Hadley v. Kellogg Sales Co.*,
  2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) ................................................................. 1

iv

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................ 1

*Hadley v. Kellogg Sales Co.*,
    273 F. Supp. 3d 1052 (N.D. Cal. 2017) ......................................................... passim

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) ................................................................ 1

*Hanson v. Welch Foods Inc.*,
    470 F. Supp. 3d 1066 (N.D. Cal. 2020) ............................................................. 1, 4

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
    61 Cal. 4th 988 (2015) ........................................................................................ 21

*Haskell v. Time, Inc.*,
    857 F. Supp. 1392 (E.D. Cal. 1994) ...................................................................... 3

*Hauter v. Zogarts*,
    14 Cal. 3d 104 (1975) ......................................................................................... 19

*Hedges v. U.S.*,
    404 F.3d 744 (3d Cir. 2005) .................................................................................. 2

*Hughes v. Ester C Co.*,
    930 F. Supp. 2d 439 (E.D.N.Y. 2013) ........................................................... 20, 21

*In re ConAgra Foods, Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012) ............................................................... 15

*In re Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (2008) ...................................................................................... 11

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) ........................................................... 4, 19

*In re Glenfed, Inc. Secs. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ............................................................................... 16

*In re Oreck Corp.*,
    2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) ....................................................... 16

*In re Packaged Seafood Litig.*,
    338 F. Supp. 3d 1118 (S.D. Cal. 2018) .......................................................... 22, 23

*In re Quaker Oats Labeling Litig.*,
    2012 WL 1034532 (N.D. Cal. Mar. 28, 2012) .................................................... 12

v

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

*Johnson-Jack v. Health-Ade LLC*,
   587 F. Supp. 3d 957 (N.D. Cal. 2022) ............................................................ 1, 4, 5, 6

*Jones v. Nutiva*, Inc.,
   2016 WL 5210935 (N.D. Cal. Sept. 22, 2016)................................................. 4, 19

*Keith v. Buchanan*,
   173 Cal. App. 3d 13 (1985)................................................................................. 18

*Kimmell v. Schaefer*,
   675 N.E.2d 450 (N.Y. 1996) ............................................................................... 20

*Krommenhock v. Post Foods, LLC*,
   2018 WL 1335867 (N.D. Cal. Mar. 15, 2018) ................................................... 14

*Krommenhock v. Post Foods, LLC*,
   255 F. Supp. 3d 938 (N.D. Cal. 2017) .........................................................passim

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) ................................................................... 1, 18

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003)............................................................................ 3, 8

*Leider v. Ralfe*,
   387 F. Supp. 2d 283 (S.D.N.Y 2005) .................................................................. 3

*Maisel v. S.C. Johnson & Son, Inc.*,
   2021 WL 1788397 (N.D. Cal. May 5, 2021) ...................................................... 17

*McCracken v. Verisma Sys., Inc.*,
   2017 WL 2080279 (W.D.N.Y. May 15, 2017) .................................................... 22

*McMorrow v. Mondelez Int'l, Inc.*,
   2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) ...................................... 1, 4, 9, 12

*McMorrow v. Mondelez Int'l, Inc.*,
   2021 WL 859137 (S.D. Cal. Mar. 8, 2021)........................................................... 1

*Milan v. Clif Bar & Co.*,
   2019 WL 3934918 (N.D. Cal. Aug. 20, 2019) .......................................... 1, 4, 19

*Milan v. Clif Bar & Co.*,
   2021 WL 4427427 (N.D. Cal. Sept. 27, 2021)...................................................... 1

*Milan v. Clif Bar & Co.*,
   Case No. 18-cv-2354-JD (N.D. Cal.), Dkt. No. 149 ............................................ 1

*Mohamed v. Jeppesen Dataplan, Inc.*,
  579 F.3d 943 (9th Cir. 2009).............................................................................2

*Morris v. Walmart Inc.*,
  2020 WL 5645812 (N.D. Ala. Sept. 22, 2020) ..................................................9

*Morrison v. TriVita, Inc.*,
  2013 WL 1148070 (S.D. Cal. Mar. 19, 2013).....................................................9

*Nathan v. Vitamin Shoppe, Inc.*,
  2018 WL 828135 (S.D. Cal. Feb. 12, 2018) .....................................................19

*Nathan v. Vitamin Shoppe, Inc.*,
  2019 WL 1200554 (S.D. Cal. Mar. 14, 2019)...................................................19

*Nazemi v. Specialized Loan Servicing, LLC*,
  2022 WL 17220707 (C.D. Cal. Oct. 31, 2022) .................................................16

*Newcal Indus., Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008)..........................................................................10

*Nuss v. Sabad*,
  2016 WL 4098606 (N.D.N.Y. July 28, 2016) ..................................................22

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) .........................................................................................16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  623 N.Y.S. 2d 529 (N.Y. 1995) ..........................................................................3

*Ries v. Hornell Brewing Co.*,
  2011 WL 1299286 (N.D. Cal. Apr. 4, 2011) ....................................................15

*Sciortino v. Pepsico, Inc.*,
  108 F. Supp. 3d 780 (2015)...............................................................................11

*Siracusano v. Matrixx Initiatives, Inc.*,
  585 F.3d 1167 (9th Cir. 2009)............................................................................2

*Sloan v. GM, LLC*,
  287 F. Supp. 3d 840 (N.D. Cal. 2018) ..............................................................23

*Stengel v. Medtronic Inc.*,
  704 F.3d 1224  (9th Cir. 2013)..........................................................................12

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015)....................................................7

vii

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

*Stutman v. Chemical Bank*,
   709 N.Y.S. 2d 892 (N.Y. 2000) ................................................................................... 3

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................................... 15

*Truxel v. Gen. Mills Sales, Inc.*,
   2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ............................................................ 5

*United States ex rel. Spay v. CVS Caremark Corp.*,
   913 F. Supp. 2d 125 (E.D. Pa. 2012) ......................................................................... 2

*Victor v. R.C. Bigelow, Inc.*,
   2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) .......................................................... 18

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) .................................................................... 15

*Walters v. Vitamin Shoppe Industries, Inc.*,
   701 F. App'x 667 (9th Cir. 2017) ............................................................................... 5

*Warner v. StarKist Co.*,
   2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) .......................................................... 22

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................................. passim

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ................................................................................................. 11

*Yeksigian v. Nappi*,
   900 F.2d 101 (7th Cir. 1990) ..................................................................................... 2

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. May 24, 2010) ........................................................ 5

**Statutes**

21 U.S.C. § 301 ............................................................................................................ 12

21 U.S.C. § 343(a)(1) ................................................................................................... 12

21 U.S.C. § 343-1(a) .................................................................................................... 12

Cal. Com. Code § 2314(2)(f) ....................................................................................... 19

New York G.B.L § 350 ................................................................................................................ 21

New York G.B.L. § 349 ............................................................................................................... 21

Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353 (1990) ............................................................. 12

**Other Authorities**

56 Fed. Reg. 60478 (Nov. 27, 1991) ........................................................................................... 7

58 Fed. Reg. 2302 (Jan. 6, 1993) ................................................................................................. 7

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................................... 16

**Regulations**

21 C.F.R. § 101.13(b)(1) ........................................................................................................... 12

21 C.F.R. § 101.13(b)(2) ........................................................................................................... 13

ix

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

**INTRODUCTION**

This is one in a series of cases challenging health and wellness representations used to label and advertise high-sugar foods and beverages. "[P]laintiffs' theory is that [the labeling of the Ensure Nutrition Drinks] is misleading because it implies that the defendant's products are healthy when, according to the plaintiffs, they are not because they contain sugar." *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 962 (N.D. Cal. 2022). *See also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1090 (N.D. Cal. 2017) ["*Hadley I*"] ("Plaintiff's added sugar-based FAL, CLRA, and UCL fraudulent prong causes of action are based on the following logical steps: (1) Defendant's labeling indicates that Defendant's cereals and cereal bars are healthy, (2) Defendant's cereals and cereal bars contain excessive added sugar, (3) excessive added sugar is unhealthy, and therefore (4) Defendant's statements that its cereal and cereal bars are healthy are false or misleading.").

