Mark McKane, P.C. (SBN 230552)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Tel.: (415) 439-1400
Fax: (415) 439-1500
Email: mark.mckane@kirkland.com

Tracie L. Bryant (SBN 287508)
Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
Michael A. Glick (admitted *pro hac vice*)
Terence J. McCarrick (admitted *pro hac vice*)
Elizabeth Hedges (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-5000
Fax: (202) 389-5200
Email:   tracie.bryant@kirkland.com
Email:   glocascio@kirkland.com
Email:   michael.glick@kirkland.com
Email:   tj.mccarrick@kirkland.com
Email:   elizabeth.hedges@kirkland.com

*Attorneys for Defendant Abbott Laboratories*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONDALISA LEGRAND and LARISSA BATES, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | CASE NO. 3:22-cv-05815-TSH<br><br>**ABBOTT LABORATORIES' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**<br><br>Judge: Honorable Thomas S. Hixson<br>Hearing Date: February 9, 2023<br>Time: 10:00 a.m.<br>Location: Via Zoom |

## TABLE OF CONTENTS

**Page**

I.   NO REASONABLE CONSUMER WOULD FIND THE CHALLENGED STATEMENTS MISLEADING. ........................................................................ 2

    A.   Ensure®'s Sugar Disclosures Defeat Any Plausible Theory of Deception. ............ 2

    B.   Plaintiffs Cannot Challenge Undeniably True Label Statements. .......................... 7

    C.   Plaintiffs Cannot Challenge Statements That Constitute Puffery. .......................... 9

II.  PLAINTIFFS' CHALLENGES TO NUTRIENT CONTENT CLAIMS ARE PREEMPTED. ...................................................................................................... 10

III. PLAINTIFFS' FRAUD CLAIMS FAIL AS A MATTER OF PLEADING AND LAW. ............................................................................................................... 11

IV.  LEGRAND LACKS STANDING AS TO NON-PURCHASED PRODUCTS. .............. 12

V.   PLAINTIFFS FAIL TO PLEAD THEIR COMMON LAW CLAIMS. .......................... 13

    A.   LeGrand Does Not Allege A Breach Of Warranty. ................................................ 13

    B.   Bates Fails to State a Negligent Misrepresentation Claim. .................................... 13

    C.   Plaintiffs' Duplicative Unjust Enrichment Claims Should Be Dismissed. ............ 13

VI.  THE COURT LACKS JURISDICTION OVER BATES' CLAIMS. ............................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
368 F.3d 1174 (9th Cir. 2004) ...................................................................................14

*Allen v. ConAgra Foods, Inc.*,
2018 WL 6460451 (N.D. Cal. Dec. 10, 2018).............................................................15

*Allen v. ConAgra Foods, Inc.*,
2019 WL 5191009 (N.D. Cal. Oct. 15, 2019)..............................................................15

*Anderson v. Bungee Int'l Mfg. Corp.*,
44 F. Supp. 2d 534 (S.D.N.Y. 1999)..............................................................................9

*Andrade-Heymsfield v. NextFoods, Inc.*,
2022 WL 1772262 (S.D. Cal. Apr. 27, 2022)..........................................................6, 14

*Beers v. Mars Wrigley Confectionery US, LLC*,
2022 WL 493555 (S.D.N.Y. Feb. 17, 2022)...................................................................6

*Blue Buffalo Co. Ltd. v. Nestlé Purina Petcare Co.*,
2015 WL 3645262 (E.D. Mo. June 10, 2015) ................................................................9

*Bobo v. Optimum Nutrition, Inc.*,
2015 WL 13102417 (S.D. Cal. Sept. 11, 2015).........................................................6, 12

*Borenkoff v. Buffalo Wild Wings, Inc.*,
2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) .................................................................14

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
137 S. Ct. 1773 (2017).............................................................................................14, 15

*Brown v. Kerry Inc.*,
2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021)...........................................................2, 12

*Cheslow v. Ghirardelli Chocolate Co.*,
445 F. Supp. 3d 8 (N.D. Cal. 2020) ...............................................................................6

*Clark v. Perfect Bar, LLC*,
2018 WL 7048788 (N.D. Cal. Dec. 21, 2018)..............................................................2, 4

*Duchimaza v. Niagara Bottling, LLC*,
--- F. Supp. 3d ---, 2022 WL 3139898 (S.D.N.Y. Aug. 5, 2022) ................................12

*Edmunson v. Procter & Gamble Co.*,
2011 WL 1897625 (S.D. Cal. May 17, 2011).................................................................9

*Eidmann v. Walgreen Co.*,
    522 F. Supp. 3d 634 (N.D. Cal. 2021) ................................................................................12

*Feller v. Transamerica Life Ins. Co.*,
    2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ....................................................................14

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ..........................................................................................5, 6

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
    2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ..................................................................14

*Fraker v. KFC Corp.*,
    2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ....................................................................10

*In re Glenfed, Inc. Secs. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ..........................................................................................12

*Greene v. Gerber Prods. Co.*,
    262 F. Supp. 3d 38 (E.D.N.Y. 2017) ................................................................................13

*Hadley v. Kellogg Sales Co.*,
    273 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................................3

*Johnson-Jack v. Health-Ade LLC*,
    587 F. Supp. 3d 957 (N.D. Cal. 2022) ..........................................................................2, 4

*Krommenhock v. Post Foods, LLC*,
    255 F. Supp. 3d 938 (N.D. Cal. 2017) ..............................................................................3

*Lily v. ConAgra Foods, Inc.*,
    743 F.3d 662 (9th Cir. 2014) ............................................................................................5

*Maeda v. Pinnacle Foods Inc.*,
    390 F. Supp. 3d 1231 (D. Haw. 2019) ............................................................................15

*Maisel v. S.C. Johnson & Son, Inc.*,
    2021 WL 1788397 (N.D. Cal. May 5, 2021) ....................................................................12

*Mazella v. Coca-Cola, Inc.*,
    548 F. Supp. 3d 349 (S.D.N.Y. 2021) ..............................................................................2

*McMorrow v. Mondelez Int'l, Inc.*,
    2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) ........................................................... *passim*

