1
2
3
4               UNITED STATES DISTRICT COURT

5             NORTHERN DISTRICT OF CALIFORNIA

6

7    CONDALISA LEGRAND, et al.,              Case No. 22-cv-05815-TSH

8                    Plaintiffs,
                                             **ORDER RE: MOTION TO DISMISS**
9          v.
                                             Re: Dkt. Nos. 18, 29, 32
10   ABBOTT LABORATORIES,

11                   Defendant.

12

13                          **I.    INTRODUCTION**

14          Pending before the Court is a Motion to Dismiss, filed by Defendant Abbott Laboratories

15   ("Abbott") pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(2) and Rule 12(b)(6).

16   ECF No. 18.  Plaintiffs filed an Opposition (ECF No. 29) and Abbott filed a Reply (ECF No. 32).

17   The Court finds this matter suitable for disposition without oral argument and **VACATES** the

18   February 9, 2023 hearing.  *See* Civ. L.R. 7-1(b).  Having considered the parties' positions, relevant

19   legal authority, and the record in this case, the Court **GRANTS IN PART AND DENIES IN**

20   **PART** Abbott's motion for the following reasons.[1]

21                          **II.   BACKGROUND**

22          Abbott is an Illinois corporation with its principal place of business in Abbott Park,

23   Illinois.  ECF No. 1 ¶ 10.  Abbott sells a line of "nutrition" drinks under the "Ensure" brand

24   ("Ensure Nutrition Drinks"), including Ensure Original Nutrition Shake, Ensure Complete

25   Nutrition Shake, Ensure Enlive Advanced Nutrition Shake, Ensure Compact Therapeutic Nutrition

26   Shake, Ensure Clear Nutrition Drink, and Ensure Original Nutrition Powder.  *Id.* ¶¶ 1, 14-34.

27   ──────────────

28   [1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 9, 27.

United States District Court
Northern District of California

Abbott markets the Ensure Nutrition Drinks with health and wellness labeling, such as "#1 Doctor Recommended Brand," and "Complete, Balanced Nutrition for everyday health." *Id.* ¶ 1. Abbott sells Ensure Nutrition Drink on a nationwide basis, including in New York and California, and did so for the four years prior to filing of the instant action. *Id.* ¶ 11.

Condalisa LeGrand is a California resident, and Larissa Bates is a New York resident. *Id.* ¶¶ 8-9. LeGrand purchased the Ensure Original Nutrition Shake at different times in California in the four years prior to filing the Complaint. *Id.* ¶ 106. Bates purchased Ensure Complete Nutrition Shakes in New York in the four years preceding filing. *Id.* ¶ 108. In purchasing the Ensure Nutrition Drinks, both Plaintiffs were exposed to, and relied on, Abbott's label representations, such as that the products were "Doctor Recommended" and "nutrition shake[s]." *Id.* ¶¶ 107, 109. There is a vast body of scientific evidence demonstrating that consuming sugar-sweetened beverages harms, rather than supports, overall health. *Id.* ¶ 2. Abbott adds up to 22 grams of sugar per serving to the Ensure Nutrition Drinks. *Id.* As a result of this sugar content and scientific evidence, Plaintiffs allege that the labeling on Ensure Nutrition Drinks advertising them as balanced, nutritious, and healthy is false and misleading. *Id.*

Plaintiffs filed the instant action on October 6, 2022, seeking to bring a class action under Rule 23 on behalf of themselves and other consumers who bought Ensure Nutrition Drinks. *Id.* ¶ 124. Plaintiffs define members of a nationwide class, as well as California and New York subclasses, as "all persons in the United States, and subclasses of all persons in California and in New York, who, at any time from four years preceding the date of the filing of this Complaint to the time a class is notified (the 'Class Period'), purchased, for person or household use, and not for resale or distribution, any of the Ensure Nutrition Drinks (the 'Class')." *Id.* Plaintiffs bring the following causes of action: 1) violation of the Unfair Competition Law ("UCL") (California subclass); 2) violation of the False Advertising Law ("FAL") (California subclass); 3) violation of the Consumer Legal Remedies Act ("CLRA") (California subclass); 4) breach of Express Warranties under Cal. Com. Code § 2313(1) (California subclass); 5) breach of Implied Warranty of Merchantability under Cal. Com. Code § 2314 (California subclass); 6) violation of N.Y. Gen. Bus. L. § 349 (New York subclass); 7) violation of N.Y. Gen. Bus. L. § 350 (New York subclass);

2

8) Unjust Enrichment; 9) Negligent Misrepresentation; and 10) Intentional Misrepresentation. *Id.* ¶¶ 133-214.

On December 12, 2022, Abbott filed the present Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6). ECF No. 18. On December 27, 2022, Plaintiffs filed an opposition. ECF No. 29. On January 6, 2023, Abbott filed a reply. ECF No. 32.

### III.   LEGAL STANDARD

**A.   Rule 12(b)(2)**

Rule 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). However, this demonstration requires that the plaintiff "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). To make this showing, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [plaintiff's] favor." *Love*, 611 F.3d at 608.

Courts properly exercise personal jurisdiction over a defendant "if it is permitted by a long-arm statute and if the exercise of jurisdiction does not violate federal due process." *Pebble Beach Co.*, 453 F.3d at 1154. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Because "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," a court's inquiry centers on whether exercising jurisdiction comports with due process. *Id.*; *see* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Due process requires that nonresident defendants have "minimum contact" with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

United States District Court
Northern District of California

1        A court may exercise either general or specific jurisdiction over a nonresident defendant.

2  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  General

3  jurisdiction exists where a defendant has "substantial" or "continuous and systematic" contacts

4  with the forum.  *Id.* at 415.  If general jurisdiction exists, the forum has jurisdiction over the

5  defendant regardless of where the events giving rise to the litigation occurred.  *Id.*

6        If a defendant's contacts with the forum are not sufficient to establish general jurisdiction,

7  specific jurisdiction may still be shown.  The Court may assert specific jurisdiction over a

8  nonresident defendant if three requirements are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

15  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted).

16  The plaintiff bears the burden of demonstrating the first two prongs.  *CollegeSource, Inc. v.*

17  *AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

**B.**    **Rule 12(b)(6)**

19        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

20  sufficiency of a claim."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citations and

21  quotations omitted).  Rule 8 provides that a complaint must contain a "short and plain statement of

22  the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, a complaint

23  must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

24  *Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more

25  than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662,

26  687 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims

27  against it and the grounds for relief.  *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

In considering a motion to dismiss, the Court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Therefore, the Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and quotations omitted).

## IV.   DISCUSSION

### A.   Rule 12(b)(2)

Abbott argues that the Court lacks general or specific jurisdiction over Abbott as to New York resident Bates' claims. ECF No. 18 at 31-33.  Bates does not allege general jurisdiction but argues that the Court has specific jurisdiction over Abbott because this is a class action suit, or, alternatively, that the Court should exercise pendent personal jurisdiction.  ECF No. 29 at 32-33.

