UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONDALISA LEGRAND, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>    Defendant. | Case No. 22-cv-05815-TSH<br><br>**ORDER RE: MOTION TO RETAIN CONFIDENTIALITY**<br><br>Re: Dkt. No. 66 |

## I.    INTRODUCTION

Pending before the Court is Defendant Abbott Laboratories' Motion to Retain Confidentiality, in which Abbott moves to retain the confidentiality of certain documents produced in the course of litigation. ECF No. 66. Plaintiff Condalisa LeGrand filed an opposition (ECF No. 72) and Abbott filed a reply (ECF No. 74). The Court has reviewed each of the disputed documents in camera and finds this matter suitable for disposition without oral argument. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART AND DENIES IN PART** Abbott's Motion for the following reasons.

## II.    BACKGROUND

In this putative class action, LeGrand brings claims against Abbott arising out of its advertising and sale of "nutrition" drinks under the "Ensure" brand. LeGrand argues that various health and wellness representations on the Ensure nutrition drink labels and in Abbott's marketing

are false and misleading because they suggest the nutrition drinks are balanced, nutritious, and healthy, when in fact the products contain harmful levels of sugar. ECF No. 37 ¶¶ 1-2.

The Court entered a stipulated protective order ("Protective Order") on June 8, 2023. ECF No. 50. The protective order allows parties and non-parties to designate information or items for protection by marking them "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." *Id.* ¶¶ 2.2, 2.8. The Protective Order defines "CONFIDENTIAL" information or items as "information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c)." *Id.* ¶ 2.2. "HIGHLY CONFIDENTIAL" information or items is defined as "extremely sensitive 'CONFIDENTIAL Information or Items,' disclosure of which to a Non-Party may create a substantial risk of serious harm that could not be avoided by less restrictive means." *Id.* ¶ 2.8.

A party may challenge a confidentiality designation by "providing written notice of each designation it is challenging and describing the basis for each challenge." *Id.* ¶ 6.2. "If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under Civil Local Rule 7." *Id.* ¶ 6.3.

On August 4, 2023, Abbot produced six documents labeled as Bates Nos. Abbott-Ensure-00000106 – Abbott-Ensure-00000136; Abbott-Ensure-00000137 – Abbott-Ensure-00000181; Abbott-Ensure-00000182 – Abbott-Ensure-00000275; Abbott-Ensure-00000276 – Abbott-Ensure-00000314; Abbott-Ensure-00000315 – Abbott-Ensure-00000351; and Abbott-Ensure-00000352 – Abbott-Ensure-00000378 (the "Core Claims Documents"). Declaration of Tracie L. Bryant ("Bryant Decl.") ¶ 6. Abbott designated each of these documents as "Highly Confidential" under the Protective Order. *Id.* On August 14, 2023, LeGrand initiated a challenge to Abbott's designation of these documents, except for Bates No. Abbott-Ensure-00000135; Abbott-Ensure-00000173; and Abbott-Ensure-00000176; Abbott-Ensure-00000180; Abbott-Ensure-00000337; Abbott-Ensure-00000369; Abbott-Ensure-00000376. *Id.* ¶¶ 7, 8. On August 28, 2023, counsel for the parties met and conferred via telephone conference to attempt to resolve the dispute information but were unable to reach a resolution. *Id.* ¶ 9.

### III. LEGAL STANDARD

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Information the court may protect includes "trade secret[s] or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (citing *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)).

In assessing a motion to retain confidentiality under a protective order, a court proceeds in two steps. "First, it must determine whether 'particularized harm will result from disclosure of information to the public.'" *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Phillips*, 307 F.3d at 1211). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test," rather, the moving party must "allege specific prejudice or harm." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Liggett Grp., Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986)).

"Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'" *In re Roman Cath.*, 661 F.3d at 424 (quoting *Phillips*, 307 F.3d at 1211). The court is to consider the following factors in balancing these interests:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order

3

1  of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

2  *Id.* at n.5 (quoting *Glenmede Tr. Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995)).

"[E]ven when the factors in this two-part test weigh in favor of protecting the discovery material (i.e., where the court determines that disclosure of information may result in 'particularized harm,' and the private interest in protecting the discovery material outweighs the public interest in disclosure), a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure." *Id.* at 425 (quoting *Foltz*, 331 F.3d at 1130).