"Most courts in this district have found that mislabeling claims based on this theory (i.e., that it is deceptive to market products with added sugar as healthy based on studies linking excess sugar consumption to disease) can survive a motion to dismiss." *Johnson-Jack*, 587 F. Supp. 3d at 962. Specifically, six courts have already found the same case theory plausible.[1] Four subsequently certified classes (all represented by Plaintiffs' counsel here),[2] and three denied defendant summary judgment motions.[3] Thus, Plaintiffs' underlying theory has proven merit.

While Abbott tries to narrow this matter, it largely repeats arguments that have already been considered and rejected by other courts and it offers no reason for the Court to depart from the weight of

---

[1] *See Hanson v. Welch Foods Inc.*, 470 F. Supp. 3d 1066 (N.D. Cal. 2020); *Milan v. Clif Bar & Co.*, 2019 WL 3934918 (N.D. Cal. Aug. 20, 2019) ["*Milan I*"]; *Johnson-Jack*, 2022 WL 562827; *McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) ["*McMorrow I*"]; *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017) ["*Hadley II*"]; *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017) ["*Krommenhock I*"].

[2] *See Milan v. Clif Bar & Co.*, 2021 WL 4427427 (N.D. Cal. Sept. 27, 2021); *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 560-68 (N.D. Cal. 2020) ["*Krommenhock III*"]; *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018).

[3] *See Milan v. Clif Bar & Co.*, Case No. 18-cv-2354-JD (N.D. Cal.), Dkt. No. 149 at 2 ("Defendant's summary judgment motion . . . is denied for the reasons stated on the record." (internal record citation omitted)); *Krommenhock III*, 334 F.R.D. at 568-73; *Hadley v. Kellogg Sales Co.*, 2019 WL 3804661 (N.D. Cal. Aug. 13, 2019).

1

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

authority in favor of Plaintiffs. Accordingly, the Court should deny Abbott's Motion.

## STANDARD OF REVIEW

"[D]efendants have the burden on a motion to dismiss to establish the legal insufficiency of the complaint." *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990). A plaintiff's claim should not be dismissed where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In deciding a motion to dismiss, courts should draw "all reasonable inferences from the complaint in [plaintiffs'] favor," *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009), and "accept the plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs." *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009).

## ARGUMENT[4]

### I.   Plaintiffs Plausibly State Consumer Fraud Claims

#### A.   Plaintiffs Plausibly Allege that Defendant's Labeling Deceives Reasonable Consumers

The UCL, FAL, and CLRA "prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (alterations omitted). This objective, "reasonable consumer" test requires only that a plaintiff "show that 'members of the public are likely to be deceived.'" *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quotation omitted). At the pleading stage, the focus is on whether a plaintiff alleging deceptive advertising might possibly show a reasonable consumer is likely to be deceived. *See Williams*, 552 F.3d at 939 (even just "potential deception" defeats a motion to dismiss). New York's General Business Law (GBL) sections 349 and 350 likewise apply an objective reasonable consumer standard. *See Stutman v. Chemical Bank*, 709 N.Y.S. 2d 892, 896 (N.Y.

---

[4] While Abbott's motion attempts to narrow the case in numerous respects, it does not advance arguments challenging Plaintiffs' omission claims or Ms. LeGrand's claims under the UCL's "Unfair" and "Unlawful" prongs or her negligent misrepresentation claim. Because Abbott failed to address these theories, it has failed to carry its "burden of proving plaintiff has failed to state a claim," *Anderson v. Fishback*, 2009 U.S. Dist. LEXIS 68775, at *6 (E.D. Cal. Aug. 6, 2009) (citing *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005)). Thus, these claims necessarily survive. *Cf. United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 175 n.31 (E.D. Pa. 2012) ("On a motion to dismiss, Defendants bear the burden of disproving Plaintiff's theories.").

2000); *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S. 2d 529, 533 (N.Y. 1995)).

Whether a representation or omission is deceptive is "judged by the effect it would have on a reasonable consumer," who is the "ordinary consumer within the target population." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-507, 510 (2003). A reasonable consumer is "not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture," *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006), and is not "exceptionally acute and sophisticated . . . nor need a reasonable consumer necessarily be wary or suspicious of advertising claims." *Lavie*, 105 Cal. App. 4th at 509-10 (citations and internal quotation marks omitted). "The fact that a . . . person who knew the whole truth [ ] would not be led astray by [the advertising] does not make it lawful," and California consumer protection laws exist "to protect the general public who read advertisements and are likely to know nothing of the facts, not the dealers who publish them or other experts on their subject-matter." *Id*. at 510. Further, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss." *Williams*, 552 F.3d at 938. Only where an "alleged misrepresentation, in context, is such that no reasonable consumer could be misled," may the claim be dismissed. *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).

### 1.    Plaintiffs Allege Deceptive Misrepresentations and Omissions

Abbott knows "consumers seek out and prefer healthful foods and beverages, and are willing to pay more for, or purchase more often, products marketed and labeled as healthy." Compl. ¶ 12. Therefore, "Abbott has marketed the Ensure Nutrition Drinks with labeling representations intended to appeal to consumers interested in health and wellness and intended to convince those consumers that the Products are . . . generally healthy," Compl. ¶ 75. For example, it "prominently tout[s] them as—*inter alia*, the "#1 Doctor Recommended Brand," and a source of "complete, balanced nutrition," to "support your health." *Id.* ¶ 13. It even "Recommend[s] 2 bottles per day as part of a healthy diet." *Id.* ¶ 22. "By focusing on the products' purported health benefits, while omitting information regarding the health harms of the products' added sugar content, Abbott conveys to consumers that the [Products] provide the promised health benefits notwithstanding their added sugar content." *Id.* ¶ 16.

Where, as here, a plaintiff alleges that health and wellness messages are misleading due to the

presence of one or more unhealthy nutrients, courts have frequently found this sufficient to state a claim under the reasonable consumer standard. *See*, *e.g.*, *Jones v. Nutiva*, Inc., 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016) (plaintiff stated claim where he alleged statements like "Nurture Vitality," "Organic Superfood," "100% less cholesterol than butter," "Coconut is one of the world's most nourishing foods," and "A nutritious substitute in baking," "read together, led plaintiff to believe that Defendant's coconut oil was 'healthy' and would not harm health"); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010) (finding that "wholesome" labeling claim could mislead a reasonable consumer where product contained harmful amounts of artificial trans fat); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) (finding "tasty yet balanced breakfast" to be an actionable misrepresentation where the product was alleged to "contain[] dangerous levels of fat and sugar").

It is this simple logic that has led the majority of courts in this line of added sugar cases to find that allegations similar to those alleged here are sufficient to state claims for consumer fraud. *See Johnson-Jack*, 587 F. Supp. 3d at 962; *Milan I*, 2019 WL 3934918, at *2 ("Plaintiffs have laid out in painstaking and voluminous detail how this substantial percentage of added sugars in Clif's products can contribute to excessive sugar consumption, which in turn has been linked to many disease and detrimental health conditions. At this stage of the proceedings, the Court takes these allegations as true, and . . . concludes that plaintiffs have stated a claim." (internal record citation omitted)); *McMorrow I*, 2018 WL 3956022, at *9 (Plaintiffs "sufficiently alleged . . . that 'excessive' sugar creates health risks," such that "Plaintiffs' allegations illustrate a plausible basis that Defendants' statement could deceive a reasonable consumer with certain expectations of health that do not include the amount of sugar in the Products." (citations omitted)); *Krommenhock I*, 255 F. Supp. 3d at 938 (denying motion to dismiss consumer fraud claims regarding health and wellness statements on labels of sugary breakfast cereals); *Hadley II*, 273 F. Supp. 3d at 1052 (same); *cf. Hanson*, 470 F. Supp. 3d at 1074 (finding plaintiff's allegations that "heart health" labeling "representations [on grape juice] misled him, in that they indicated the product was healthy, when, according to [plaintiff], the product in fact increased consumers' risk of cardiovascular disease and related health issues," were sufficient to state claims).