*Melendez v. ONE Brands, LLC*,
    2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) ..................................................................5

*Milan v. Clif Bar & Co.*,
    2019 WL 3934918 (N.D. Cal. Aug. 20, 2019) ..................................................................4

*Morgan v. Wallaby Yogurt Co., Inc.*,
　　2013 WL 5514563 (N.D. Cal. Oct. 4, 2013)..................................................................6

*Morris v. Walmart Inc.*,
　　2020 WL 5645812 (N.D. Ala. Sept. 22, 2020) ...........................................................8

*Morrison v. TriVita, Inc.*,
　　2013 WL 1148070 (S.D. Cal. Mar. 19, 2013) .........................................................7, 8

*In re Packaged Seafood Prods. Antitrust Litig.*,
　　338 F. Supp. 3d 1118 (S.D. Cal. 2018)........................................................................15

*Palmer v. Apple Inc.*,
　　2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ...........................................................12

*Reitman v. Champion Petfoods USA, Inc.*,
　　2018 WL 4945645 (C.D. Cal. Oct. 10, 2018) ...........................................................15

*Sloan v. Gen. Motors LLC*,
　　2019 WL 6612221 (N.D. Cal. Dec. 5, 2019) .............................................................15

*Sloan v. Gen. Motors LLC*,
　　287 F. Supp. 3d 840 (N.D. Cal. 2018)........................................................................15

*Stewart v. Riviana Foods Inc.*,
　　2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ..........................................................6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
　　551 U.S. 308 (2007)......................................................................................................12

*Tomek v. Apple, Inc.*,
　　636 F. App'x 712 (9th Cir. 2016) ................................................................................12

*Truxel v. Gen. Mills Sales, Inc.*,
　　2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) .......................................................2, 4

*Twohig v. Shop-Rite Supermarkets, Inc.*,
　　519 F. Supp. 3d 154 (S.D.N.Y. 2021).........................................................................13

*VanCleave v. Abbott Laby's*,
　　No. 19CV345045 (Cal. Super. Dec. 23, 2019) .........................................................7

*Warner v. StarKist Co.*,
　　2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) ..........................................................14

*Watkins v. MGA Ent., Inc.*,
　　550 F. Supp. 3d 815 (N.D. Cal. 2021)....................................................................11, 13

*Williams v. Gerber Prods. Co.*,
　　552 F.3d 934 (9th Cir. 2008) ....................................................................................5, 6

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................1, 11

**Statutes**

28 U.S.C. § 1332(d)(2) ...................................................................................................15

**Regulations**

21 C.F.R. § 101.13(b)(2) ...........................................................................................10, 11

1

**INTRODUCTION**

2      Plaintiffs' opposition doubles down on the legal and logical errors plaguing the complaint, failing

3  to provide a theory of deception that links their subjective expectations about Ensure®'s general

4  healthfulness to expert-level knowledge about the potential effects of Ensure®'s sugar levels—specialized

5  knowledge that Plaintiffs concededly do not possess.  Although Plaintiffs try to portray their allegations

6  as consistent with those accepted by other courts in cases involving the sugar content of food products,

7  the reality is far different: Plaintiffs seek a ruling that regardless of when, where, or how a product's sugar

8  content is disclosed, that is insufficient as a matter of law to cure consumer deception, ***even if the allegedly***

9  ***deceptive statements themselves make no representation of or even reference to sugar in the first place***.

10  Such a holding would have far-ranging consequences for false labeling law, and this defect (and others)

11  require the dismissal of all of Plaintiffs' claims with prejudice.

12      ***No falsity.***  Plaintiffs fail to articulate a viable theory for how they could have been misled about

13  the healthfulness of Ensure® when they had no expectations at all about the product's sugar content or its

14  potential effect on health.  This is particularly true where, other than truthfully disclosing the amount of

15  sugar in Ensure® on the federally mandated Nutrition Facts Panel, the product's label makes no statement

16  about sugar whatsoever.  These deficiencies doom all of Plaintiffs' claims.

17      ***Nutrient content claims preempted.***  Although Plaintiffs nitpick the connection between certain

18  challenged statements and their associated nutrient references (based on minor variations in font,

19  background color, and text size and placement), Plaintiffs cannot seriously dispute that a significant

20  portion of the challenged statements appear in connection with descriptions of the nutrients found in

21  Ensure®.  Allegations based on those statements are preempted by federal law and cannot serve as the

22  basis for a state-law false labeling claim.

23      ***Failure to satisfy Rule 9(b).***  Plaintiffs do not deny that they fail to allege the specific

24  circumstances of their alleged Ensure® purchases, and their suggestion that they are not required to do so

25  is at odds with Rule 9(b) and case law applying it.

26      ***No statutory standing and no substantial similarity.***  Contrary to Plaintiff LeGrand's suggestion,

27  the wide variation in label statements between the one product she did purchase (Ensure® Original) and

28  the five products she admittedly did not purchase precludes any argument that she has standing to bring

claims related to non-purchased products or label statements she did not view or rely upon.

***Failure to plead common law claims.*** As discussed in Abbott's motion, Plaintiffs' claims for unjust enrichment, LeGrand's claims for breaches of warranties, and Bates' claim for negligent misrepresentation all fail under the laws of California and New York, respectively.

***No personal jurisdiction over Plaintiff Bates.*** Bates' argument that jurisdiction exists over her New York claims (i) because this is a class action, and (ii) under the pendent personal jurisdiction doctrine runs headlong into the bulk of case law holding out-of-state named plaintiffs cannot bring claims premised on out-of-state conduct in the absence of federal question jurisdiction, which is absent here.