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).  As stated above, in order to establish specific jurisdiction, the plaintiff must demonstrate that the claim is one which arises out of or relates to the defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802.  The Supreme Court recently analyzed this requirement in relation to claims of out-of-state plaintiffs against an out-of-state defendant in a mass tort action and determined that a state court lacks specific jurisdiction over nonresident plaintiffs' claims where there is no connection between the conduct giving rise to the out-of-state plaintiffs' claims and the forum state. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1781-82 (2017).  In doing so, the Court rejected the notion that similarities between the out-of-state

plaintiffs' claims and the in-state, resident plaintiffs' claims granted specific jurisdiction, determining that the nonresident plaintiffs' claims needed to have a sufficient link with the forum state independent of the resident plaintiffs' claims. *Id.* at 1781.

Neither the Supreme Court nor the Ninth Circuit has analyzed *Bristol-Myers'* application to federal courts or class actions. The Court in *Bristol-Myers* specifically left open whether the Fifth Amendment imposed the same specific jurisdiction requirements on federal courts. *Id.* at 1783-84. Circuit Courts and district courts considering its application in federal class action suits have declined to extend *Bristol-Myers* to require unnamed, nonresident class members make a showing of personal jurisdiction. *See, e.g.*, *Lyngaas v. Ag*, 992 F.3d 412, 433 (6th Cir. 2021) (declining to extend *Bristol-Myers* to require personal jurisdiction over unnamed class members in a federal class action); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) (finding that unnamed class members are more like nonparties for purposes of personal jurisdiction in federal class actions); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.* No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) (holding that the district court had jurisdiction over non-named, non-California class members in a class action). Courts have noted unnamed class members are distinguishable from the *Bristol-Myers* plaintiff because unnamed class members "may be parties for some purposes and not for others." *See Mussat.*, 953 F.3d at 447; *Fitzhenry-Russell*, 2017 WL 4224723, at *5 (citing *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002)).

Courts have also suggested that nonresident, named plaintiffs might not need to establish personal jurisdiction, or at least that exercise of pendent personal jurisdiction may be appropriate, where jurisdiction is based on a federal question. *See Allen v. Conagra Foods, Inc.*, No. 3:13-CV-01279-WHO, 2019 WL 5191009 at *2, n.4 (N.D. Cal. Oct. 15, 2019) ("Most courts that have declined to apply *Bristol-Myers* to class actions have done so in part because of the presence of a federal claim"); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 859 (N.D. Cal. 2018) ("Therefore, where a federal court presides over litigation involving a federal question, the due process analysis does not incorporate the interstate sovereignty concerns that animated *Bristol-Myers* and which may be decisive in a state court's analysis."), *on reconsideration,* 438 F. Supp. 3d 1017, 1021 (N.D. Cal. 2020) (declining to exercise pendent jurisdiction because the case

1   involved only diversity jurisdiction); *Chavez v. Stellar Managment Grp. VII, LLC*, No. 19-CV-

2   01353-JCS, 2020 WL 4505482, at *8 (N.D. Cal. Aug. 5, 2020) (finding that *Bristol-Myers* does

3   not apply to federal courts applying federal law and exercising pendent jurisdiction in a collective

4   action under the Fair Labor Standards Act).

5        The present action, however, is brought by a named, nonresident plaintiff and is before the

6   Court based on diversity jurisdiction.  ECF No. 1 ¶ 4 ("This Court has original jurisdiction over

7   this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act)" ("CAFA")).  *See Sloan*

8   *v. Gen. Motors LLC*, 438 F. Supp. 3d 1017, 1021 (N.D. Cal. 2020) ("CAFA constitute[s] an

9   expansion of diversity jurisdiction; it does not on its own, purport to establish federal question

10  jurisdiction.").  The distinctions relied on by courts to limit *Bristol-Myers'* application for

11  unnamed class members and litigation of a federal question thus appear inapt.

12       California district courts considering the issue have largely determined that named, out-of-

13  state, class-action plaintiffs in cases based on diversity jurisdiction must establish personal

14  jurisdiction.  *See, e.g.*, *Rivera v. Invitation Homes, Inc.*, No. 18-CV-03158-JSW, 2020 WL

15  8910882, at *7-8 (N.D. Cal. Oct. 29, 2020) (declining to find *Bristol-Myers* inapplicable based on

16  plaintiff's argument that it does not apply to class actions nor federal courts and requiring personal

17  jurisdiction over named plaintiff's claims); *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000,

18  1012 (S.D. Cal. 2020) (collecting cases for district courts nationally and concluding "*Bristol-*

19  *Myers* applies to named, class-action plaintiffs for federal courts sitting in diversity"); *In re*

20  *Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-CV-06391-BLF, 2018 WL

21  1576457, at *2 (N.D. Cal. Mar. 30, 2018) ("Plaintiffs identify no authority where a court has

22  determined that *Bristol-Myers* does not apply to a named plaintiff seeking to represent a statewide

23  class of non-forum residents proceeding under non-forum law.").  Bates does not argue, nor does

24  it appear as though, her claims against Abbott arise out of or relate to Abbott's California

25  activities.  The Court concludes she has not made a showing of personal jurisdiction over Abbott

26  as to Bates' claims.

27       Bates argues, alternatively, that the Court should exercise pendent personal jurisdiction

28  over Bates' claims because they share a common nucleus of fact with LeGrand's claims.  ECF No.

United States District Court
Northern District of California

29 at 32-33.  The Court has discretion to exercise "pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004).  "However, nearly every court considering the issue has concluded pendent party jurisdiction cannot be exercised by a federal court sitting in diversity." *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019) (collecting cases and noting reasonable counterarguments, but nonetheless dismissing the claims by nonresident, named class-action plaintiffs without personal jurisdiction).  *See also King v. Bumble Trading, Inc.*, No. 18-CV-06868-NC, 2020 WL 663741, at *6 (N.D. Cal. Feb. 11, 2020) (distinguishing pendant jurisdiction for federal question cases from pendent jurisdiction for diversity cases and "declin[ing] to create a split of authority" and exercise pendent jurisdiction over the named plaintiff's claims for which there was no personal jurisdiction); *La Fosse v. Sanderson Farms, Inc.*, No. 19-CV-06570-RS, 2020 WL 3617786, at *4 (N.D. Cal. July 2, 2020) ("Since plaintiffs currently assert no viable federal claim or apparent nationwide class, the consensus articulated in *Sloan II* will be followed.  Pendent personal jurisdiction will not be exercised over the out-of-state named plaintiffs at this juncture.").  Given the current state of the caselaw in this district, the Court declines to exercise pendent personal jurisdiction over Bates' claims.