## IV.   DISCUSSION

### A.   Whether Abbott Will Suffer Particularized Harm from Disclosure

Abbott argues that it will suffer particularized harm if the six Core Claims Documents are disclosed to the public because they were compiled for the deliberate purpose of supporting Abbott's label and promotional materials. ECF No. 66 at 6. The Core Claims Documents identify claims regarding Ensure products' efficacy, safety, tolerability, or use prepared for Ensure promotional materials and labeling. Declaration of Meaghan Bird ("Bird Decl.") ¶ 6. The documents were compiled over the course of weeks, during which various Abbott subject-matter experts, including regulatory, nutrition, science, legal, and medical affairs personnel, evaluated each label and promotional claim to confirm its validity. *Id.* ¶¶ 5, 9-11. Abbott argues that it distinguishes itself from competitors by way of this extensive substantiation process and that competitors would be able to use the information contained in the Core Claims Documents and make the same claims for their own products. ECF No. 66 at 7; Bird Decl. ¶¶ 16-19.

The Court finds that Abbott's description of competitive harm based on disclosure of documentation of its research and analysis to substantiate product claims sufficiently identifies that a "'particularized harm will result from disclosure of information to the public.'" *In re Roman Cath.*, 661 F.3d at 424 (quoting *Phillips*, 307 F.3d at 1211). The information included in the Core Claim Documents includes extensive research as well as analysis regarding Abbott's marketing claims. *See, e.g.*, Bates No. Abbott-Ensure-00000118 (discussing antioxidants), Abbott-Ensure-00000124-125, 00000155-156 (discussing vitamin D), Abbott-Ensure-00000140

4

1   (discussing "complete" and "balanced" nutrition); Abbott-Ensure 00000168 (discussing vitamin
2   B12).  Marketing Director Meaghan Bird represents that Abbott differentiates itself from
3   competitors by employing large numbers of subject matter experts to evaluate product claims.
4   Bird Decl. ¶ 17.  The Court finds sufficiently specific that Abbott's substantiation efforts provide
5   it a competitive advantage, and that release of the documents containing this information would
6   provide its competitors the ability to apply the same research to make similar claims.  Bird Decl. ¶
7   19.
8         LeGrand argues that Abbott's identified harm is speculative because Abbot does not
9   identify any relevant competitors.  ECF No. 72 at 6.  In its Reply, Abbott identifies at least one
10  competitor who has not made comparable marketing claims and therefore could benefit from
11  Abbott's information.  ECF No. 74 at 5-6.  By identifying a competitor who has not made the
12  same claims as Abbott and arguing that its own analysis and research is superior to its competitors,
13  Abbott's distinguishes these circumstances from those in *Noble v. Wells Fargo Bank, N.A.*, No.
14  114CV01963DADEPG, 2017 WL 531883, at *4 (E.D. Cal. Feb. 8, 2017).  Abbott argues here that
15  its substantiation process and substantive research and analysis provide it a competitive edge.  *Cf.*
16  *Noble*, 2017 WL 531883, at *4 ("Rather than arguing that the procedures themselves provide a
17  competitive advantage over banks with other eviction procedures, Wells Fargo argues that other
18  competitors who have not yet written any such procedures could avoid the work of compiling such
19  procedures themselves.  This argument appears based on the unwarranted speculation that
20  competitors have no such eviction procedures already."); *Hodges v. Apple Inc.,* No.
21  13CV01128WHO, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013) ("An unsupported
22  assertion of 'unfair advantage' to competitors without explaining 'how a competitor would use
23  th[e] information to obtain an unfair advantage' is insufficient."); *Martin v. Toyota Motor Credit*,
24  No. CV2010518JVSMRWX, 2022 WL 16518182, at *3 (C.D. Cal. Oct. 28, 2022) ("At best,
25  Defendant asserts a generalized, vague concern that other companies would 'unfairly benefit from
26  TMIS's hard work and gain an advantage in the marketplace' by knowing that, oh, there's a
27  processing fee if the parties' agreement is cancelled early, and a toll-free number that a consumer
28  can call with questions.").