Abbott does not contest that the challenged claims convey that the Products are healthy; to the contrary, it expressly admits that many of the "challenged statements suggest Ensure® can help consumers

maintain healthy dietary practices in light of its nutrient content." Mot. at 15. Abbott also does not contest that the amount of added sugar in the Products makes them unhealthy. *See generally* Mot.

Instead, Abbott argues that because the nutrition facts panel discloses the amount of sugar in the Products it is impossible for consumers to be misled. *See* Mot. at 6-9. But this argument has been repeatedly considered and rejected by courts. *See Johnson-Jack*, 587 F. Supp. 3d at 963 ("[Defendant's] main argument is that the term 'Health-Ade' is not misleading because the amount of sugar in the products is accurately disclosed in the nutrition facts box and ingredients list on the label.").

First, under binding Ninth Circuit precedent, as a matter of law, disclosing the amount of added sugar in the nutrition facts box is insufficient to prevent consumer deception. Where, as here there is a misrepresentation that a product is healthful, consumers are not "required, as a matter of law, to cross-reference [those] statements . . . against information found in small print elsewhere on the product." *Walters v. Vitamin Shoppe Industries, Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017). Instead, "[c]onsumers review the small print on a product's label to learn additional details about a product, not to correct potentially misleading representations found on the front." *Id.* (citing *Williams*, 552 F.3d at 939-40). Therefore, "where product packaging contains an affirmative misrepresentation, the manufacturer cannot rely on the small-print nutritional label to contradict and cure that misrepresentation." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. May 24, 2010); *see also Williams*, 552 F.3d at 939 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability . . . .").

Relying on *Truxel v. Gen. Mills Sales, Inc.*, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019) Abbott asserts that "'[a]s a matter of law, a reasonable consumer *cannot be misled about a food product's purported 'excessive' sugar content* where the food's label plainly discloses the sugar content." Mot. at 6 (quoting *Truxel*, 2019 WL 3940956, at *4 (emphasis added)). But *Truxel* misses the point because "the allegedly problematic aspect of the defendant's label is not that it implies that the product contains no sugar, but, rather, that it falsely implies that the drinks are 'healthy.'" *Johnson-Jack*, 587 F. Supp. 3d at 968. *See also Boswell v. Costco Wholesale Corp.*, 2016 WL 3360701, at *8 (C.D. Cal. June 6, 2016) (noting that plaintiffs are "not arguing the label deceived them of the true saturated fat content," which was alleged to be unhealthy, but rather "'mislead [sic] them into believing the product was healthy *notwithstanding its*

saturated fat content.'" (emphasis in original and record quotation omitted)). The same is true here. Plaintiffs are not alleging they were deceived as to the *amount* of sugar in the Products, but rather as to the Products' healthfulness.

Abbott also relies on *Clark v. Perfect Bar, LLC*, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018), to argue that the nutrition facts box bars Plaintiffs' claims. Mot. at 8. But of all the decisions evaluating similar claims, the cursory, two-paragraph dismissal order in *Clark*—on which the *Truxel* court relied—contains the least analysis, citing no case law, and nothing in the record, not even the Complaint. As a result, the decisions in *Hadley II*, *Krommenhock I*, *McMorrow I*, and *Milan I* have been cited hundreds of times by other courts, while *Clark* and *Truxel* have largely been ignored or distinguished. *See Johnson-Jack*, 2022 WL 462827, at *5 ("[W]hen the Ninth Circuit affirmed *Clark* in a non-precedential opinion, it did not hold that a plaintiff cannot maintain a mislabeling claim based on a theory that representations of healthiness are misleading in view of the sugar content of a product.").

A key error in the *Clark* and *Truxel* reasoning is their treatment of healthfulness as a subjective inquiry, like taste or beauty, rather than an objective inquiry based on nutrition science. *See*, *e.g.*, *Clark*, 2018 WL 7048788, at *1 ("Reasonable purchasers could decide for themselves how healthy or not the sugar content would be."). But unlike taste or beauty, "whether the defendant's products are healthy or not can be determined according to scientific standards." *See Johnson-Jack*, 2022 WL 562826, at *7; *see also Krommenhock III*, 334 F.R.D. at 569 (denying summary judgment where "plaintiffs have ample, albeit disputed, evidence that the Products are not 'healthy' given the amounts of added sugar in them and considering consumer habits").

Further, the courts in *Clark* and *Truxel* did not have the benefit of the numerous studies and surveys alleged here demonstrating that "the mandatory Nutrition Facts Box is not sufficient to allow consumers to make accurate assessments of the healthfulness of foods and beverages." Compl. ¶ 83; *see also id.* ¶ 85 ("[S]tudies have found that even high school graduates and college students lack the basic health literacy skills to effectively apply nutrition label information." In sum, most consumers' "ability to interpret nutrition label information [is] poor" and "[e]ven a college education did not ensure nutrition label understanding."); *id.* ¶ 89 ("Health positioning claims also have the specific effect of "decreas[ing] perceptions of the presence of certain less healthful nutrients," and "health-related marketing . . . may mislead consumers to more

6

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

positively assess the healthfulness of sugar-containing beverages"). *Cf. Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015) ("at least in some cases, 'a federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare' that reasonable consumers would not be misled" (quotation omitted)).

Abbott scoffs at this research and misconstrues its import. *See* Mot. at 7 ("A consumer cannot claim that a label is false and misleading because her subjective and generalized expectations about a product—i.e., that it is 'healthy' . . . are purportedly inconsistent with specific, expert-level information regarding the product's potential health effects that she alleges consumers like herself do not possess and cannot understand."). But it is Abbott who, through the challenged labeling claims, creates the impression that Ensure Nutrition Drinks are healthy. And it makes perfect sense that if consumers do not fully understand the degree to which added sugar harms health or how to evaluate the healthfulness of a product, they would reasonably believe Abbott's misleading claims even though there is scientific evidence demonstrating that the products are unhealthy based on the added sugar content.

Even the FDA—in analogous circumstances—has concluded that disclosing a nutrient is not sufficient to prevent deception caused by "cholesterol free" claims. Specifically, the FDA found that because a "cholesterol free" claim would "encourage consumers to buy the product for the purpose of reducing the risk of heart disease," it

56 Fed. Reg. 60478, 60495 (Nov. 27, 1991). The FDA expressly considered and rejected that disclosing the saturated fat content—even directly adjacent any "cholesterol free" claim—was sufficient to prevent deception. *See* 58 Fed. Reg. 2302, 2334 (Jan. 6, 1993) (

> The agency does not agree that disclosure of the amount of saturated fat in proximity to a cholesterol claim is sufficient to prevent consumers from being misled. As stated above, consumers expect foods with cholesterol claims to affect blood cholesterol levels, and saturated fat is the major dietary determinant of blood cholesterol levels. These expectations are not met if disclosure of saturated fat is permitted because the saturated fat is still present. Therefore, the agency is also denying the request to allow disclosure of saturated fat instead of a threshold.).

The same logic applies here. Plaintiffs plausibly allege—and Abbott admits—that the challenged claims convey that the Products are healthy. And it is plausible that consumers would believe these healthfulness representations are true notwithstanding the Products' sugar content, since determining

7

whether a product is healthy or not is not a simple task for most consumers. *See* Compl. ¶¶ 80-93.