## ARGUMENT

## I.   NO REASONABLE CONSUMER WOULD FIND THE CHALLENGED STATEMENTS MISLEADING.

### A.   Ensure®'s Sugar Disclosures Defeat Any Plausible Theory of Deception.

All of Plaintiffs' claims fail because no reasonable consumer would find Ensure®'s label false or misleading, and nothing in Plaintiffs' opposition proves otherwise. "[A]s a matter of law, a reasonable consumer cannot be misled about a food product's purported 'excessive' sugar content where that food's label plainly discloses the sugar content." *Truxel v. Gen. Mills Sales, Inc.*, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019). Although Plaintiffs contend that, "as a matter of law, disclosing the amount of added sugar" in a product "is insufficient to prevent consumer deception," Pls.' Opp'n to Abbott's Mot. to Dismiss, ECF No. 29 ("Opp.") at 15, that is flatly inconsistent with decisions of courts in this circuit (and others) holding that sugar disclosures on a product's Nutrition Facts Panel can defeat false labeling claims. *See, e.g.*, *id.*; *Clark v. Perfect Bar, LLC*, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018), *aff'd*, 816 F. App'x (9th Cir. 2020); *Brown v. Kerry Inc.*, 2021 WL 5446007, at *6 (S.D.N.Y. Nov. 22, 2021), *report and recommendation adopted*, 2022 WL 669880 (S.D.N.Y. Mar. 7, 2020); *Mazella v. Coca-Cola, Inc.*, 548 F. Supp. 3d 349, 357 (S.D.N.Y. 2021).

Recognizing the clear import of this case law, Plaintiffs try to sidestep it altogether, arguing that Abbott's cases "miss[] the point" because Plaintiffs' claims are premised on the notion that the challenged label statements create the misimpression that Ensure® is "healthy," ***not*** that the product contains any particular amount of sugar. *See* Opp. at 5 (citing *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957,

968 (N.D. Cal. 2022)).  But that is precisely why Plaintiffs' theory of deception fails: there is a fatal mismatch between Plaintiffs' alleged expectations about Ensure®'s healthfulness—which are purportedly based on statements from the front, side, and back of Ensure® labels—and their theory of falsity—which depends upon highly specialized knowledge about the potential health effects of consuming sugar that Plaintiffs concede they lacked when they purchased Ensure®.  *See, e.g.*, Compl. ¶¶ 81–89.  A consumer cannot claim a product label is false or misleading because her generalized expectations about the product—*i.e.*, that it is "healthy"—are supposedly inconsistent with specialized information about the product's potential health effects as theorized by some experts, which the consumer herself disclaims having any knowledge or understanding of at the time of purchase (or even thereafter).

At its core, Plaintiffs' complaint here is not that the sugar content of Ensure® was inconsistent with ***Plaintiffs***' view of healthfulness.  After all, Plaintiffs explicitly disclaim knowledge of, or any ability to evaluate, a product's healthfulness or the impact of sugar levels on health.  Instead, Plaintiffs allege the sugar content of Ensure® is supposedly inconsistent with ***third parties'*** views about healthfulness and appropriate sugar levels, which Plaintiffs now wish to adopt after the fact.  It is telling that the complaint is devoid of even a single allegation describing when or how Plaintiffs learned the supposed truth about Ensure® or developed any specific conception of the relationship between healthfulness and sugar content.  A consumer-plaintiff cannot manufacture a false advertising claim by substituting ***after-the-fact*** knowledge and expert opinions (particularly knowledge and opinions that may have been provided to her by counsel) in place of her own contemporaneous expectations about a product at the time of actual purchase.  Plaintiffs' claims therefore should be dismissed.

Plaintiffs' case law is not to the contrary.  Although Plaintiffs paint their position as consistent with the "majority of courts in this line of added sugar cases," Opp. at 4, Plaintiffs' case law is distinguishable or decidedly under-reasoned.  For instance, *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017) and *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 947 (N.D. Cal. 2017), both challenged label statements that supposedly implied that certain cereals had "low sugar content"— the very sort of allegation that Plaintiffs expressly do ***not*** rely upon here.  *Compare* Fourth Am. Class Action Compl., *Hadley v. Kellogg Sales Co.*, Case No. 5:16-cv-04955-LHK (HRL) (N.D. Cal. Mar. 10, 2021), ECF No. 376 ¶ 220 ("[I]n marketing its cereals, Kellogg regularly affirmatively uses certain words

and phrases to falsely suggest their sugar content is low."), *with* Opp. at 6 ("Plaintiffs are not alleging they were deceived as to the *amount* of sugar in the Products, but rather as to the Products' healthfulness."). Moreover, neither *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957 (N.D. Cal. 2022), *Milan v. Clif Bar & Co.*, 2019 WL 3934918 (N.D. Cal. Aug. 20, 2019), nor *McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) have anything at all to say about Abbott's argument here—namely, that a consumer cannot mount a false labeling claim based upon a product's sugar content where she concedes she does not understand (and is incapable of understanding) the "degree to which added sugar harms health or how to evaluate the healthfulness of a product," *see* Opp. at 7,[1] and merely adopts some purported experts' views on the topic after the fact.

Directly contrary to Plaintiffs' theory, it is clear that "[n]o consumer, on notice of the actual ingredients" of a product, "could reasonably overestimate the health benefits of" the product "merely because the packaging elsewhere" is alleged to imply the product is healthy. *See Clark*, 2018 WL 7048788, at *1; *Truxel*, 2019 WL 3940956, at *4 (holding that "[p]laintiffs cannot plausibly claim to be misled about the sugar content of their cereal purchases because Defendant provided them with all truthful and required objective facts about its products, on both the side panel of ingredients and the front of the products' labeling"). That is because the law of false advertising presupposes the existence of a reasonable consumer, not a helpless one. Where ingredients are fully disclosed, "[r]easonable purchasers c[an] decide for themselves how healthy or not the sugar content" of a product might be. *See Clark*, 2018 WL 7048788, at *1. If accepted, Plaintiffs' theory would undo that foundational legal principle, in effect holding that *no* sugar disclosure—even one in large, bold print on the front of a product's label—is capable of curing the alleged (mis)impression that a product is healthy because consumers would ostensibly lack the specialized knowledge to understand it. That is not the law, and Plaintiffs are wrong to suggest that Abbott's case law improperly treats "healthfulness as a subjective inquiry, like taste or beauty, rather than