The Court **GRANTS** Abbott's Motion to Dismiss Bates' claims pursuant to Rule 12(b)(2).  Because the Court finds it lacks personal jurisdiction, the Court declines to address Abbott's other arguments for dismissal of Bates' claims.

The Court **GRANTS** leave to amend the Complaint, should Bates have claims pursuant to federal questions.  *Cf. La Fosse*, 2020 WL 3617786, at *4 (granting leave to amend to allege a federal question, in which case "it may be appropriate to reverse course and exercise pendent personal jurisdiction again.").

**B.     Rule 12(b)(6)**

**1.     False Advertising Claims**

Plaintiffs assert five causes of action under statutes related to false advertising, specifically California's FAL, UCL, and CLRA and New York's False Advertising and Unfair and Deceptive Business Practices statutes.  As stated above, the Court finds it does not have personal jurisdiction over Bates' claims, and thus does not further address the causes of action brought under New York law.  Pursuant to California law, the CLRA prohibits statutorily specified "unfair methods of competition and unfair or deceptive acts or practices" which result "in the sale or lease of goods or services to any consumer" and the FAL makes unlawful "untrue or misleading" advertising.  Cal. Civ. Code § 1770(a); Cal. Bus. & Prof. Code § 17500.  Additionally, the UCL creates a cause of action for an "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The prongs of "unlawful," "unfair," and "fraudulent," are treated distinctly, but "[g]enerally, a violation of the FAL or the CRLA is also a violation of the fraudulent prong of the UCL."  *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1063 (N.D. Cal. 2017).

Abbott moves to dismiss these claims on multiple bases, including that the alleged false advertising statements are not misleading as a matter of law, that federal law preempts certain challenged statements from being found to be false advertising, that the pleadings are insufficient under Rule 9(b), and that LeGrand lacks statutory standing for products she did not purchase. ECF No. 18 at 11-12.

**a.     Statutory Standing**

Abbott argues that LeGrand does not have standing under the UCL, FAL and CLRA to challenge advertising for products she did not purchase nor statements upon which she did not rely.  ECF No. 18 at 22-23.  LeGrand argues that she has standing to challenge the other products because they are substantially similar.  ECF No. 29 at 27-28.  Abbott does not contest LeGrand's standing for the product she purchased and statements upon which she did rely.

In the Ninth Circuit, "[t]here is no controlling authority on whether Plaintiffs have standing for products they did not purchase."  *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012).  However, "[t]he majority of the courts that have carefully analyzed the

question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.* at 869. *See also Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1082-83 (N.D. Cal. 2014) (observing that "[c]ourts in this district have adopted three diverging approaches for analyzing standing to pursue claims for nonpurchased products" and adopting the substantial similarity test). In determining whether products are substantially similar, "[c]ourts look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Figy*, 67 F. Supp. 3d at 1083. If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).

Here, LeGrand alleges she relied upon the statements "nutrition shake," "Complete, Balanced Nutrition," "Complete, Balanced Nutrition for everyday health," and "Doctor Recommended" in purchasing the Ensure Original Nutrition Shake. ECF No. 1 ¶ 107. While these advertising statements vary some from statements on the other products, the Court finds the products sufficiently similar. All products prominently display that they are "Doctor Recommended," and emphasize "nutrition." *Id.* Most of the packaging includes language that the nutrition is "complete" and "balanced." *Id.* ¶ 1. Significantly, the basis for alleging the packaging to be misleading is largely the same. *Cf. McMorrow v. Mondelez Int'l, Inc.*, No. 17-CV-02327-BAS-JLB, 2018 WL 3956022, at *4 (S.D. Cal. Aug. 17, 2018) (finding sufficient similarity where "[p]laintiffs allege that each of the Products contain excessive added sugar and include the same or similar false and misleading advertising statements."). All the relevant products contain added sugar in harmful amounts, the key ingredient underpinning LeGrand's false advertising claims. ECF No. 1 ¶¶ 14-34. The Court finds these similarities substantial, and that LeGrand has statutory standing for the relevant products at this early stage.

**b.     Preemption**

Abbott argues that many of its allegedly misleading statements constitute nutrient content statements under federal law and thus the state consumer protection claims based on those

United States District Court
Northern District of California

statements are preempted.  ECF No. 18 at 23-26.  LeGrand argues that there is a presumption

against preemption and that Abbott has not overcome it.  ECF No. 21-23.

"Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts

state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative

field to such an extent that it is reasonable to conclude that Congress left no room for state

regulation in that field."  *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (quotations

omitted).  The relevant federal law here is the Food, Drug, and Cosmetic Act ("FDCA"), which

Congress amended in 1990 to "establish[] uniform food labeling requirements."  *Lilly v. ConAgra

Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014).  As part of the uniformity goal, the amendments

explicitly provided that no state may "directly or indirectly establish . . . any requirement

respecting any claim of the type described in section 343(r)(1) of this title made in the label or

labeling of food that is not identical to the requirement of section 343(r) of this title . . . ."  21

U.S.C. § 343-1(a)(5).  Pursuant to 21 U.S.C. § 343(r)(1), this means that food labeling

"characteriz[ing] the level of any nutrient" defined in the FDCA cannot be restricted by states in

ways not identical to the FDCA restrictions.  "Not identical to" means that a state law regulating

food labeling of nutrient levels is preempted "when a state law prohibits labeling that is permitted

under federal law" and "when a state law prohibits labeling that is not prohibited under federal

law."  *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014).  *See also Hadley*,

273 F. Supp. 3d at 1071.  Claims under state law restricting food labeling apart from nutrient

levels, or health-related conditions, will not be preempted. [2]  *See McMorrow*, 2018 WL 3956022,

at *6. Abbott does not argue any of its statements are "health claims," and thus the Court focuses

its analysis solely on claims regarding nutrient levels.

LeGrand's false advertising claims are based on the argument that product labels for

Ensure Nutrition Drinks advertise the products as "generally healthy," including that they provide

"heart" support and "complete" and "balanced" nutrition, and that the labels are misleading

---

[2] The FDCA also limits state regulation of food labeling which "characterizes the relationship of any nutrient . . . to a disease or a health-related condition," also known in caselaw as "health claims."  21 U.S.C. § 343(r)(1).  *See McMorrow*, 2018 WL 3956022, at *5.

because the products' added sugars are at a level "likely to have an overall, net detrimental impact on health for most consumers." ECF No. 1 ¶¶ 75-79. The Food and Drug Administration ("FDA") has declined, however, to prohibit food labeling which advertises a product as "healthy" when it contains high amounts of sugar. *See Hadley*, 273 F. Supp. 3d at 1073; *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *8 (E.D.N.Y. July 21, 2010). Because state law restrictions must be identical to FDCA restrictions on labeling of nutrient levels, LeGrand's state law claims will be preempted to the extent she argues that nutrient content claims on Ensure labels are misleading because they indicate the products are healthy despite containing high levels of sugar. *See id.* The state law claims will not be preempted where they are based on food labeling statements which are not nutrient content claims.