1    LeGrand also argues that Abbott's research and analysis is comprised of scientific articles,
2 FDA regulations, and guidance that are publicly available and therefore do not merit protection.
3 ECF No. 72 at 8. However, that cited articles or FDA regulations are publicly available does not
4 prevent a finding of good cause where Abbott has invested substantial effort and expense to
5 compile the research and apply it to formulate its marketing statements. *See Avaya Inc. v. Pearce*,
6 No. 19-CV-00565-SI, 2020 WL 8513514, at *2 (N.D. Cal. Dec. 22, 2020) ("Although some of the
7 information is publicly available in different locations and in different forms, the Confidentiality
8 Analysis contains all of the information in a single report and explains the significance of the
9 different factors analyzed."). Bird represents that Abbott spends weeks assessing the merits of its
10 product claims and employs numerous experts in service of its efforts. *See* Bird Decl. ¶¶ 11, 17;
11 *cf. NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-CV-05058-LHKHRL, 2015 WL 400251, at *16
12 (N.D. Cal. Jan. 29, 2015) (finding trade secret protection could apply where there was "evidence
13 that the party that compiled the publicly available information expended substantial resources in
14 doing so."); *ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1020 (2005) (finding that
15 though some of the enjoined information may be available to the public, there was still substantial
16 evidence it merited trade secret protection where the accumulated list was procured by substantial
17 time, effort, and expense). That the underlying, cited research is available elsewhere does not
18 prevent Abbott's accumulation and application of it from providing a competitive advantage.[1]

19    Finally, LeGrand argues that Abbott's information is stale because some of its claims were
20 developed as distantly as eight years ago. ECF No. 72 at 7. Abbott counters that the Core Claim
21 Documents reflect current substantiation for advertising claims and are still in force today. ECF
22 No. 74 at 6-7. The Court takes Abbott at its attestation – that the documents reflect analysis and

---

[1] LeGrand additionally argues that Abbott's Motion should be denied as a whole because it is not "narrowly tailored" to exclude information that is publicly available. ECF No. 72 at 6. This "narrowly tailored" language comes from Local Civil Rule 79-5, which applies "in all instances where a party seeks to conceal information from the public by filing a document, or portions of a document, under seal." Civ. L.R. 79-5(a); *see also* Civ. L.R. 79-5(c)(3) (motion to seal must include a proposed order that is *narrowly tailored* to seal only the sealable material . . . .") (emphasis added). As Abbott's currently pending Motion is not a motion to seal, the Court declines to apply Local Civil Rule 79-5, and instead relies upon the *In re Roman* legal standard, which does not require narrow tailoring as a threshold to considering a motion to retain confidentiality.

United States District Court
Northern District of California

1 research currently applicable to Ensure products and claims.  Review of the pertinent materials

2 reflects that while some of the Core Claim Documents are as old as 2015, there is no indication

3 that they have been replaced by more recent research and analysis.  *See, e.g.*, Bates No. Abbott-

4 Ensure 00000315 (referring specifically to Ensure Compact claims).  That this analysis is actively

5 relied upon by Abbott to support its current products distinguishes the Core Claim Documents

6 from "outdated" documents in other cases, as those documents had essentially become historical.

7 *Cf. Travelers Prop. Cas. Co. of America v. Centex Homes*, No. 11-3638-SC, 2013 WL 707918,

8 2013 WL 707918, at *1 (N.D. Cal. Feb. 26, 2013) ("Plaintiff concedes that the Guidelines are

9 'outdated and no longer in use.'  Accordingly, it is unclear how Plaintiff's competitors could

10 derive any economic benefit from their use.") (internal citation omitted); *Clifton v. Pearson Educ.,*

11 *Inc.*, No. CV 11-03640-EJD PSG, 2012 WL 1669362, at *2 (N.D. Cal. May 11, 2012) ("[T]he

12 court doubts [defendant's] competitors, armed with print run information that is in many cases

13 years old, can use this information to divine [defendant's] current sales strategies.").