Abbott also relies on two cases that found that "Slightly sweet" claims could not be deceptive because a consumer could simply look at the amount of sugar. Mot. at 6. But whether a product is "Slightly sweet" is both subjective and a far-simpler question than whether a product is healthy. Thus, while knowing the amount of sugar may tell consumers whether a product is slightly sweet, it does not necessarily tell ordinary consumers how healthy a product is. In fact, Plaintiffs cite several studies demonstrating that "deciding if a food or beverage is healthy or unhealthy is a complex process, and the most consumers have difficulty accurately assessing the healthfulness of foods and beverages." Compl. ¶ 87 ("One study testing consumers' ability to determine which of six snack products was the healthiest found that '[o]nly 9% of Americans could identify the healthiest cereal bar[.]'").

While Abbott believes the Court should find that consumers are required to understand how healthy a given food or drink is based on its nutrition facts, this does not comport with the actual evidence of a reasonable consumer's understanding or the law's prescription that the reasonable consumer is not "exceptionally acute and sophisticated . . . nor need a reasonable consumer necessarily be wary or suspicious of advertising claims." *Lavie*, 105 Cal. App. 4th at 509-10 (citations and internal quotation marks omitted). "[A]t the very least, there appears to be a question of fact regarding whether a reasonable consumer would be likely to be misled by the meaning of the word 'healthy' on a food label." *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1096 (N.D. Cal. 2013).

### 2. That Some Challenged Statements Are Literally True Does Not Shield Abbott

Abbott asserts that "Plaintiffs' challenge to the statement '#1 Doctor Recommended Brand' fails because the statement is indisputably true," Mot. at 9. But Plaintiffs' consumer fraud claims "prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938 (alterations omitted). As the Supreme Court has held, "[a]dvertisements as a whole may be completely misleading although every sentence separately considered is literally true. This may be because things are omitted that should be said, or because advertisements are composed or purposefully printed in such way as to mislead." *Donaldson v. Read Mag., Inc.*, 333 U.S. 178, 188 (1948). Thus, the literal truth of the statement does not defeat Plaintiffs' claims.

8

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

Moreover, statements that a product is endorsed by an expert or doctor are actionable because they contribute to the deceptive context. *See McMorrow I*, 2018 WL 3956022, at *10 (Representation that defendant "worked closely with nutritionists to design a new kind of breakfast biscuit with energy for the morning," was actionable as it and other challenged claims spoke "to the Products' overall healthiness."); *Morrison v. TriVita, Inc.*, 2013 WL 1148070, at *1, *4 (S.D. Cal. Mar. 19, 2013) (denying motion to dismiss where plaintiff alleged "that she 'would not have bought Nopalea from the Defendant but for the representations the Defendant made as to Nopalea's effectiveness, safety, and other qualities,'" including where, among other things, "the company suggest[ed] Nopalea is recommended by doctor").

Next, Abbott contends that "the statement 'With Nutrients for Immune System Support' is also true, and Plaintiffs offer no reason to believe a reasonable consumer would believe it to be misleading." Mot. at 10. Abbott relies on a case from Alabama in which the plaintiff challenged, *inter alia*, the claims "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow." *Morris v. Walmart Inc.*, 2020 WL 5645812, at *5 (N.D. Ala. Sept. 22, 2020). But the plaintiff in *Morris* admitted that "large amounts of sugar and empty calories do not necessarily prevent the shakes from providing vitamins and minerals to help children thrive and grow," *id.*, leading the court to dismiss the matter. In contrast, Plaintiffs allege that "scientific literature demonstrates that consumption of sugar-sweetened beverages has deleterious effects on immune system function," Compl. ¶ 41, so that the added sugar prevents the Products from supporting immune system. *See also id.* ¶¶ 42-45. A reasonable consumer thus would plausibly be misled by the statement because they could reasonably believe, based on Abbott's representation, that the Products *as a whole* benefit or support the immune system, which is false.

Finally, Abbott asserts that "Discover More at Ensure.Com," "Learn About Ensure Complete Nutrition and Benefits," and "Chat Live with a Registered Dietitian About Nutrition" must be dismissed because "[n]one of these statements purport to describe the product at all, and instead are instructions for how customers can learn more about the product." Mot. at 11-12. But telling consumers they can chat with a "Registered Dietitian About Nutrition" and "Learn About Ensure Complete Nutrition and Benefits" reinforces and contributes to the misleading message that the products are healthy and based on sound nutrition principles, *see* Compl. ¶ 18.

9

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

### 3. The Challenged Health and Wellness Representations Should Not Be Dismissed as Puffery as They Contribute to the Deceptive Message

Abbott asserts that the statements "Complete, Balanced Nutrition," "advanced nutrition shake," "most advanced nutritional product, designed to help rebuild your strength and energy from the inside, with an All-in-One blend to support your health," and "[r]ecommend[s] 2 bottles per day as part of a healthy diet" each constitute puffery. *See* Mot. at 12-13. But a statement is puffery only if it "is extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). And none of the statements Abbott asserts are puffery are so "outrageous" or "exaggerated as to preclude reliance by consumers." *Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (quotation omitted). Rather, because the representations concern health and wellbeing, they are among the most reliance-inducing claims, since "consumers rely on health-related claims on food products in making purchasing decisions," *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014) (record citation omitted).

Moreover, each of these claims reinforces the overall message that the Ensure Nutrition Drinks are healthy and therefore they "arguably contribute to the alleged 'deceptive context of the packaging as a whole,'" thus the Court should "not find, at this stage of the proceedings, that they are so general as to be unable to mislead a reasonable consumer," *Coe v. General Mills, Inc.*, 2016 WL 4208287, at *6 (N.D. Cal. Aug. 10, 2016) (quoting *Williams*, 552 F.3d at 939 n.3).

Likewise, although the each of the terms may require contextualization, they are not so vague that they are insusceptible to verification. For example, Plaintiffs allege it is "deceptive for Abbott to 'Recommend 2 bottles per day as part of a healthy diet' when following this recommendation would cause consumers to exceed the daily added sugar." Compl. ¶ 95. Likewise, the terms "nutritious" or "nutrition" should not be dismissed as puffery when considered in context of the packaging because even though "nutritiousness can be difficult to measure," it "contributes [ ] to the deceptive context of the packaging as a whole." *Williams*, 552 F.3d at 939 n.3. Moreover, the adjectives "Complete" and "advanced" are not "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely," like the terms "unbelievably" and "positively," *Hadley II*, 273 F. Supp. 3d at 1083. In fact, "advanced" indicates that it is based on research and science and Plaintiffs alleged that, given authoritative bodies recommend

10

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

"less than 5% of calories for a healthy food, it is misleading for Abbott to claim that its Ensure Nutrition Drinks provide 'complete' and 'balanced' nutrition when between 16.4% to 40% of their calories come from added sugar." Compl. ¶77. Rather than being unmeasurable, "Plaintiff[s] allege[] that the quantity of added sugar in Defendant's products causes Defendant's products to be unhealthy, and backs that assertion up with various scientific studies that show the health effects of added sugar," *Hadley II*, 273 F. Supp. 3d at 1085. Thus, the Court should not dismiss them as puffery.

**B.    Plaintiffs' Claims are Not Preempted**

**1.    In Seeking to Invalidate Plaintiffs' Claims, Abbott Bears a "Considerable Burden" of Overcoming the Strong Presumption Against Preemption**

There are two "cornerstones" of preemption jurisprudence:

First, the purpose of Congress is the ultimate touchstone in every pre-emption case. . . . Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, [courts] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations, citations and alterations omitted). This presumption against preemption demands that courts give preemption statutes "narrow reading[s]." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992). Where there are "plausible alternative reading[s]" of an express preemption provision, courts "have a *duty* to accept the reading that disfavors pre-emption." *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (2005) (emphasis added); *see also Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 798 (2015) ("In mapping the scope of a preemption clause, the Court typically must 'accept the reading that disfavors pre-emption,' if such reading is plausible." (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008))).