---

[1]    *Johnson-Jack* is also distinguishable insofar as it involved claims based on label statements that explicitly used the word "health" in the product's name: Health-Ade. 587 F. Supp. 3d at 965–66. Virtually none of the statements challenged here use any variation of the word "health," and although Abbott does not dispute for purposes of this motion Plaintiffs' suggestion that Ensure®'s statements create some impression of healthfulness, Plaintiffs' theory here is far more attenuated than the label claims in *Johnson-Jack*, which depended upon "the prominent use of the word 'health' and the homophonic connection between 'ade' and 'aid.'" *See id.*

an objective inquiry based on nutrition science." *See* Opp. at 6.  Setting aside that healthfulness is a subjective inquiry that varies by consumer, the above-cited cases properly held that a false labeling claim fails as a matter of law where a product discloses material information (like sugar content) that would let a consumer determine for herself whether the product is healthy.  Were the law otherwise, Abbott would be placed in a Catch-22: consumers could sue Abbott for not disclosing enough information about its products' sugar content, while simultaneously arguing that consumers do not, and cannot, understand the implications of sugar disclosures.  *See id.* at 7; *id.* at 8 (alleging that "consumers have difficulty accurately assessing the healthfulness of foods and beverages").  Contrary to Plaintiffs' suggestion, the law places the responsibility on the reasonable consumer to take information disclosed on a product's label (including, for instance, sugar content) to decide for themselves how healthy (or not) a product is.

Equally baseless is Plaintiffs' suggestion that consumers need not consult "small print" disclosures on a product's label.  *See id.* at 5.  "[T]he presence of a disclaimer or similar clarifying language may defeat a claim of deception," *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013), particularly where it appears on "an area of the packaging where 'consumers are trained to look' for such information, such as the ingredients panel," *Melendez v. ONE BRANDS, LLC*, 2020 WL 1283793, at *6 (E.D.N.Y. Mar. 16, 2020).  *See also Lily v. ConAgra Foods, Inc.*, 743 F.3d 662, 664–65 (9th Cir. 2014) (describing the Nutrition Facts Panel as "familiar" and "ubiquitous").  The front-versus-back label cases that Plaintiffs rely upon, tracing to *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), carve out a narrow exception to that rule, holding that a reasonable consumer should not be expected to consult fine print on a product's back label where the product's front label contains an affirmative misrepresentation about the relevant product characteristic.  But *Williams* and its progeny have no force where, as here, a consumer (i) identifies no affirmative representations about the product's sugar content on the product's front label, (ii) challenges claims that appear on the front, side, and back of the label in direct proximity to the sugar content disclosed on the product's Nutrition Facts Panel, and (iii) does not even allege she was unaware of the product's sugar disclosures at the time of purchase.  *See, e.g.*, Compl. at 3 (label displaying "Complete, Balanced Nutrition® – for everyday health" immediately adjacent to the Nutrition Facts Panel); *id.* at 5 (displaying "our most advanced nutritional product," "ALL-IN-ONE blend to support your health," and "[r]ecommend 2 bottles per day as part of a healthy diet" next to the Nutrition Facts Panel).

1   "[W]here the actual ingredients are disclosed, a plaintiff may not ignore the ingredient list." *Cheslow v.*

2   *Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 20 (N.D. Cal. 2020); *see also, e.g.*, *Morgan v. Wallaby*

3   *Yogurt Co., Inc.*, 2013 WL 5514563, at *8 (N.D. Cal. Oct. 4, 2013) (holding that the "reasonable

4   consumer" cannot ignore a product's ingredient disclosures where "the 'truth' is literally next to the

5   allegedly misleading representation in the same print size").  Plaintiffs therefore cannot invent a false

6   labeling claim by "misleadingly excerpt[ing] the language of" Ensure®'s label in their pleadings, as the

7   "entire mosaic" must be considered, "rather than each tile separately." *Fink*, 714 F.3d at 742; *Stewart v.*

8   *Riviana Foods Inc.*, 2017 WL 4045952, at *9 (S.D.N.Y. Sept. 11, 2017) (citation omitted).

9           *Williams* and cases applying it likewise have no application where there is no front-label statement

10   ***at all*** about the ingredient at issue.  Although a consumer need not check the back label for confirmation

11   where a product's front label affirmatively (mis)represents the presence or amount of an ingredient, she

12   cannot ignore the complete spectrum of available information on a product's label where no such front-

13   label representation exists.  *See Cheslow*, 445 F. Supp. 3d at 19 (distinguishing *Williams* where "the

14   package contains no affirmative statements or representations that would support a qualitative assumption

15   that the chips are made of chocolate"); *Bobo v. Optimum Nutrition, Inc.*, 2015 WL 13102417, at *4 (S.D.

16   Cal. Sept. 11, 2015) (dismissing claims based on protein content because "this is not a case where a

17   consumer must read through an ingredient list on the back to correct a prominent misleading statement on

18   the front").  Ensure® does not state ***anything*** about its sugar content on the front of the label, and Plaintiffs

19   do not contend otherwise.  Plaintiffs therefore cannot escape dismissal by relying on cases that address

20   "affirmative misrepresentations."  *See Andrade-Heymsfield v. NextFoods, Inc.*, 2022 WL 1772262, at *4

21   (S.D. Cal. Apr. 27, 2022) ("Because the sugar content is not inconsistent with the representations on the

22   juice drinks' packaging promoting digestive health, the public will not likely be misled into believing the

23   juice drinks are 'healthier' than fairly advertised."); *Beers v. Mars Wrigley Confectionery US, LLC*, 2022

24   WL 493555, at *5 (S.D.N.Y. Feb. 17, 2022) ("[T]he argument that 'the Ingredient List on the back of the

25   Product is insufficient to correct or clarify the misleading statement on the front of the product' is simply

26   inapplicable where 'the Product's front label is not misleading.'" (citation omitted)).