Labeling related to nutrient content is defined as that which "expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling," 21 C.F.R. § 101.13(b). An "expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" *Id.* "An implied nutrient content claim is any claim that: (i) [d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran'); or (ii) [s]uggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')." *Id.* "[I]n determining whether an implied nutrient claim has been made, the court must consider the context of where the challenged claim is made; while the 'magic words' that might create an implied nutrient claim do not need to be directly adjacent to the discussion of a nutrient to create an implied nutrient content claim, there must be connection given the words, their placement, and their context." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 571 (N.D. Cal. 2020) (quotations omitted). The burden is on the party arguing the federal law preempts the state law claim to show preemption. *Hadley*, 273 F. Supp. 3d at 1076.

Abbott identifies multiple, specific statements which it argues are nutrient content claims and thus cannot be relied upon by LeGrand to make out the false advertising claims. Specifically,

1   Abbott identifies the following statements:

2           Ensure Complete [Nutrition Shake]: The statement 'Complete,
3           Balanced Meal Replacement' on the multi-pack . . . as well as various
            benefits  .  .  .  (e.g., 'Immune,' Muscle,' 'Heart,' 'Digestion,' and
            "Bone") . . .
4
            Ensure Enlive Advanced Nutrition Shake: The statements 'our most
5           advanced nutritional product,' and 'All-in-One blend to support your
            health,' . . . 'advanced nutrition shake' and 'All in One . . . Heart[,]
6           Immune[, and] Digestion' . . . [and elsewhere on the packaging]
            'Heart,' 'Immune' and 'Digestion'
7
            Ensure Compact [Therapeutic Nutrition Shake]: The statement
8           'therapeutic nutrition shake' . . . [and] 'Complete, Balanced Nutrition'
            . . .
9
            Ensure Clear [Nutrition Drink]: The statement 'nutrition drink' . . .
10
            Ensure Original [Nutrition] Powder: The description of [the product]
11          as a 'nutrition powder' . . . .

12  ECF No. 18 at 24-25.  LeGrand argues that the above statements are not, in fact, nutrient content

13  claims.  ECF No. 29 at 23-24.

14          The Court finds that "advanced nutrition shake," "therapeutic nutrition shake," "nutrition

15  drink," and "nutrition powder" on the labels for Ensure Enlive Advanced Nutrition Shake, Ensure

16  Compact Therapeutic Nutrition Shake, Ensure Clear Nutrition Drink, and Ensure Original

17  Nutrition Powder, respectively, are not nutrient content claims.  ECF No. 1 at 8-10.  The

18  statements are not placed in close enough proximity to the underlying nutrient claims to be

19  themselves considered nutrient content.  *See* Guidance For Industry A Labeling Guide For

20  Restaurants and Other Retail Establishments Selling Away-from-home Foods, 2008 WL 2155726,

21  at *10 (giving examples of implied nutrient content claims indicating a much closer connective

22  phrasing, such as "Best choice, contains 200 mg sodium," and "Good for You, contains 5 grams of

23  fat.").

24          Similarly, "Immune * Muscle * Heart * Digestion * Bone" on the front of the packaging

25  for Ensure Complete Nutrition Shake stands separate from other references to nutrient content on

26  the packaging and therefore is not an implied nutrient content claim.  ECF No. 1 at 5.  While the

27  back of the packaging follows these words with specific nutrient content, the front of packaging

28  includes no such language.  *Id.*  Statements do not have to appear directly next to an explicit

13

1   nutrient content claim to be implied as such, but the phrasing on the front of the packaging has no

2   contributing context to impute it is a nutrient content claim.  As mentioned, the statements

3   "Immune . . . Muscle . . . Heart . . . Digestion . . . Bone" on the back of the Ensure Complete

4   Nutrition Shake packaging are followed by nutrient content (e.g. "Excellent Source of Zinc,

5   Vitamin A . . .") and thus these statements are implied nutrient content claims and preempted.  The

6   statements "Heart," "Immune," and "Digestion" appearing on the front of the Ensure Enlive

7   Advanced Nutrition Shake packaging are also deemed implied nutrition content claims based on

8   the same logic.  ECF No. 1 at 6.

9          The Court finds the phrasing "Complete, Balanced Meal replacement" on the Ensure

10  Complete Nutrition Shake packaging is implied nutrient content "[s]uggest[ing] that the food,

11  because of its nutrient content, may be useful in maintaining healthy dietary practices."  21 C.F.R.

12  § 101.13(b)(2)(ii).  The phrase is immediately followed by explicit claims about nutrients, such as

13  "Excellent Source of Zinc," and "30 g High-Quality Protein."  ECF No. 1 at 5.  LeGrand argues

14  that the phrase is not "in direct connection with any nutrient content claims."  ECF No. 29 at 23.

15  However, in this context the statements suggest that the product is useful in maintain healthy

16  dietary practices because it has the nutrients necessary to replace meals.

17         Likewise, the phrase "Complete, Balanced Nutrition" on the Ensure Compact Therapeutic

18  Nutrition Shake packaging appears alongside the statement that the product contains "9 g Protein"

19  and is thus implied nutrient content.  ECF No. 1 at 8.  Although the statements are not

20  immediately next to one another, they are in the same graphic, and "Complete, Balanced

21  Nutrition" appears to signify that the product is healthy, in part, because it provides high levels of

22  protein.

23         Based on similar analysis, the statements "All in One . . . Heart[,] Immune[, and]

24  Digestion" on the Ensure Enlive Advanced Nutrition Shake are implied nutrition content claims.

25  ECF No. 1 at 6.  They are modified immediately by "20 g Protein."  *Id.*  The context of the phrases

26  suggests that the product is an "All in One" source of health based on the presence of this nutrient.

27         Phrases in the paragraph on the Ensure Enlive Advanced Nutrition Shake, specifically "our

28  most advanced nutritional product," and "All-in-One blend to support your health," are implied

United States District Court
Northern District of California

nutrient content claims as defined by 21 C.F.R. § 101.13(b)(2)(ii).  They are immediately followed by the phrasing "HMB * Protein * Vitamin D * Omega -3 ALA . . . ."  LeGrand argues that the protein and vitamin D statements are not nutrient content claims because they do not state or imply that a nutrient is "present in a certain amount."  ECF No. 29 at 23-24.  However, the FDA guidance is not so exacting.  Guidance For Industry A Labeling Guide For Restaurants and Other Retail Establishments Selling Away-from-home Foods, 2008 WL 2155726, at *10 ("FDA may consider the term to be used in a nutritional context if it appears in association with an explicit or implicit claim or statement about a nutrient.").  Read in context, the challenged statements indicate that the product is useful in maintaining healthy practices based on its "advanced" nature and "All-in-One blend," which provides the specified nutrients.  Courts have previously found implied nutrient content claims even if the statements do not specify the nutrient is present in a certain amount.  *Cf. Hadley*, 273 F. Supp. 3d at 1078 ("Whole Grains | Wholesome Fiber | Real Fruit / Take care of you" is a nutrition content claim because it identifies fiber as a nutrient and the phrase "Take care of you" connected "the presence of fiber with the health of the consumer . . . ."); *Krommenhock II*, 334 F.R.D. at 570 ("Alpha-Bits is a good source of nutrients that are building blocks for your child's developing brain" is an implied nutrient content claim because it is immediately followed by general references to iron, zinc and vitamin B1, B2, B6, and B12).