14 In sum, Abbott has identified a particular harm that will result from disclosure of its

15 substantiation analysis.  The Court's conclusion that Abbott has identified specific harm as to the

16 research and analysis performed to substantiate its marketing claims does not cover the entirety of

17 the documents.  In her Opposition, LeGrand identifies numerous pages in the contested documents

18 which she argues do not contain the kind of information Abbott argues would subject it to

19 competitive harm.  ECF No. 72 at 4-5, nn. 4-9.  Some pages list only the names of Abbott

20 employees.  *See, e.g.*, Bates Nos. Abbott-Ensure-00000137, 00000316-317.  Some pages provide

21 nutritional labels.  *See, e.g.*, Bates Nos. Abbott-Ensure 00000131, 00000134, 00000136,

22 00000172, 00000175, 00000179, 00000335-36, 00000338-39, 00000367-68.  Some pages state

23 product claims but provide no details as to the underlying research or analysis in substantiating

24 them.  *See, e.g.*, Bates Nos. Abbott-Ensure-00000107-08, 00000138-39, 00000276-81, 00000288-

25 90, 00000293-95, 00000298-300, 00000302-05, 00000307, 00000309, 00000311, 00000313-14,

26 00000353-54.  Abbott notably does not address LeGrand's argument that many of the document

27 pages do not contain the kind of information it argues warrants protection.  The Court agrees with

28 LeGrand that many pages of the relevant documents do not include the information Abbott

identifies as harmful if disclosed. *See Doe v. Uber Techs., Inc.*, No. 19-CV-03310-JSC, 2022 WL 834316, at *2 (N.D. Cal. Mar. 21, 2022) ("As a threshold matter, several of the portions of Ms. Ding's testimony which Uber contends contain trade secret information do not even discuss the market survey which forms the basis of Uber's claim of confidentiality. Because Uber's entire motion is predicated on its argument that her testimony reveals trade secret information regarding a market survey and presentation discussing that survey, Uber has not satisfied its burden with respect to this testimony.").

Based on Abbott's articulation of specific, competitive harm due to its research and analysis substantiating its product marketing, the parties' agreement that Abbott's product formulation merits protection, and the Court's review of the documents, the Court finds Abbott has identified specific harm under the first prong of analysis for the following: Bates Nos. Abbott-Ensure-00000106, 00000109-29, 00000132, 00000135, 00000140-70, 00000173, 00000176, 00000177, 00000180, 00000182, 00000186-269, 00000271-75, 00000282-84, 00000286-87, 00000291-92, 00000296-97, 00000301, 00000306, 00000308, 00000310, 00000312, 00000315, 00000318-29, 00000337, 00000340-50, 00000355-63, 00000369-70, 00000376-78.[2]

## B.   Public Interest in Disclosure v. Abbott's Confidentiality Interest

The Court next balances "'the public and private interests to decide whether [maintaining] a protective order is necessary.'" *In re Roman Cath.*, 661 F.3d at 424 (quoting *Phillips*, 307 F.3d at 1211). The Ninth Circuit has adopted seven factors to consider in such an analysis. *Id.* at n.5. The Court has already addressed Abbott's privacy interests, and the parties limit their arguments to the fourth and seventh factors – whether confidentiality is being sought over information important to public health and safety and whether the case involves issues important to the public. *Id.*

The Court agrees with LeGrand that this case implicates issues of public health pertaining to potentially harmful levels of added sugar in products claiming to be healthful. That the case more broadly involves public health issues is not a determination that the information at-issue

---

[2] The Court finds that Bates Nos. Abbott-Ensure 00000106, 00000177, 00000363, and 00000370 include product formulation information, which the parties have agreed merits confidentiality.