The strong presumption against preemption "applies with particular force when Congress has legislated in a field traditionally occupied by the States." *Altria Group*, 555 U.S. at 77 (citation omitted). "[C]onsumer protection laws . . . are within the states' historic police powers and therefore are subject to the presumption against preemption. Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within states' historic police powers." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008) (internal quotations, citation and alterations omitted). As a result,

11

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

"[t]he presumption against preemption in this case is a strong one," *see Gustavson v. Wrigley Sales Co*., 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013), and Defendant "bear[s] the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law," *see Stengel v. Medtronic Inc*., 704 F.3d 1224, 1227 (9th Cir. 2013) (citation and quotations omitted).

Under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*. ("FDCA"), foods are misbranded when they meet one of the definitions for misbranding under § 343, including where a label is "false or misleading in any particular," *id*. § 343(a)(1). While the Nutrition Labeling and Education Act ("NLEA"), which modified the FDCA, preempts states from imposing "any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" set forth in the statute, 21 U.S.C. § 343-1(a), it also contains a savings clause which states that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1(a)] of the [FDCA]." Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (1990), 21 U.S.C. § 343-1 note (1).

Thus, "plaintiffs can avoid preemption if they show either that the labeling material they challenge does not constitute a [regulated claim] or, if it does, that the product effectively is 'misbranded,'" *In re Quaker Oats Labeling Litig*., 2012 WL 1034532, at *2 (N.D. Cal. Mar. 28, 2012); *accord Hadley II*, 273 F. Supp. 3d at 1073 (claims "preempted to the extent they are based on implied nutrient content claims or health claims" (emphasis added)); *Krommenhock I*, 255 F. Supp. 3d at 953 (preemption "'turns on whether the challenged statements are authorized by the FDA's regulations'" (quotation omitted)); *McMorrow I*, 2018 WL 3956022, at *7 (

> Because Plaintiffs premise their claims on the theory that the Products' added sugar content makes the Products unhealthy, the Court must now determine which of Defendant's statements qualify as express nutrient content, implied nutrient content, or health claims. If Defendant's statements are any of these type of claims, then Plaintiffs' claims relating to these statements are preempted. Conversely, if the challenged statements are general, unregulated health and wellness claims . . . Plaintiffs may proceed with their claims based on these statements. (citations omitted)).

"An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1). "An implied nutrient content claim" either (1) "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')," or (2) "[s]uggests that the food,

because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')." *Id*. § 101.13(b)(2).

### 2.   Abbott Has Not Met its Burden of Establishing that Preemption Applies

"Federal preemption is an affirmative defense upon which the defendants bear the burden of proof," *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251 n.2 (2011) (Sotomayor and Ginsburg, JJ., dissenting) (quotation and internal quotation marks omitted). Here, Abbott has not carried it burden of showing that the challenged claims it asserts are preempted[5] constitute regulated and compliant nutrient content claims.

**Ensure Complete**:[6] Abbott contends that "Complete, Balanced Meal Replacement," "Immune," "Muscle," "Heart," "Digestion," and "Bone," are preempted *when they appear in a chart on the multipack* "identifying various nutrients in the product." *See* Mot. at 15 (picturing chart). But as the Complaint shows, Plaintiffs challenge the statements "Immune," "Digestion," and "Heart" *when they appear on the front of the label unconnected to any nutrient content claim*. *See* Compl. p. 4 (highlighting "Immune," "Digestion," and "Heart," claims in red box on front of label but not in the chart). Moreover, while the "Immune," "Digestion," and "Heart" may arguably be made in connection with nutrient content claims when they appear in the chart, the statement "Complete, Balanced Meal Replacement" is not made in direct connection with any nutrient content claims in the chart.

**Ensure® Enlive Advanced Nutrition Shake**:[7] Abbott contends that "most advanced nutritional product" and "All-in-One blend to support your health," which appear on the back of the bottle, are preempted because they "appear in the same paragraph on this bottle as statements . . . 'HMB + Protein,'

---

[5] Abbott does not contend that any claims on Ensure Original are preempted. *See* Glick Decl. Ex.1 at 1.

[6] Abbott does not contend the following statements are preempted: "nutrition shake," "#1 Doctor Recommended Brand," "Complete," "Complete, Balanced Nutrition—For—… Heart… Immune," "Ensure's most advanced Complete, Balanced Nutrition shake," "Discover More at Ensure.Com," "Learn About Ensure Complete's Nutrition and Benefits," "Chat Live with a Registered Dietitian About Nutrition," and "with Nutrients for Immune System Support." *See id.* at 2-3.

[7] Abbott does not contend the following statements are preempted: "Complete, Balanced Nutrition®," "#1 Doctor Recommended Brand," "Recommend[s] 2 bottles per day as part of a healthy diet," and "most advanced nutritional product, designed to help rebuild your strength and energy from the inside, with an All-in-One blend to support your health." *See* Glick Decl. Ex.1 at 4-5.

'Vitamin D,' 'Omega-3,' and 'Antioxidants (Vitamins C & E, & Selenium).'" Mot. at 15-16. But none of these are nutrient content claims because none of them state or imply the nutrient in question is "present in a certain amount." 21 C.F.R. § 101.13(b)(2). Thus, the statements "most advanced nutritional product" and "All-in-One blend to support your health," are not made "in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams (g) of fat")." *Id.*

Abbott also contends the phrase "advanced nutrition shake" is "made with statements about the product's nutrient content—specifically, '20g Protein' and '26 Vitamins & Minerals.'" Mot. at 15-16. But "26 Vitamins & Minerals" is not a nutrient content claim as it implies no level of the vitamins and minerals. Further, as made clear lower down on the label, "20g protein" relates the statement "Muscle." *See* Compl. p. 5 ("MUSCLE | 20g protein + HMB"). Moreover, "advanced nutrition shake" is visually separated from the "20g Protein" statement, which appears within a closed and separate graphic, with a different background color and different size, font, and orientation. *See id.* Likewise, "All In One … Heart[,] Immune[, and] Digestion" appears in a circular graphic of a different color than the statement "20g Protein" appears in. Moreover, it is the word "Muscle" in the phrase "All In One Bone[,] Muscle[,] Heart[,] Immune[, and] Digestion"—which Plaintiffs don't challenge—that relates to the statement "20g protein."

***Ensure Compact***, ***Ensure Clear***, and ***Ensure Original Powder***: Abbott asserts that "therapeutic nutrition shake," "nutrition drink," and "nutrition powder" are preempted on the respective products because they are each made in connection with nutrient content claims. *See* Mot. at 16. But as with the "nutrition shake" claim on Ensure Complete and the "advanced nutrition shake" on Ensure Enlive, these claims are not made in connection with any nutrient content claims. Rather, they are set apart in distinct portions of the label. *See* Compl. pp. 7-9. Abbott also contends that "Complete, Balanced Nutrition" is preempted on Ensure Compact, Mot. at 16, but in contrast to the "9g Protein" claim, it is intentionally offset by placing it in a distinct color. Thus, this does not come close to "[t]he example provided in the regulation show[ing] the required, direct connection [to a governed nutrient]; 'healthy, contains 3 grams of fat,'" *see Krommenhock v. Post Foods, LLC*, 2018 WL 1335867, at *5 (N.D. Cal. Mar. 15, 2018) ["Krommenhock II"] (emphasis added). Given the strong presumption against preemption, the Court should decline "to stretch the regulation to cover" the challenged statement, since it is "not combined with direct references to a governed nutrient," *see id.*

14

1

2

**C.      Plaintiffs Satisfy the Particularity Requirement by Identifying Each Challenged Labeling Claim, with Exemplars, and Explaining Why Each is Misleading**

3      Rule 9(b) is satisfied where allegations are "specific enough to give defendants notice of the

4  particular misconduct which is alleged to constitute the fraud charged so that they can defend against the

5  charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764

6  (9th Cir. 2007). In the false advertising context, the particularity requirement is satisfied by "identifying or

7  attaching representative samples of [misleading materials]," *Ries v. Hornell Brewing Co.*, 2011 WL

8  1299286, at *4 (N.D. Cal. Apr. 4, 2011) (quoting *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1306

9  n.19 (S.D. Cal. 2003) (denying motion to dismiss "to the extent that Plaintiffs' claims arise out of the alleged

10  deceptive labeling of the products for which exemplary labels are appended")).