27                                            *    *    *

28

1    A consumer cannot plausibly allege that a label is false and misleading due to a product's sugar

2    content where the consumer concededly "do[es] not fully understand the degree to which added sugar

3    harms health or how to evaluate the healthfulness of a product." Opp. at 7.  Adopting Plaintiffs' view

4    would negate the FDA's conclusion that "consumers use the Nutrition Facts [Panel] at point-of-purchase

5    and review the nutrient contribution of food products to help them choose products and compare

6    products," as well as its finding that, because sugar content is disclosed, "consumers can have the

7    information they need to achieve a healthy dietary pattern." *See* 81 Fed. Reg. 33742-01, 33763.  It is ***that***

8    assessment—not some language from a three-decades-old rulemaking about cholesterol, *see* Opp. at 7—

9    that matters, and all of Plaintiffs' claims should be dismissed with prejudice.[2]

10   **B.    Plaintiffs Cannot Challenge Undeniably True Label Statements.**

11       In arguing that they may bring false labeling challenges to undeniably true statements, Plaintiffs

12   argue that a consumer-plaintiff may challenge advertising that is false on its face ***or*** by implication.  *See*

13   *id*. at 8.  But that truism cannot save Plaintiffs' challenges to true statements or statements lacking factual

14   content.

15       ***"#1 Doctor Recommended Brand."***  Plaintiffs do not (and cannot) dispute that the "#1 Doctor

16   Recommended Brand" statement on Ensure®'s label is true.  Nor do Plaintiffs engage with *VanCleave v.*

17   *Abbott Laboratories*, No. 19CV345045 (Cal. Super. Dec. 23, 2019), which rejected as a matter of law an

18   identical challenge to the use of the statement "#1 Pediatrician Recommended Brand" on Abbott's

19   PediaSure® products.  As in *VanCleave*, Plaintiffs here "read[ ] more into" Abbott's "#1 Doctor

20   Recommended Brand" statement "than what is actually stated."  *See VanCleave*, Order re Demurrer to

21   Pl.'s Compl. at 7.  There is nothing misleading about that label claim, and Plaintiffs' suggestion that it

22   "contribute[s] to the deceptive context" of the label as a whole is too attenuated and unfounded as a matter

23   of law.  *See* Opp. at 9.  Nothing in Plaintiffs' cases holds otherwise.  In *Morrison v. TriVita, Inc.*, 2013

24

25       [2]   Plaintiffs are incorrect that Abbott does not oppose Plaintiffs' omission-based claims or claims
26   under the "Unfair" and "Unlawful" prongs of the UCL.  *Compare* Opp. at 2 n.4, *with* Abbott Labs.' Notice
     of Mot. & Mot. to Dismiss the Compl., ECF No. 18 ("Mot.") at 1 (arguing that "Plaintiffs' claims under
27   California and New York statutory and common law fail because they do not identify any material
     information that Abbott omitted"), *and id.* at 4 (arguing that "[a]ll of Plaintiffs' claims fail because no
28   reasonable consumer would find Ensure®'s label false or misleading").  Plaintiffs identify no alternative
     or independent theory of liability in the event Abbott's labeling is found to be truthful as a matter of law.

WL 1148070 (S.D. Cal. Mar. 19, 2013), a manufacturer suggested that its product was "recommended by doctors," using "the name and picture of 'Dr. Brazos Minshew'"—an individual who was **not**, in fact, a doctor. *Id.* at *1. *McMorrow* likewise is inapposite: the discussion of a manufacturer's statements that its breakfast products were designed after "close[]" consultation with "nutritionists" in that case was made in the context of a puffery analysis, not falsity *vel non*. *See* 2018 WL 3956022, at *10. Here, the statement that Ensure® is the "#1 Doctor Recommended Brand" is not literally false or misleading, nor does it reasonably imply anything about general healthiness. Any challenge to that statement should be dismissed with prejudice.

*"With Nutrients for Immune System Support."* Plaintiffs also cannot manufacture a challenge to the statement "With Nutrients for Immune System Support" by interpreting it to mean that Ensure® as a whole (rather than specific nutrients in the product) supports a consumer's immune system. Abbott's representation is far more limited than Plaintiffs insist, stating only that certain Ensure® products contain nutrients that provide immune support (i.e. "Nutrients for Immune System Support"). Rather than engage with the substance of *Morris v. Walmart Inc.*, 2020 WL 5645812 (N.D. Ala. Sept. 22, 2020), Plaintiffs dismiss it as a "case from Alabama" that turned on an alleged concession by the plaintiff that "large amounts of sugar and empty calories do not necessarily prevent the [defendant's nutrition] shakes from providing vitamins and minerals to help children thrive and grow." *See* Opp. at 9 (quoting *Morris*, 2020 WL 5645812, at *5). That of course is true, but ultimately misses the point of *Morris*. In dismissing claims based on the statements "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow," the district court explained that "[t]he relevant question is not whether the shakes are the healthiest delivery mechanism for the vitamins and minerals they contain." *Morris*, 2020 WL 5645812, at *5. Because the "shakes' labels d[id] not promise a low sugar content," the plaintiff's allegation that "the shakes contain[ed] unhealthy ingredients in addition to vitamins and minerals" did not render statements about their nutrient content false or misleading. *Id.* The same is true here, and it is no answer to point to "scientific literature" (of which Plaintiffs had no contemporaneous knowledge or understanding) about the "deleterious effects" of sugar, Opp. at 9, which has no bearing on the nutrients found in Ensure®.

*Statements Without Factual Content.* Plaintiffs also cannot bootstrap challenges to statements on Ensure®'s label that lack any factual content, including "Discover More at Ensure.com," "Learn About

1    Ensure Complete Nutrition and Benefits," and "Chat Live with a Registered Dietician About Nutrition."

2    *See* Compl. ¶ 18.   Plaintiffs claim, with little elaboration, that these statements "contribute[] to the

3    misleading message that the products are healthy and based on sound nutrition principles," *see* Opp. at 9,

4    but it cannot be that pointing consumers to ***additional*** informational resources about a product somehow

5    strengthens Plaintiffs' claims here.   Plaintiffs' challenges to those directions should be dismissed.

6         **C.    Plaintiffs Cannot Challenge Statements That Constitute Puffery.**

7         Plaintiffs' opposition also fails to disprove that vague or qualified label statements on Ensure® are

8    non-actionable puffery.    Plaintiffs concede that statements like "Complete, Balanced Nutrition,"

9    "advanced nutrition shake," "most advanced nutritional product," and similar phrases "may require

10   contextualization," but argue instead that they "are not so vague that they are insusceptible to verification."