In sum, the following are implied nutrient content claims and preempted:

1)  Ensure Complete Nutrition Shake: "**Complete, Balanced Meal Replacement**" in the chart on the back of the package as well as the phrasing "**Immune**," "**Muscle**," "**Heart**," "**Digestion**," and "**Bone**" on the back of the package;

2)   Ensure Enlive Advanced Nutrition Shake: "**our most advanced nutritional product**," "**All-in-One blend to support your health**," and "**All in One . . . Heart[,] Immune[, and] Digestion**"; and

3)  Ensure Compact Therapeutic Nutrition Shake: "**Complete, Balanced Nutrition**." LeGrand may not rely upon these statements to argue that the advertising for Ensure products is misleading because it suggests the products are healthy despite unhealthy added sugar.

1

### c.      Reasonable Consumer

Abbott also argues that the false advertising claims fail entirely because the advertising statements are not misleading to a reasonable consumer.  ECF No. 18 at 13-22.  LeGrand argues that she has plausibly pled the labeling deceives reasonable consumers because Abbott's message focuses on the products' purported health benefits while omitting the health harms of the products' added sugar content.  ECF No. 29 at 13-21.

To state a claim under the UCL, FAL, and CLRA, LeGrand must allege facts satisfying the "reasonable consumer" standard, i.e., that members of the public are likely to be deceived.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  "Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Id.*  "In determining whether a statement is misleading under the statute, 'the primary evidence in a false advertising case is the advertising itself.'"  *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 679 (2006), *as modified on denial of reh'g* (Jan. 31, 2006) (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 110 (2003)).

Whether a business practice is deceptive is an issue of fact not generally appropriate for decision on a motion to dismiss.  *See, e.g., Williams*, 552 F.3d at 938-39 (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)).  The Ninth Circuit has emphasized that under the reasonable consumer test, it is a "rare situation in which granting a motion to dismiss is appropriate," *Williams*, 552 F.3d at 939, because "it raises questions of fact." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015).  Thus, for purposes of this order, the Court need only decide whether it is plausible that "'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie*, 105 Cal. App. 4th at 508).

LeGrand alleges that Ensure Nutrition Drinks are marketed with labeling representing the

16

products as healthy food choices, such as "nutrition shake," "Complete, Balanced Nutrition" "Complete, Balanced Nutrition for everyday health," and "#1 Doctor Recommended," but that the labels are misleading because the products are harmful to overall health based on their added sugar content. ECF No. 1 ¶¶ 1-2, 14-15. Drawing all inferences in LeGrand's favor, the Court finds it plausible that such statements could mislead reasonable consumers into believing the products are healthy. *See McMorrow*, 2018 WL 3956022, at \*9 (finding plausible that "a reasonable consumer with certain expectations of health that do not include the amount of sugar in the Products" could be misled based on statements indicating health, such as "Nutritious Sustained Energy."). *Cf. Delacruz v. Cytosport, Inc.*, No. C 11-3532 CW, 2012 WL 1215243, at \*6 (N.D. Cal. Apr. 11, 2012) (noting that the phrase "nutritional shake" "contributes to a claim of deceptive product labeling" based on alleged misrepresentations that the product contains healthy fats). Taking as true that the added sugar content in Ensure Nutrition Drinks makes them harmful to health, the Court finds it reasonable that a consumer could be misled by packaging promoting the products as "Complete, Balanced Nutrition" and "for everyday health," which implies that they help rather than harm consumer health.

### i.    Disclosure of Added Sugar

Abbott argues that its products cannot reasonably mislead consumers based on a claim related to the amount of sugar in the product, because the Nutrition Facts Panels on the labels disclose the products' sugar content. ECF No. 18 at 15-16. However, that the amount of sugar is listed on the Nutrition Facts Panel does not prevent the product labeling from being misleading. "[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939. *See Ackerman*, 2010 WL 2925955, at \*16 ("The fact that the actual sugar content of vitaminwater was accurately stated in an FDA-mandated label on the product does not eliminate the possibility that reasonable consumers may be misled."). Here, LeGrand alleges that Ensure Nutrition Drinks contain misleading statements related to the product's impact on health. Consumers are not required to read the fine print regarding the sugar content to counter the label's misrepresentations that the product is healthy. *See Krommenhock v.*

17

*Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017) (finding that plaintiffs were not required to review the Nutrition Facts Panel for the sugar content because "plaintiffs have alleged affirmative misrepresentations—either express or implied—that the challenged products are healthy, which they assert is false or misleading given the added sugar content."); *Williams*, 552 F.3d at 939 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.").  The Court finds the challenged statements plausibly could mislead a reasonable consumer, and thus Defendant cannot rely on the Nutrition Facts Panel to correct those potential misleading statements.

Abbott primarily relies on two recent cases in this district where courts found that a reasonable consumer could not be misled about the healthiness of a product based on the added sugar because the label disclosed the sugar content.  *Clark v. Perfect Bar, LLC*, No. C 18-06006 WHA, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018) ("[t]he actual ingredients were fully disclosed.  Reasonable purchasers could decide for themselves how healthy or not the sugar content would be."), *aff'd,* 816 F. App'x 141 (9th Cir. 2020).  *See also Truxel v. Gen. Mills Sales, Inc.*, No. C 16-04957 JSW, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019) (dismissing a similar case, in part, because "[t]his Court in *Clark* held that, as a matter of law, a reasonable consumer cannot be misled about a food product's purported 'excessive' sugar content where that food's label plainly discloses the sugar content.").  While *Clark* and *Truxel* have persuasive authority and are brought under a similar theory of liability as the case herein, they are not the only cases in this district to consider whether a false advertising claim is plausible where advertising suggests the product is healthy despite harmful levels of added sugar.  *See Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 966-67 (N.D. Cal. 2022) (collecting cases).  In most of these cases, the court found plausible that a reasonable consumer could be misled by product labeling indicating healthfulness when the product contained harmful levels of added sugar.  *See Johnson-Jack*, 587 F. Supp. 3d at 966-69; *Milan v. Clif Bar & Co*., No. 18-CV-02354-JD, 2019 WL 3934918, at *2 (N.D. Cal. Aug. 20, 2019); *Hadley*, 273 F. Supp. 3d at 1089; *Krommenhock I*, 255 F. Supp. 3d at 962.  This Court follows the weight of authority in the district

18

allowing these claims to proceed and declines to hold that disclosure of sugar content on a label necessarily precludes a claim alleging advertising promoting a product as healthy is misleading because of the harmful amounts of added sugar in the product.