involves important public health concerns meriting disclosure. The information detailed in the documents certainly relates to the health of the products, but that the information relates to health is not the same as determining that it is important to public health, and LeGrand does not particularly connect her theory that products are misleading based on the harmful levels of sugar with any information contained in the documents. Largely, LeGrand's argument that important public health issues are implicated appears to be an argument that the documents will be relevant to her theory of liability. While the documents may become relevant to determination of this case, the Court does not find the relevance to Abbott's potential defenses or LeGrand's false advertising claim to be a pertinent inquiry for documents not being filed in connection with any dispositive motion. *See California Parents for Equalization of Educ. Materials v. Torlakson*, No. 17-CV-00635-CRB(JSC), 2018 WL 3930141, at *8 (N.D. Cal. Aug. 16, 2018) (distinguishing between "good cause" standard for confidentiality designation of discovery document and "compelling reasons" standard for motion to seal, noting "[i]t is in [the latter] context that the Court can consider the parties' respective arguments about the relevance or lack therefore . . . . Here, the only question is whether the non-parties have shown good cause for keeping documents produced in discovery, but not filed in connection with a dispositive motion or trial, confidential from the public."); *cf. In re FCA US LLC Monostable Elec. Gearshift Litig.*, 377 F. Supp. 3d 779, 788-90 (E.D. Mich. 2019) (discussing the public interest in accessing documents at the motion to seal stage where the court determined that the documents went to "the very heart of the case, and will be crucial to the presentation of the plaintiffs' claims . . . ."). Were the challenged materials proffered on an issue relevant to Abbott's liability the Court may well find disclosure merited. At this juncture, essentially in a vacuum, the information does not appear "important" to the public or public health beyond its potential importance to the Parties' legal claims and defenses. *See Muench Photography, Inc. v. Pearson Educ., Inc.*, No. 12-CV-01927-WHO, 2013 WL 4475900, at *4 (N.D. Cal. Aug. 15, 2013) ("The Court is unaware of any legitimate purpose for disclosing to the public the 'confidential research, development, [ and] commercial information' of a company

before that information becomes material to this case.")[3] At present, the Court finds Abbott's privacy interests outweigh the references to public health and finds the document pages detailed above merit protection under Rule 26(c).

### C. Highly Confidential or Confidential Designation

The Protective Order distinguishes between a "Highly Confidential" "and Confidential" designation. *See* ECF No. 50 ¶¶ 2.2, 2.8. "Highly Confidential" information or items is defined as "extremely sensitive 'CONFIDENTIAL Information or Items,' disclosure of which to a Non-Party may create a substantial risk of serious harm that could not be avoided by less restrictive means." *Id.* ¶ 2.8. While the Court determines that Abbott's substantiation research and analysis meets the criteria of Rule 26(c) and thus merits the "Confidential" designation under the Protective Order, the Court does not find that Abbott sufficiently identifies a "substantial risk of serious harm," beyond the product formulations both Parties agree should be afforded protection. While Abbott identifies that current competitors might be able to make comparable marketing claims if given access to Abbott's research synthesis and analysis, Abbott does not provide sufficient detail or certainty as to the degree or depth of the harm for the Court to conclude the substantiation information is "extremely sensitive" nor that there is "serious harm" at risk. Thus, the Court finds the product formulation information, Abbott-Ensure-00000106; Abbott-Ensure-00000135; Abbott-Ensure-00000173; Abbott-Ensure-00000176; Abbott-Ensure-00000177; Abbott-Ensure-00000180; Abbott-Ensure-00000337; Abbott-Ensure-00000363; Abbott-Ensure-00000369; Abbott-Ensure-00000360; Abbott-Ensure-00000376, is properly designated as "Highly Confidential," but that the remaining substantiation information should be deemed "Confidential."

---

[3] The Court notes that under *In re Roman Cath.*, "[e]ven when the factors in this two-part test weigh in favor of protecting the discovery material (i.e., where the court determines that disclosure of information may result in 'particularized harm,' and the private interest in protecting the discovery material outweighs the public interest in disclosure), a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure." *In re Roman Cath.*, 661 F.3d at 425 (quoting *Foltz*, 331 F.3d at 1130). The Court addressed above in more detail the particular document excerpts for which Abbott evidenced specific harm. Whether that analysis is better conducted as part of the specific harm prong, or in consideration of potential redactions which would allow disclosure, the Court comes to the same outcome as to what portions of the document merit confidentiality.

## V. CONCLUSION

Accordingly, Abbott's Motion to Retain Confidentiality is **GRANTED IN PART AND DENIED IN PART** as stated above.

**IT IS SO ORDERED.**

Dated: October 16, 2023

THOMAS S. HIXSON
United States Magistrate Judge