11      Here, Plaintiffs provide exemplars of the challenged labeling, *see* Compl. pp. 3-5, 7-9, list the

12  challenged misrepresentations they relied upon, *id.* ¶¶ 107, 109, and explain why each challenged

13  representation is misleading, *see id.* ¶¶ 15-16, 18-20, 22-25, 27-28, 30-31, 33-34, 75-96. In short, Plaintiffs

14  allege the who, what, when, where, and how of the fraud: "[t]he 'who' is [Abbott]. The 'what' is the

15  statement[s alleged to be misleading.] The 'when' is alleged as . . . 'throughout the class period.' The 'where'

16  is on the . . . package labels. The 'how the statements were misleading' is the allegation that [they convey

17  the Products benefit rather than detriment health despite containing excessive added sugar]." *See Astiana v.

18  *Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011); *see also Chacanaca*,

19  752 F. Supp. 2d at 1126 ("[P]laintiffs have identified the particular statements they allege are misleading,

20  the basis for that contention, where those statements appear on the product packaging, and the relevant time

21  period in which the statements were used. As such, they have satisfied the requisite 'who, what, when,

22  where, and how' of the misconduct charged.").

23      Abbott argues that the Complaint fails to satisfy the requirements of Rule 9(b) because it does not

24  allege "how many purchases there were, how much Plaintiffs paid for the products, at what specific dates

25  and times." Mot. at 18. But this information concerns "the circumstances of [Plaintiffs'] purchases," *id.*,

26  rather than "particular misconduct which is alleged to constitute the fraud charged," *Swartz*, 476 F.3d at

27  764, and therefore is not required under Rule 9(b), *see, e.g., In re ConAgra Foods, Inc.*, 908 F. Supp. 2d

28  1090, 1100 (C.D. Cal. 2012) ("the court does not believe that requiring that plaintiffs allege specific dates

15

on which they saw the representations is necessary or realistic"); *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) ("[A] complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." (citation, quotation, and internal quotation marks omitted)).

Here, Plaintiffs "clearly specif[y] the core message of the advertising campaign, and . . . this combined with specific examples of the allegedly fraudulent advertising is sufficient to give defendants adequate notice for purposes of 9(b)." *In re Oreck Corp.*, 2012 WL 6062047, at *15 (C.D. Cal. Dec. 3, 2012).

Abbott asserts that "Plaintiffs fail to plead 'facts sufficient to give rise to an inference of fraudulent intent,'" Mot. at 17, but fraudulent intent is only an element of Plaintiffs' intentional misrepresentation claim.[8] Moreover, Rule 9(b) states explicitly that "intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b). And the Ninth Circuit has expressly rejected adoption of the Second Circuit's "strong inference" test that Abbott asserts plaintiffs fail to meet. *Compare* Mot. at 17-18, *with In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (superseded by statute on other grounds) ("We find no more justification for a 'some inference' test than we did for the Second Circuit's 'strong inference' test."). As the Ninth Circuit explained in *In re Glenfed*, "when a complaint alleges with particularity the circumstances constituting fraud, as required by the rule, then generally it will also have set forth facts from which an inference of scienter could be drawn," 42 F.3d at 1547. Thus, "plaintiffs may aver scienter generally, just as the rule states—that is, simply by saying that scienter existed." *Id.*

Here, Plaintiffs allege "Abbott is well aware[ that] consumers seek out and prefer healthful foods and beverages," Compl. ¶ 12; that it "marketed the Ensure Nutrition Drinks in a manner conveying to

---

[8] *See Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237, at *7 (C.D. Cal. May 22, 2013) ("Unlike common law fraud, the CLRA requires that a plaintiff show only a defendant's knowledge of the defect, rather than intent to defraud."); *Nazemi v. Specialized Loan Servicing, LLC*, 2022 WL 17220707, at *3 (C.D. Cal. Oct. 31, 2022) ("UCL fraud is distinct from common law fraud and does not require a showing of intent, scienter, actual reliance, or damage."); *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) ("it is not necessary under [§ 349] that a plaintiff establish the defendant's intent to defraud"); *Braynina v. TJX Cos.*, 2016 WL 5374134, at *4 (S.D.N.Y. Sept. 26, 2016) ("[C]ourts have found that the scope of § 350 is as broad as that of § 349 . . . and that its essential elements are the same.").

16

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

reasonable consumers that the Products promote general health," *id*. ¶ 209; that "consuming sugar sweetened beverages like the Ensure Nutrition Drinks harms, rather than supports the overall health," *id.*; that Abbott "holds itself out as have expert knowledge regarding the impact of consuming the Products," *id.* ¶ 99; and thus, that "Abbott knew that the misrepresentations were misleading," *id.* ¶ 211. Plaintiffs further allege that "[r]ather than correct the misconception created by its marketing of the Ensure Nutrition Drinks, Abbott continues to leverage consumer confusion to increase its profits at the expense of consumers' health," *id.* ¶ 99. Thus, Plaintiffs sufficiently allege Abbott intended to misrepresent the Products.

D.   **Ms. LeGrand May Assert Claims on Behalf of Class Members Who Purchased Substantially Similar Products that She did Not Personally Purchase**

Abbott asserts that Ms. LeGrand lacks standing to bring claims under the UCL, FAL, and CLRA for any products that she did not personally purchase or to challenge any representation she did not personally rely upon. *See* Mot. at 13-14. But "[c]ourts have previously found that diverse products bearing similar labels may be considered 'substantially similar.'" *Maisel v. S.C. Johnson & Son, Inc.*, 2021 WL 1788397, at *4 (N.D. Cal. May 5, 2021) (Hixson, J.) (collecting cases). As "opinions in food labeling cases have explained, plaintiffs have standing to sue over 'unpurchased products' when the label statements challenged are very similar to the statements on the labels of the unpurchased products and there are no material differences between the products that would significantly alter the reasonable consumer analysis." *See Krommenhock I*, 255 F. Supp. 3d at 968 (citation omitted).

While Abbott asserts Ms. LeGrand lacks standing to bring "UCL, CLRA, and FAL claims related to other challenged statements and other products" she did not purchase, Mot. at 13, "[t]hat [she] purchased different types of [beverages] with different ingredients, therefore, is not legally significant in and of itself." *Krommenhock I*, 255 F. Supp. 3d at 969 (citation omitted). And Abbott has not even tried to show that the differences between the products or claims are material. *See* Mot. at 13-14. Indeed, it cannot because any differences are immaterial. For example, Plaintiffs allege that authoritative bodies recommend "limiting added sugar consumption to less than 5% or 10% of daily calories for a healthy diet, and less than 5% of calories for a healthy food," but the Ensure Nutrition Drinks get "between 16.4% to 40% of their calories [] from added sugar." Compl. ¶ 77. *See also id.* ¶¶ 14, 17, 21, 26, 29, 32 (alleging sugar content as a percentage of calories). Because all of the Products exceed the recommended level of added sugar, these differences

17

are immaterial. *Compare Krommenhock III*, 334 F.R.D. at 562 (finding commonality satisfied where "across the subclasses, 'the added sugar, comprising 13.33% to 40% of calories, falls well above the 5% and 10% daily limits endorsed by authoritative sources'" (record citation omitted)).