11   *Id.* at 10.  But Plaintiffs do not even attempt to offer the benchmark against which terms like "complete,"

12   "advanced," or "balanced" should be judged, and their argument runs headlong into well-established case

13   law.  For example, Plaintiffs have no answer to *Blue Buffalo Co. Ltd. v. Nestlé Purina Petcare Co.*, 2015

14   WL 3645262 (E.D. Mo. June 10, 2015), which rejected a nearly identical challenge to Plaintiffs' here,

15   explaining that "whether something is complete or balanced nutrition is merely an opinion about quality

16   and is not capable of being proven true or false."  *Id.* at *10.  This decision is not an outlier, as courts

17   regularly dismiss claims about the comparative quality of a product, such as when a product is described

18   as "premium" or "superior."  *See Edmunson v. Procter & Gamble Co.*, 2011 WL 1897625, at *3 (S.D.

19   Cal. May 17, 2011); *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999).

20   Because descriptions of Ensure® as "advanced" or "complete" are non-quantifiable and non-falsifiable,

21   they cannot form the basis of Plaintiffs' claims.

22        Plaintiffs' challenge to certain qualified representations about potential uses of Ensure® fares no

23   better.  Other that repeating their mantra that the challenged claims "reinforce[] the overall message that"

24   Ensure® is healthy, *see* Opp. at 10, Plaintiffs offer almost no response to the argument that qualified

25   claims (*e.g.*, "designed to ***help*** rebuild your strength and energy" and "[r]ecommend[s] 2 bottles per day

26   as ***part*** of a healthy diet," Compl. ¶¶ 1, 22–23 (emphases added)) are not actionable.   Courts routinely

27   reject similar claims—such as "part of a balanced breakfast" and "part of a sensible balanced diet"—as

28   too general and vague to support a false labeling claim.  *See, e.g.*, *McMorrow*, 2018 WL 3956022, at *11,

1 *13; *Fraker v. KFC Corp.*, 2007 WL 1296571, at *3 (S.D. Cal. Apr. 30, 2007).  Plaintiffs' challenges to

2 such statements should be dismissed with prejudice.

3 **II.    PLAINTIFFS' CHALLENGES TO NUTRIENT CONTENT CLAIMS ARE PREEMPTED.**

4          Plaintiffs do not meaningfully dispute the legal framework governing preemption of implied

5 nutrient content claims.  *See* Opp. at 12–13.  Instead, in direct contradiction to their position that all of the

6 challenged statements must be considered together for purposes of falsity—Plaintiffs gerrymander

7 Ensure®'s label based on fine distinctions, including the color, "size, font, and orientation" of the

8 statements at issue, to avoid the conclusion they are preempted nutrient content claims.  *See id*. at 14.  But

9 having alleged that the challenged statements imply something about Ensure®'s healthfulness, Plaintiffs

10 cannot now suggest the connection between those statements and their associated nutrient representations

11 on Ensure®'s label are too attenuated to trigger preemption.

12          ***Ensure® Complete***: Plaintiffs' effort to distinguish between the placement of the statements

13 "Immune," "Digestion," and "Heart" on the front of the product's label, versus the chart on the front of

14 the Ensure® Complete multi-pack, fails.  *See id*. at 13; Glick Decl., ECF No. 18-1 ("Glick Decl."), Ex. 3.

15 Plaintiffs concede that these statements "may arguably be made in connection with nutrient content claims

16 when they appear in the chart," Opp. at 13, and the overall context of the Ensure® Complete label makes

17 clear that, wherever they appear, these claims are based on the presence of certain nutrients.  Plaintiffs'

18 conclusory assertion that "the statement 'Complete, Balanced Meal Replacement' is not made in direct

19 connection with any nutrient content claims," *id.*, likewise fails: that statement is part and parcel of the

20 chart that Plaintiffs all but acknowledge contains nutrient content claims.

21          ***Ensure® Enlive Advanced Nutrition Shake***: Plaintiffs argue that the statements "our most

22 advanced nutritional product" and "All-in-One blend to support your health" are not nutrient content

23 claims even though they appear in the same paragraph as statements about certain nutrients because none

24 of those statements refer to a "certain amount" of the referenced nutrients.  *See id*. at 13–14 (citing 21

25 C.F.R. § 101.13(b)(2)).  That is wrong.  Plaintiffs cite no case law for the proposition that failing to specify

26 the exact ***quantity*** of the referenced nutrients is not a nutrient content claim, and is therefore not

27 preempted.  The case law and federal regulations are clear that a nutrient content claim is preempted even

28 without a statement of quantity.  As Plaintiffs' allegations admit, Ensure®'s label refers to the presence

of "HMB + Protein," "Vitamin D," "Omega-3," and "Antioxidants (Vitamins C & E, Selenium)" at levels above zero, "suggest[ing] that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices." *See* 21 C.F.R. § 101.13(b)(2). Those references are plainly nutrient content claims under federal law, challenges to which under state law are preempted.

Plaintiffs likewise cite no authority supporting the granular distinctions they make in an attempt to separate the label's "advanced nutrition" statement from nutrient references such as "20g Protein" and "26 Vitamins & Minerals." *See* Glick Decl., Ex. 4; *see, e.g.*, *McMorrow*, 2018 WL 3956022, at *8 (challenges to the terms "wholesome grains" and "slow-release carbs" were preempted because they "suggest[ed] the Products include[d] a high amount of fiber, [which] is an implied nutrient content claim"); 21 C.F.R. § 101.13(b)(2) (explaining that an implied nutrient content claim is one that "suggests that a nutrient is absent or present in a certain amount *or* "[s]uggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient"). Plaintiffs' challenge to that statement is preempted as well.