### ii.      Truthful Statements

Additionally, Abbott argues that some of its advertising statements are literally true and thus cannot form the basis for a false advertising claim. ECF No. 18 at 18-21. However, the fact that some of the challenged claims may be literally true does not conclusively prevent a reasonable consumer from being misled. "'[L]iteral truth can sometimes protect a product manufacturer from a misleading claim, but it is no guarantee,' whereas 'there is no protection for literal falseness.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (quoting *Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683, 691-92 (2018)). California consumer protection laws "prohibit 'not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams*, 552 F.3d at 938 (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (2002), *as modified* (May 22, 2002)). While statements such as "#1 Doctor Recommended Brand" and "With Nutrients for Immune System Support" may be accurate, that does not prevent them from creating a false impression of health when read in the context of the packaging. *See Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *5 (N.D. Cal. Apr. 21, 2020) (although packaging for "Honey Bunches of Oats" did not make any objective representations about the amount of honey in the cereal, "a reasonable consumer could see the prominent honey-related words and imagery and be deceived into thinking the cereal contained relatively less refined sugar and more honey."); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) ("Made with 5G [or 8G] of Whole Grain Per Serving" accurately set out the amount of whole grain in the product, but it was still misleading because the advertising incorrectly implied the product was predominantly whole grain).

Abbott also argues that the statements "Discover More at Ensure.Com," "Learn About Ensure Complete's Nutrition and Benefits," and "Chat Live with a Registered Dietitian about Nutrition" lack any factual content and thus fail to be misleading. ECF No. 18 at 20-21. LeGrand

counters that the latter two statements reinforce and contribute to the misleading message that the products are healthy and based on sound nutrition principles.  ECF No. 29 at 19-20.  The Court agrees that "Learn About Ensure Complete's Nutrition and Benefits," and "Chat Live with a Registered Dietitian about Nutrition," both could be misleading to a reasonable consumer.  The former statement is potentially misleading along the same lines as other package references to "nutrition," as it implies the product is providing a benefit, rather than a detriment, to nutrition and health.  The latter statement is potentially misleading in a manner similar to "#1 Doctor Recommended Brand," because it indicates that someone with specialized health expertise promotes the product and thus lends credence to the notion that the product is healthy.  LeGrand does not contend in her opposition that "Discover More at Ensure.Com" is misleading and the Court agrees the statement does not appear to contribute to the arguably misleading messaging regarding health and nutrition.

### iii.    Inactionable Puffery

Abbott also argues that some of the challenged statements are inactionable puffery.  ECF No. 18 at 21-22.  California law provides that false advertising claims will not lie where the challenged statements constitute "puffery."  *See Williams*, 552 F.3d at 939 n.3 (discussing puffery in the UCL, FAL, and CLRA context).  "[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion."  *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (quoting *Cook, Perkiss, & Liehe v. Northern California Collection Service, Inc*, 911 F.2d 242, 245 (9th Cir.1990)).  "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance.  Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim."  *Id*.

The Court finds that it cannot determine at this stage that statements such as "Complete, Balanced Nutrition," and its variations, as well as the adjectives "Advanced" and "most advanced," definitively constitute puffery.  The statements must be viewed in the context of the whole package, and in that context the phrases do support an inference that the relevant products are healthy.  *See Krommenhock I*, 255 F. Supp. 3d at 965 ("Courts have repeatedly emphasized

United States District Court
Northern District of California

1   that in order to assess whether a statement is mere puffery, it must be considered in the context of

2   the whole label."); *Williams*, 552 F.3d at 939 n.3 ("[G]erber's claim that Snacks is 'nutritious,'

3   were it standing on its own, could arguably constitute puffery, since nutritiousness can be difficult

4   to measure concretely. . . . Given the context of this statement, we decline to give Gerber the

5   benefit of the doubt by dismissing the statement as puffery.").  While the Court could determine at

6   a later stage that the statements are too generalized, it cannot say at this juncture that the terms are

7   extremely unlikely to induce consumer reliance.  *Cf. Hadley*, 273 F. Supp. 3d at 1083 (noting

8   "'nutritious' 'essential nutrients,' and 'wholesome' are general statements because they do not

9   have concrete meanings" but declining to determine they constitute puffery and dismiss because

10  they "might cause a reasonable consumer to think that a product is healthy."); *Jones v. Nutiva,*

11  *Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016) (Noting

12  "'better than butter,' is closer to a subjective, general assertion of superiority," but declining to

13  find it puffery on a motion to dismiss when it could contribute "to the deceptive context of the

14  package as a whole.") (quotations omitted).

15          Abbott points to *Blue Buffalo Company Ltd. v. Nestle Purina Petcare Company*, No. 4:15

16  CV 384 RWS, 2015 WL 3645262 (E.D. Mo. June 10, 2015) for the proposition that "Complete,

17  Balanced Nutrition," is puffery.  ECF No. 18 at 21.  However, the Court finds more analogous *In*

18  *re Big Heart Pet Brands Litig.*, No. 18-CV-00861-JSW, 2019 WL 8266869, at *18 (N.D. Cal. Oct.

19  4, 2019).  There, a court in this district examined the claim that "100% Complete and Balanced

20  Nutrition" was misleading because the product contained "arsenic, lead and other heavy metals

21  and BPA."  *In re Big Heart Pet Brands Litig.*, 2019 WL 8266869, at *18. The court differentiated

22  the *Blue Buffalo* plaintiff's allegation that the product contained inferior ingredients from the

23  claim before the court that the product was "inherently unhealthy and non-nutritious" and found,

24  in the latter context, the court could "not conclude as a matter of law that '100% Complete and

25  Balanced Nutrition' would be extremely unlikely to induce consumer reliance."  *Id*.  This Court

26  similarly concludes that in the context of LeGrand's claims regarding health and nutrition the

27  Court cannot conclude the phrase "Complete, Balanced Nutrition," nor the adjectives "advanced,"

28  and "most advanced," are puffery as a matter of law.

United States District Court
Northern District of California

United States District Court
Northern District of California

Finally, Abbott contends that the statements "most advanced nutritional product, designed to *help* rebuild your strength and energy from the inside, with an All-in-One blend to support your health," and "[r]ecommend[s] 2 bottles per day as *part* of a healthy diet" are qualified and therefore incapable of measurement and nonactionable.  ECF No. 18 at 22 (emphasis in original).  This argument has its origins in the Ninth Circuit decision *Freeman v. Time, Inc.*, wherein the court found that a reasonable consumer could not be misled that they had won a sweepstakes when "qualifying language appeared immediately next to the representations it qualifies and no reasonable reader could ignore it."  68 F.3d 285, 289 (9th Cir. 1995).  The case before this Court is distinguishable, however, as the language that Ensure Nutrition Drinks "help rebuild your strength and energy" and are "part of a healthy diet" do not explicitly clarify the advertisements.  They could actually be misleading in and of themselves where the Complaint alleges that the products are, in fact, not part of a healthy diet, and are harmful to consumers' health.  That the terms "help" and "part of" are qualifying does not on its own preclude from being part of a misleading statement.  *Cf. Williams*, 552 F.3d at 939 ("[T]he claim that Snacks is 'just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy' adds to the potential deception.")