Likewise, Abbott makes no showing that differences in the challenged claims are material. Rather, all of the Products claim to be a "nutrition shake," "nutrition drink," or "nutrition powder" and tout themselves "#1 Doctor Recommended Brand," Compl. ¶¶ 15, 18, 19, 22-24, 27, 30, 33. All of the products, besides Ensure Clear, also claim to provide "Complete, Balanced Nutrition." *See id.* "[B]y calling the Products 'nutrition' drinks, labeling them with additional health and wellness messages as identified herein, and touting them as 'Doctor Recommended,' Abbott conveys that the Products are healthy, meaning at least that they will not detriment health." *Id.* ¶ 78. Because "all the products are the same and deceive in the same manner, [] the Complaint sufficiently pleads substantial similarity." *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *10 (N.D. Cal. Mar. 14, 2014); *see also Krommenhock I*, 255 F. Supp. 3d at 969.[9]

## II.    Ms. LeGrand States Breach of Warranty Claims

Abbott asserts Ms. LeGrand "does not allege factual promises of the sort that could create a warranty," Mot. at 20. But "[s]tatements made by a seller . . . are presumptively affirmations of fact unless it can be demonstrated that the buyer could only have reasonably considered the statement as a statement of the seller's opinion." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (1985) ("'The determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult . . .' [and] '[c]ourts have liberally construed affirmations of quality made by sellers in favor of injured consumers.'" (citations omitted)). While Abbott baldly asserts that the statements "Ensure can 'support' or 'help[]' health, provide 'Complete, Balanced Nutrition,' [and] be used as 'part of' a healthy diet," do not constitute warranties, Mot. at 20, it provides no reasoning as to why these or any other statements are not factual or otherwise too vague. While these statements may "require a certain amount of contextualization to evaluate

---

[9] Abbott relies on inapposite cases, *see* Mot at 13-14, that do not concern the situation presented here, where "a plaintiff, who viewed and relied on representations on one of defendant's products, to have standing to assert claims on behalf of unnamed class members who purchased similar products marketed and manufactured by defendant which included substantially similar claims." *Reed v. NBTY, Inc.*, 2014 WL 12284044, at *8 (C.D. Cal. Nov. 18, 2014) (distinguishing cases applying the substantial similarity test). Because none of the cases cited by Abbott involved situations where the substantial similarity test applied, they are inapposite.

18

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

. . . this does not render them insusceptible to verification," *see Allen v. Hylands, Inc*., 2012 WL 1656750, at *4 (C.D. Cal. May 2, 2012). Whether the Products "support your health" or provide "Complete, Balanced Nutrition" can be tested and measured based on the Products' nutrient profiles—specifically, Plaintiff alleges, whether they contain more than 5% or 10% of calories from added sugar. In *In re Ferrero Litig*., for example, the court found that "nutritious," and "a healthy and balanced breakfast" were "sufficiently specific and unequivocal to constitute an affirmative of fact or promise," 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) (citations omitted). Likewise, numerous courts have found statements that a product is nutritious or provides "nutrition for sustained energy" constitute warranties. *See Milan I*, 2019 WL 3934918, at *1, *3 (holding that "plaintiffs have plausibly alleged that those promises of health and wellness were breached due to the products' excessive sugar content[ ]" based on theory that the labels "convey a health and wellness message"); *Jones*, 2016 WL 5210935, at *9 (holding "Superfood," "Coconut is one of the world's most nourishing foods," "is 'better than butter,'" and "A nutritious substitute in baking" constituted affirmative facts or promises).[10] Thus, the court should reject Abbott's argument.

Abbott next asserts that Ms. LeGrand "does not allege that the products she purchased were unfit for consumption," Mot. at 20. But her implied warranty claim is because the Products "did not conform to promises and affirmations made on the container or label of the goods," Compl. ¶ 179, not a minimum level of quality. In California, merchantability not only means a product is fit for its ordinary purpose, but also that a product "[conforms] to the promises or affirmations of fact made on the container or label," *In re Ferrero Litig*., 794 F. Supp. 2d at 1118 (quoting *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975) (citing Cal. Com. Code § 2314(2)(f))). Because Ms. LeGrand, "bring[s] [her] claim under a different definition of merchantability," the Court should "decline[] to dismiss Plaintiff's claim for breach of the implied warranty of merchantability," *In re Ferrero Litig*., 794 F. Supp. 2d at 1118. *See also Bronson v. Johnson & Johnson,*

---

[10] Abbott is misguided in asserting that in *Nathan v. Vitamin Shoppe, Inc.*, 2018 WL 828135 (S.D. Cal. Feb. 12, 2018), the court held "that 'weight management' and 'appetite control' statements were not specific affirmations of fact," Mot. at 20. Instead, the "problem with Plaintiff's complaint [was] her assertion that the phrases 'Weight Management' and 'Appetite Control' equate to representations that the Product provides weight-loss benefits," a phrase the product did not use. *See Nathan*, 2018 WL 828135, at *2. After the plaintiff amended to fix this defect, the court held the "Plaintiff plausibly alleges an affirmation of fact or promise by pleading that the Product's label promises consumers help with 'Weight Management' and 'Appetite Control.'" *Nathan v. Vitamin Shoppe, Inc.*, 2019 WL 1200554, at *8 (S.D. Cal. Mar. 14, 2019).

19

1    *Inc.*, 2013 WL 1629191, at *12 (N.D. Cal. Apr. 16, 2013) ("Where plaintiffs challenge food labels that are

2    not preempted by Federal law and are otherwise allowed, courts refrain from dismissing implied warranty

3    claims.").

### III.    Ms. Bates Alleges a Special Relationship and States a Negligent Misrepresentation Claim

5          "'[A] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of

6    a special or privity-like relationship imposing a duty on the defendant to impart correct information to the

7    plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *Hughes v.

8    Ester C Co.*, 930 F. Supp. 2d 439, 474 (E.D.N.Y. 2013) (quotation omitted). "[A] determination of whether

9    a special relationship exists is essentially a factual inquiry," *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d

10   38, 77 (E.D.N.Y. 2017), and the "factor of reliance ties into the special relationship element." *Hughes*, 930

11   F. Supp. 2d at 474. In determining whether a special relationship exists courts consider: (1) "whether the

12   person making the representation held or appeared to hold unique or special expertise," (2) "whether a

13   special relationship of trust of confidence existed between the parties," and (3) "whether the speaker was

14   aware of the use to which the information would be and supplied it for that purpose," *Kimmell v. Schaefer*,

15   675 N.E.2d 450, 454 (N.Y. 1996). "When a plaintiff fails to allege the existence of a special relationship or

16   the relationship is only "sparsely pled," the plaintiff must "emphatically allege[ ] the other two factors

17   enunciated in *Kimmell*." *Greene*, 262 F. Supp. 3d at 75 (quoting *Eternity Glob. Master Fund Ltd. v. Morgan

18   *Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004)).