***Ensure® Compact, Clear, and Original Powder***:   All of the preempted statements on Ensure® Compact, Clear, and Original Powder connect various descriptions of the products as "nutrition" drinks, shakes, or powders with specific amounts of nutrients in the products. *See* Glick Decl., Exs. 5–7. Once again, Plaintiffs cite no authority for the notion that a labeling statement does not (and cannot) qualify as a nutrient content claim when it is "offset" from the surrounding nutrient statements. *See* Opp. at 14. Put simply, Plaintiffs cannot have it both ways: they cannot simultaneously assert on one hand that their claims should be read in the broadest possible manner, stitching together a myriad of different label statements from different locations that, they say, taken together conveys something about Ensure®'s healthfulness, but on the other hand try to escape preemption by disclaiming anything but the narrowest possible reading of those same label statements to avoid a connection between the statements and the nutrient content references in close proximity.

## III.   PLAINTIFFS' FRAUD CLAIMS FAIL AS A MATTER OF PLEADING AND LAW.

Nothing in Plaintiffs' opposition changes their failure to allege with particularity when and where Plaintiffs saw the challenged statements or learned they were purportedly false and misleading, which fails Rule 9(b). *See, e.g.*, *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021); *Eidmann*

*v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021), *appeal dismissed*, 2021 WL 4785889 (9th Cir. May 17, 2021).  That is reason enough to dismiss Plaintiffs' fraud claims, but Plaintiffs also fail to plead "facts sufficient to give rise to an inference of fraudulent intent," *Duchimaza v. Niagara Bottling, LLC*, --- F. Supp. 3d ---, 2022 WL 3139898, at *13 (S.D.N.Y. Aug. 5, 2022), which Plaintiffs concede is a required element of their intentional misrepresentation claims.  *See* Opp. at 16.  Plaintiffs' contention that Abbott was "aware" that "consumers seek out and prefer healthful foods and beverages," *id*. at 16–17, is precisely the sort of conclusory allegation that falls short of Rule 9(b).  *See, e.g.*, *Brown*, 2021 WL 5446007, at *10; *see also, e.g.*, *Tomek v. Apple, Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016).  Plaintiffs' only answer is to cite *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541 (9th Cir. 1994)—a nearly 30-year old securities case—whose core holding was overturned by statute.  *See* Opp. at 16; *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007).  Plaintiffs' fraud-based claims should be dismissed.

## IV.   LEGRAND LACKS STANDING AS TO NON-PURCHASED PRODUCTS.

Under California's consumer protection statutes, ordinarily, a plaintiff "does not have standing to challenge statements or advertisements that she never saw."  *Palmer v. Apple Inc.*, 2016 WL 1535087, at *3 (N.D. Cal. Apr. 15, 2016) (quotation omitted); *see Bobo*, 2015 WL 13102417, at *3 ("Because it is not clear what, if any, other products Plaintiff purchased or whether he would have paid less or not purchased the products absent the allegedly misleading label, he does not have standing to pursue claims based on those products.").  Although LeGrand claims that the differences between the only product she allegedly purchased—Ensure® Original Nutrition Shake—and five products she did not purchase are "immaterial," *see* Opp. at 17, in fact, **most** of the challenged statements do not appear on Ensure® Original at all.  *See* Glick Decl., Ex. 1 at 1, 8–10.  For example, LeGrand does not explain how Ensure® Enlive's statement that it is Ensure®'s "most advanced nutritional product" is substantially the same as the statements on Ensure® Original's label, and it is not enough for Plaintiff to simply allege in broad fashion that "Abbott conveys that the [p]roducts are healthy."  Opp. at 18.  *Maisel v. S.C. Johnson & Son, Inc*., 2021 WL 1788397, at *4 (N.D. Cal. May 5, 2021), therefore is distinguishable, as the defendant there did not identify **any** differences between the statements on the purchased product versus non-purchased products.  *See Maisel*, Reply in Supp. of Mot. to Dismiss, Case No. 3:21-cv-00413 (N.D. Cal. Apr. 28, 2021), ECF No. 26 at 12–13.  Here, by contrast, the differences in labeling across the Ensure® products

1    exceed any similarities, meaning LeGrand lacks standing to sue as to products she did not purchase and

2    statements she did not rely on. *See Watkins*, 550 F. Supp. 3d at 833–34.

3    **V.    PLAINTIFFS FAIL TO PLEAD THEIR COMMON LAW CLAIMS.**

4        **A.    LeGrand Does Not Allege A Breach Of Warranty.**

5        For the reasons discussed above, *see supra* at 2–9, none of the challenged statements give rise to

6    an actionable express warranty, either because they are too general, are too qualified, or otherwise are not

7    alleged to be false.  LeGrand's implied warranty claim also fails because she does not allege that the

8    products are unfit for consumption.  Although LeGrand argues that her implied warranty claim is premised

9    on "a different definition of merchantability," *see* Opp. at 19, that definition—a failure to "conform to

10   promises and affirmations made on the container or label" of Ensure®, *see id.*—simply repackages her

11   flawed express warranty claims.  LeGrand's warranty claims thus should be dismissed with prejudice.

12       **B.    Bates Fails to State a Negligent Misrepresentation Claim.**

13       Bates all but concedes she has no special relationship with Abbott for purposes of her negligent

14   misrepresentation claim, arguing instead that Abbott has "special expertise" and was "aware of the use"

15   to which consumers would put the information it supplied.  Opp. at 20.  But as numerous courts have held,

16   a special relationship is not created under New York law simply by pleading that a defendant has "special

17   knowledge." *See, e.g.*, *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166–67 (S.D.N.Y.

18   2021) (holding allegation that the defendant "held itself out as having special knowledge and experience

19   in the production, service, and/or sale of the product type" insufficient for purposes of creating a special

20   relationship). *Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38, 76 (E.D.N.Y. 2017) is not to the

21   contrary: in that case, the plaintiffs alleged that the defendant "was aware of at least one major study that

22   'conclusively refuted'" a specific "health claim" that the defendant used in its advertising but that the FDA

23   had rejected—a fact known only to the defendant but not to consumers.  Here, Bates cites no internal

24   studies refuting any claim Ensure® makes about its products.  To the contrary, Bates' cited studies are

25   public, confirming that Abbott does not have the special knowledge that she alleges.

26       **C.    Plaintiffs' Duplicative Unjust Enrichment Claims Should Be Dismissed.**

27       Plaintiffs cannot salvage their lawsuit with back-up unjust enrichment claims.  As to the California

28   claim, setting aside whether an unjust enrichment may be brought alongside other causes of action,

LeGrand has failed to plausibly allege how reasonable consumers would be misled by Ensure®'s label statements.  As to the New York claim, Bates offers no meaningful response to the principle that a consumer-plaintiff may not simply repackage other causes of action and supporting allegations as unjust enrichment.  *See Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *5 (S.D.N.Y. Jan. 19, 2018) (dismissing unjust enrichment claim because, like GBL claims, it was premised on allegations that the plaintiff "purchased defendants' food items as a result of their material omissions" and defendants "unjustly retained the revenue"), *appeal dismissed*, No. 18-615 (2d Cir. Apr. 30, 2018); *Warner v. StarKist Co.*, 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." (citation omitted)).

## VI.    THE COURT LACKS JURISDICTION OVER BATES' CLAIMS.

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017) governs the personal jurisdiction analysis for claims of out-of-state named plaintiffs like Bates, and the opposition cites not a single case holding otherwise.  Although courts may be divided on whether *Bristol-Myers* limits personal jurisdiction over the claims of ***unnamed*** class members, they are near uniform in holding that *Bristol-Myers* fully applies to the claims of ***named plaintiffs*** in a class action.  *See* Mot. at 23–24.  Consistent with this dividing line, the two cases upon which Bates relies—*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) and *Feller v. Transamerica Life Insurance Co.*, 2017 WL 6496803, at *17 (C.D. Cal. Dec. 11, 2017), *appeal dismissed*, 2019 WL 13215979 (9th Cir. 2019)—dealt with unnamed class members, but did not address *Bristol-Myers'* applicability to ***named*** plaintiffs.  *See, e.g.*, *Fitzhenry-Russell*, 2017 WL 4224723, at *5 (noting that "[a]ll of the named plaintiffs in this case are California residents" and distinguishing *Bristol-Myers* on the basis that there, "each plaintiff was a named plaintiff").

The doctrine of pendent personal jurisdiction cannot save Bates' claims.  As her own cases recognize, pendent personal jurisdiction "is typically found where one or more ***federal claims for which there is nationwide personal jurisdiction*** are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction."  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004) (emphasis added); *see also, e.g.*, *Andrade-Heymsfield*, 2019 WL 3817948, at *5 (dismissing New York plaintiff's state law claims where "there

1  [wa]s no federal claim upon which [p]laintiffs can hook their state law claims to trigger pendent personal

2  jurisdiction"); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1173 (S.D. Cal.

3  2018) ("[P]endent personal jurisdiction is permissible when the other Plaintiffs bring federal questions

4  based on the same nucleus of operative fact."); *Reitman v. Champion Petfoods USA, Inc.*, 2018 WL

5  4945645, at *6 (C.D. Cal. Oct. 10, 2018) ("Here, there is no federal claim upon which Plaintiffs can hook

6  the state claims arising under the laws of [11 states]."). Bates cites no authority where a court has used

7  the doctrine in the absence of a federal claim to exercise jurisdiction over out-of-state claims by an out-

8  of-state plaintiff based upon out-of-state activities, and the law is clear that "[a] common nucleus of

9  operative fact between [New York] and California state law claims cannot alone confer pendent personal

10 jurisdiction." *Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1247 (D. Haw. 2019).

11      Bates' cases are not to the contrary. Although district courts in *Sloan v. General Motors LLC*, 287

12 F. Supp. 3d 840 (N.D. Cal. 2018), and *Allen v. ConAgra Foods, Inc.*, 2018 WL 6460451 (N.D. Cal. Dec.

13 10, 2018), initially exercised pendent personal jurisdiction over out-of-state claims by out-of-state

14 plaintiffs, ***both courts reversed course*** once it "bec[a]me clear that there [was] no federal question

15 furnishing federal question jurisdiction" over named plaintiffs' claims. *See Sloan v. Gen. Motors LLC*,

16 2019 WL 6612221, at *7 (N.D. Cal. Dec. 5, 2019); *Allen v. ConAgra Foods, Inc.*, 2019 WL 5191009, at

17 *1–2 & n.4 (N.D. Cal. Oct. 15, 2019) (reversing exercise of pendent personal jurisdiction, noting "[m]ost

18 courts that have declined to apply *Bristol-Myers* to class actions have done so in part because of the

19 presence of a federal claim"). Bates concedes that no federal question jurisdiction exists over any claim

20 in this case. *See* Compl. ¶ 4 (citing 28 U.S.C. § 1332(d)(2) as sole basis for jurisdiction). Consequently,

21 "[t]he mere fact that ***other*** plaintiffs [allegedly relied upon the challenged labels] in California—and

22 allegedly sustained the same injuries as did the nonresidents—does not allow [California courts] to assert

23 specific jurisdiction over the nonresidents' claims." *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

## CONCLUSION

24

25      For the foregoing reasons and those set forth in Abbott's opening memorandum, Abbott

26 respectfully requests that the Court dismiss the complaint in its entirety and with prejudice.

27

28

DATED:  January 6, 2023

Respectfully submitted,

KIRKLAND & ELLIS LLP

/s/ Michael A. Glick
Michael A. Glick

Mark McKane, P.C. (SBN 230552)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Tel.: (415) 439-1400
Washington, D.C. 20004
Email:   mark.mckane@kirkland.com

Tracie L. Bryant (SBN 287508)
Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
Michael A. Glick (admitted *pro hac vice*)
Terence J. McCarrick (admitted *pro hac vice*)
Elizabeth Hedges (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel.: (202) 389-5000 / Fax: (202) 389-5200
Email:   tracie.bryant@kirkland.com
Email:   glocascio@kirkland.com
Email:   michael.glick@kirkland.com
Email:   tj.mccarrick@kirkland.com
Email:   elizabeth.hedges@kirkland.com

*Attorneys for Defendant Abbott Laboratories*

1

**CERTIFICATE OF SERVICE**

2

On January 6, 2023, I electronically filed the foregoing with the Clerk of the Court by using

3

the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.

4

All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so

5

served.

*/s/ Michael A. Glick*
Michael A. Glick

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28