In conclusion, based on the facts pled and drawing all inferences, the Court finds plausible that a significant portion of consumers, acting reasonably in the circumstances, could be misled by Ensure Nutrition Drinks' advertising statements.

### 2.	Rule 9(b)

Abbott argues that the fraudulent advertising claims, as well as some of LeGrand's common law claims, do not comply with the Federal Rule of Civil Procedure 9(b)'s heightened pleading standard and therefore must be dismissed.  ECF No. 18 at 26-27.  Abbott specifically identifies the intentional misrepresentation, negligent misrepresentation, UCL, CLRA, and FAL claims as fraud-based claims.  *Id.* at 26.  LeGrand argues that she has met her pleading burden under Rule 9(b).  ECF No. 29 at 25-27.

Where a plaintiff asserts a claim sounding in fraud, the plaintiff must "state with particularity the circumstances regarding fraud or mistake."  Fed. R. Civ. P. 9(b).  A claim sounds

1    in fraud if the plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that

2    course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103

3    (9th Cir. 2003).  The context surrounding the fraud must "be 'specific enough to give defendants

4    notice of the particular misconduct . . . so that they can defend against the charge and not just deny

5    that they have done anything wrong.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

6    2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  Thus,

7    "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the

8    misconduct charged."  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th

9    Cir. 1997)).

10         Rule 9(b)'s heightened pleading standard applies to UCL, FAL, and CLRA causes of

11    actions that "are 'grounded in fraud' or 'sound in fraud.'"  *In re Apple & AT & T iPad Unlimited*

12    *Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011) (quoting *Kearns*, 567 F.3d at

13    1125.  Similarly, negligent misrepresentation and intentional misrepresentation claims sound in

14    fraud and must meet the requirements of Rule 9(b).  *See, e.g.*, *Carter v. Rasier-CA, LLC*, No. 17-

15    CV-00003-HSG, 2017 WL 4098858, at *4 (N.D. Cal. Sept. 15, 2017) (applying Rule 9(b)

16    pleading standards for common law negligent misrepresentation and intentional

17    misrepresentation), *aff'd*, 724 F. App'x 586 (9th Cir. 2018).  Here, LeGrand does not dispute that

18    her claims are subject to Rule 9(b).  Rather, she argues that she satisfies the rule.

19         The Court finds that LeGrand has adequately pled the "who, what, where, when, and how"

20    of Abbott's alleged misconduct.  LeGrand alleges that during the class period (the "when") she

21    (the "who") purchased Ensure Original Nutrition Shakes in Richmond, California (the "where").

22    ECF No. 1 ¶ 106.  LeGrand asserts she relied upon Abbott's label advertising "nutrition shake,"

23    "Complete, Balanced Nutrition," "Complete, Balanced Nutrition for everyday health," and

24    "Doctor Recommended," and she alleges those statements were misleading (the "what").  *Id.* ¶

25    107.  She further alleges that the statements were misleading because they imply that the product

26    is beneficial rather than detrimental to her health (the "how").  *Id.*  Abbott contests that reference

27    to the class period is sufficient to allege the "when," but courts have previously found such a limit

28    sufficient for fraud allegations, including where the pleadings limit the class period to the previous

*United States District Court*
*Northern District of California*

1    four years.  *See Johnson-Jack*, 587 F. Supp. 3d at 974 (finding sufficient that "[plaintiffs]

2    purchased the product 'during the Class Period approximately once or twice per month,'" and

3    defining the Class Period as "any time from four years preceding the date of the filing of this

4    Complaint to the time a class is notified."); *Duran v. Creek*, No. 3:15-CV-05497-LB, 2016 WL

5    1191685, at *5 (N.D. Cal. Mar. 28, 2016) (finding "purchases during the class period," to be

6    sufficiently pled "when").

7            Abbott also particularly argues that the Complaint fails to sufficiently plead intent to

8    defraud.  ECF No. 18 at 26-27.  Intentional misrepresentation under California law includes the

9    element of intent to defraud.  *See Carter* 2017 WL 4098858, at *4 (listing intentional

10   misrepresentation elements, including "intent to defraud, *i.e.*, to induce reliance . . . .").  Rule 9(b)

11   provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged

12   generally."  Fed. R. Civ. P. 9(b).  The Ninth Circuit has indicated in dicta that fraudulent intent

13   must meet *Twombly* plausibility requirements.  *See Eclectic Properties E., LLC v. Marcus &*

14   *Millichap Co.*, 751 F.3d 990, 995 n.5 (9th Cir. 2014) ("[A]lthough the language of Rule 9 poses no

15   barrier in itself to general pleading of fraudulent intent, *Twombly* and *Iqbal*'s pleading standards

16   must still be applied to test complaints that contain claims of fraud.").  The Court determines that,

17   given it may be alleged generally, the Complaint plausibly states facts from which an intent to

18   defraud can be inferred.  The Complaint alleges that Abbott is a "large sophisticated company that

19   holds itself out as hav[ing] expert knowledge regarding the impact of consuming the Products."

20   ECF No. 1 ¶ 99.  Further, LeGrand claims that Abbott knew the statements were misleading or

21   acted recklessly and that Abbott intends consumers to rely on their misrepresentations, "as

22   evidenced by the intentional and conspicuous placement" of the misrepresentations on the food

23   labels.  *Id.* ¶¶ 211-12.  Together, the allegations that Abbott is a sophisticated company such that it

24   would understand the impact of its products and that its prominently advertised its products were

25   healthy is sufficient to plead that Abbott intended to induce reliance.  *See San Diego Gulls Hockey*

26   *Club, LLC v. ECHL, Inc.*, No. 819CV01716JLSDFM, 2020 WL 2510519, at *3 (C.D. Cal. Jan. 29,

27   2020) (allegations that representations "were made with either knowledge of falsity or reckless

28   disregard as to their truth or falsity" are sufficient for intentional misrepresentation under Rule

24

9(b)); *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 898 (N.D. Cal. 2014) (concluding in the intentional misrepresentation context that "[p]laintiff pleads sufficient facts from which it can be inferred that defendant either knew or should have known that the information provided was false or incomplete.  An intent to deceive may be pleaded generally."). *See also In re Eashai*, 87 F.3d 1082, 1090 (9th Cir. 1996) (indicating that fraudulent intent can be established through circumstantial evidence).

In sum, the Court finds LeGrand "set[s] forth more than the neutral facts necessary to identify the transaction" as well as "what is false or misleading about a statement, and why it is false."  *Vess*, 317 F.3d at 1106.

Accordingly, the Court **DENIES** Abbott's Motion to Dismiss the false advertising claims brought under California law.

### 3.   Common Law Claims

#### a.   Breach of Express Warranty under California Law

Abbott argues LeGrand's express warranty claim fails because she does not allege factual promises that could create a warranty.  ECF No. 18 at 29-30.  LeGrand argues that statements made by a seller are presumptively affirmations of fact and thus she has sufficiently pled factual promises.  ECF No. 29 at 28-29.

Under California law, "a plaintiff asserting a breach of warranty claim must allege facts sufficient to show that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached."  *Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1115 (N.D. Cal. 2018) (citing *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010)). Statements on a product's label are part of the bargain between buyer and seller, *Weinstat*, 180 Cal. App. 4th at 1227, and create express warranties, *Mattero*, 336 F. Supp. 3d at 1115-16 (citing several cases).  Courts look to the context of the statement to determine whether an express warranty has been made, including the label.  *Id.* at 1116 (holding the "environmentally responsible" claim on defendant's dish soap and laundry detergent product labels constitutes an affirmative fact or promise that the products do not have "toxic and hazardous ingredients");

*Nutiva, Inc.*, 2016 WL 5210935, at *9 (finding plaintiff adequately alleged that a virgin coconut oil label, in its full context, constitutes an affirmative fact or promise). "The determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (1985). As such, "courts liberally construe sellers' affirmations of quality in favor of injured consumers." *Nutivia, Inc.*, 2016 WL 5210935, at *9 (simplified).

"[C]ourts in this district regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty." *Hadley*, 273 F. Supp. 3d at 1095 (citing *Tsan v. Seventh Generation, Inc.*, 2015 WL 6694104, at *7 (N.D. Cal. Nov. 3, 2015) (because plaintiffs satisfied the reasonable consumer standard with respect to their California consumer protection claims, the same "allegations [we]re sufficient to state a claim for breach of express warranty".)). *See also Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) (denying motion to dismiss breach of express warranty claim "for the same reasons as the consumer protection and misrepresentation-based claims."). As LeGrand's consumer protection claims "are sufficient to state a claim under the reasonable consumer standard, they are likewise sufficient to state a claim for breach of express warranty." *Cooper v. Curallux LLC*, 2020 WL 4732193, at *7 (N.D. Cal. Aug. 14, 2020).

Accordingly, the Court **DENIES** Abbott's Motion to Dismiss the express warranty claim.

### b.    Implied Warranty of Merchantability

Abbott argues for dismissal of the implied warranty of merchantability claim under California law because LeGrand does not allege facts supporting that the products were unfit for consumption. ECF No. 18 at 29-30. LeGrand argues her claim is based on failure of the product to conform to promises and affirmations on the label, not failure to be fit for consumption. ECF No. 29 at 29-30.

The implied warranty of merchantability can be violated on a number of bases, such as that the product is not "fit for the ordinary purposes for which such good [is] used," or that it does not "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal.

Com. Code § 2314(2); *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975).  Thus, LeGrand does not have to allege that the Ensure Nutrition Drinks are unfit for consumption in order to make out an implied warranty of merchantability claim.  *See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) (permitting an implied warranty of merchantability claim under the theory that the food product was mislabeled as healthy even if it was fit for the ordinary purpose of consumption).  Perhaps recognizing that the implied warranty claim can be based on failure to conform with label promises, Abbott shifts its argument in its reply and claims that the implied warranty claim fails because the express warranty claim fails.  ECF No. 32 at 23.  *Cf. Hadley*, 273 F. Supp. 3d at 1096 ("When an implied warranty of merchantability cause of action is based solely on whether the product in dispute conforms to the promises or affirmations of fact on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product.").  As the express warranty claim is sufficiently pled, and Abbott does not argue another basis for dismissal, the Court finds the implied warranty claim sufficiently pled.

Accordingly, the Court **DENIES** Abbott's Motion to Dismiss the express warranty claim.

### c.    Unjust Enrichment

Abbott argues that the unjust enrichment claim fails under California law because it is not a standalone cause of action.  ECF No. 18 at 30-31.  LeGrand contends that unjust enrichment is a standalone cause of action in California.  ECF No. 31-32.

California courts have not been clear on the extent to which unjust enrichment is available as a standalone cause of action.  *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (collecting cases).  Recent unpublished decisions in the Ninth Circuit reflect the uncertainty.  *Compare Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020) ("'[U]njust enrichment is not a cause of action' under California law." (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004))), *with Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) ("[T]he California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed in an insurance dispute." (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 1000 (2015))).  Considering the lack of clarity, this Court

follows the most recent, published Ninth Circuit case to address the issue and finds the cause of action permissible. *ESG Capital Partners*, 828 F.3d at 1038 ("We therefore allow the cause of action, as we believe it states a claim for relief as an independent cause of action or as a quasi-contract claim for restitution.").

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Id.* Restitution is not ordinarily available to a plaintiff unless "'the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust.'" *Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Assn.*, 205 Cal. App. 3d 1415, 1422 (1988) (quoting 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 97, p. 126.). Here, LeGrand alleges the same misrepresentations that underlie her other claims, and thus she has sufficiently pled unjust enrichment. *See Maisel v. S.C. Johnson & Son, Inc.*, No. 21-CV-00413-TSH, 2021 WL 1788397, at *12 (N.D. Cal. May 5, 2021).

Accordingly, the Court **DENIES** Abbott's Motion to Dismiss the unjust enrichment claim.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Abbott's Motion to Dismiss. The Court **GRANTS** dismissal of the causes of action based on violation of N.Y. Gen. Bus. L. § 349, violation of N.Y. Gen. Bus. L. § 350, Unjust Enrichment under New York law, Negligent Misrepresentation under New York law, and Intentional Misrepresentation under New York law. The Court **GRANTS IN PART** dismissal of claims brought based on violation of UCL, FAL, and CLRA, breach of Express Warranties under Cal. Com. Code § 2313(1), Implied Warranty of Merchantability under Cal. Com. Code § 2314, Unjust Enrichment under California law, Negligent Misrepresentation under California law, and Intentional Misrepresentation under California law (1) to the extent those claims rely on statements that the Court has determined are preempted nutrient content claims, as discussed above, and (2) to the extent those claims rely on the statement "Discover More at Ensure.Com," and otherwise **DENIES** dismissal of those claims. The Court **GRANTS** Plaintiffs leave to amend. Plaintiffs may file a First Amended Complaint within 30 days of the date of this order.

1

**IT IS SO ORDERED.**

2

3    Dated:  February 8, 2023

4

5    THOMAS S. HIXSON
     United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

29