19         Here, Plaintiffs allege that Abbott "is a large sophisticated company that holds itself out as have

20   expert knowledge regarding the impact of consuming the Products," Compl. ¶ 99, in numerous ways. For

21   example, on the packaging of its Products Abbott "invites consumers to 'Discover More at Ensure.Com' in

22   order to 'Learn About Ensure Complete's Nutrition and Benefits' and 'Chat Live with a Registered Dietitian

23   About Nutrition.'" *Id.* ¶ 18. It also touts the Products as "advanced nutrition shake[s]," *id.* ¶ 22, and

24   "therapeutic nutrition shake[s]," *id.* ¶ 27, and the "'most advanced nutritional product[s], designed to help

25   rebuild your strength and energy from the inside, with an All-in-One blend to support your health,'" *id.* ¶

26   23. In addition, Abbott also touts the Products as the "#1 Doctor Recommended Brand," which "lends

27   credibility to the message that the Ensure Products are healthy, effective at providing the claimed benefits,

28   and backed by scientific evidence (since a reasonable consumer would not expect doctors to recommend

20

products not backed by scientific evidence of their benefits, or products likely to harm health)." *Id*. ¶ 15. These claims demonstrate that Abbott has unique expertise, which is in stark contrast to "lay consumers who did not have the specialized knowledge that Abbott had about the scientific literature regarding the likely health effects of consuming the Ensure Nutrition Drinks given their added sugar content." *Id*. ¶ 110. Moreover, "Abbott intends that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement" Compl. ¶ 205, because "Abbott is well aware, consumers seek out and prefer healthful foods and beverages" *Id*. ¶12. *See also id*. ¶ 75. These allegations are sufficient to infer a special relationship. *See Hughes*, 930 F. Supp. 2d at 475 (inferring a special relationship between the parties because the defendants "held themselves out as holding a type of special expertise regarding the purported health benefits of Ester–C" where "Ester–C's website contains a section entitled, 'Ask an Expert,'" and the "product's labeling also contains language that, at the very least, suggests some level of medical or scientific backing for its claims. (See Product Labels, Ex. A ("# 1 Pharmacist Recommended Brand" . . . [and] Ester–C [ ] can be taken all year long to support heart health, antioxidant health, healthy bones and joints, and healthy skin, hair and nails"). Especially given the factual nature of the inquiry, "although the parties engaged in a typical commercial transaction, Plaintiffs have pled facts sufficient to show that Defendant possessed special expertise and knowledge about the health claims on its Infant Formula advertisements and knew that Plaintiffs would rely on those claims." *Greene*., 262 F. Supp. 3d at 77.

## IV.   Plaintiffs State Claims for Unjust Enrichment

Abbott incorrectly asserts that in California "unjust enrichment is not a standalone cause of action," Mot. at 21. Contrary to the superseded cases Defendant cites, both the California Supreme Court and "[t]he Ninth Circuit ha[ve] found that California recognizes an independent cause of action for unjust enrichment," *see Dang v. Samsung Elecs. Co*, 2018 WL 6308738, at *11 (N.D. Cal. Dec. 3, 2018) (citing *Bruton v. Gerber Prods. Co*, 703 F. App'x 468, 470 (9th Cir. 2017)); *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015)).

Moreover, contrary to Abbott's unsupported assertion, Ms. Bates' New York unjust enrichment claims are not duplicative of her claims under New York's GBL §§ 349 and 350. "An unjust enrichment claim is not duplicative if a 'reasonable trier of fact could find unjust enrichment . . . without establishing

21

all the elements for one of [Plaintiff's] claims sounding in law.'" *McCracken v. Verisma Sys., Inc.*, 2017 WL 2080279, at *8 (W.D.N.Y. May 15, 2017) (quoting *Nuss v. Sabad*, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016)). "In contrast to a claim for unjust enrichment, a claim for violating NYGBL § 349 requires "[p]roof that [a] defendant's acts are directed to consumers[.]" *Id.*, at *8 (citation omitted); *see also id.* ("The elements of a cause of action for unjust enrichment are as follows: (1) enrichment of the defendant, (2) at the plaintiff's expense, (3) the retention of which by the defendant is 'against equity and good conscience . . . .'" (quotation omitted)). Because "[t]he elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350," and Abbott "does not argue that [Ms. Bates] fails to plausibly allege facts that could support an unjust enrichment claim . . . a 'reasonable trier of fact could find unjust enrichment . . . without establishing all the elements for one of [plaintiff's other] claims sounding in law.'" *Warner v. StarKist Co.*, 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019) (quoting *McCracken*, 2017 WL 2080279, at *8).

## V.     Abbott is Subject to Personal Jurisdiction for Ms. Bates' Claims

Abbott does not argue that it is not subject to personal jurisdiction for Ms. LeGrand's claims, but instead argues that, under *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, it is not subject to personal jurisdiction for Ms. Bates' claims. *See* Mot. at 22. But unlike this case, "[t]he *Bristol-Myers* litigation was not a class action" and it "is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff." *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) ("the Court is not persuaded to extend *Bristol-Myers* to the class action context"). *See also Feller v. Transamerica Life Ins.* Co., 2017 WL 6496803, at *17 (C.D. Cal. Dec. 11, 2017) (distinguishing *Bristol-Myers* since "there are important differences between a class action and a mass tort action for purposes of personal jurisdiction"). Thus, *Bristol-Myers* does not mean Abbott is not subject to personal jurisdiction for Ms. Bates' claims.

But "[e]ven if the Court were to apply *Bristol-Myers* . . . pendent personal jurisdiction would provide an independent basis to find personal jurisdiction," *see In re Packaged Seafood Litig.*, 338 F. Supp. 3d 1118, 1172-73 (S.D. Cal. 2018). As one court recently explained:

The Ninth Circuit has adopted the doctrine of pendent personal jurisdiction, under which a district court is permitted to exercise jurisdiction over a defendant "with respect to a claim for

which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction."

*Allen v. ConAgra Foods, Inc.*, 2018 WL 6460451, at *7 (N.D. Cal. Dec. 10, 2018) (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)).

Here, Ms. Bates' claims arise out of a common nucleus of operative facts as Ms. LeGrand's claims, namely Abbott labeling the Products with misleading health and wellness claims. Given that Abbott does not dispute the Court has personal jurisdiction for Ms. LeGrand's claims, and the claims arise out of Abbott's same course of conduct, exercising pendent jurisdiction is proper. *See Action Embroidery*, 368 F.3d at 1181 ("When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts."); *Sloan v. GM, LLC*, 287 F. Supp. 3d 840, 860 (N.D. Cal. 2018) ("*Action Embroidery* holds that a claim that itself lacks an independent connection to the federal forum nevertheless may have a sufficient nexus for purposes of the personal jurisdiction analysis if it arises out of a common nucleus of operative facts with other claims properly before the court.").

Further, exercising jurisdiction "serves the interests of "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties," *Sloan*, 287 F. Supp. 3d at 860. Otherwise, Ms. Bates' claims would either be litigated separately in New York, costing additional judicial resources and risking inconsistent judgements. Or, more likely, after refiling in New York, the cases would be related and Ms. Bates case transferred back to this district under the first-to-file rule. In contrast, "the additional burden in litigating the pendent state law claims are minimal" and "litigating all claims together . . . will reduce piecemeal litigation and improve judicial economy." *In re Packaged Seafood Litig.*, 338 F. Supp. 3d at 1173; *Sloan*, 287 F. Supp. 3d at 863-64 (exercising pendent jurisdiction where "GM has not explained how it would be less burdensome to answer to those plaintiffs' claims in New York . . . rather than San Francisco, as those plaintiffs would likely be able to exercise personal jurisdiction over GM in their home states" and finding "judicial economy, the avoidance of piecemeal litigation, the overall convenience of the parties, and the minimal additional burden on Defendant all counsel strongly in favor of exercising pendent personal jurisdiction").

23

*LeGrand et al. v. Abbott Laboratories*, Case No. 3:22-cv-05815-TSH
PLAINTIFFS' OPPOSITION TO ABBOTT'S MOTION TO DISMISS

## CONCLUSION

The Court should deny Abbott's motion, but if it is inclined to grant the motion in any respect, Plaintiffs request that dismissal be without prejudice and with leave to amend.

Dated: December 27, 2022

Respectfully Submitted,

/s/ Paul K. Joseph

**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiffs***