Mark McKane, P.C. (SBN 230552)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Tel.: (415) 439-1400
Fax: (415) 439-1500
Email: mark.mckane@kirkland.com

Tracie L. Bryant, P.C. (SBN 287508)
Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
Michael A. Glick (admitted *pro hac vice*)
Terence J. McCarrick (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-5000
Fax: (202) 389-5200
Email:  tracie.bryant@kirkland.com
Email:  glocascio@kirkland.com
Email:  michael.glick@kirkland.com
Email:  ttrout-perez@kirkland.com
Email:  tj.mccarrick@kirkland.com

*Attorneys for Defendant Abbott Laboratories*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONDALISA LEGRAND and LARISSA BATES, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | CASE NO. 3:22-cv-05815-TSH<br><br>**ABBOTT LABORATORIES' MOTION TO RETAIN CONFIDENTIALITY**<br><br>Judge: Honorable Thomas S. Hixson<br>Hearing Date: January 9, 2025<br>Time: 10:00 a.m.<br>Location: Via Zoom |

**NOTICE OF MOTION AND MOTION TO RETAIN CONFIDENTIALITY**

PLEASE TAKE NOTICE that on the 9th day of January, 2025 at 10:00 a.m. or as soon thereafter as the matter can be heard in the above-entitled Court, Defendant Abbott Laboratories ("Abbott"), will and hereby does move the Court, pursuant to Paragraph 6.3 of the June 8, 2023 Protective Order entered in this case (ECF No. 50) and Civil Local Rule 7, for an order retaining confidentiality of specific excerpts contained within 17 pages of Meaghan Bird's deposition transcript[1] and specified pages of Exhibit 59 to Meaghan Bird's deposition.[2] Pursuant to the Stipulated Protective Order, Abbott properly designated those portions of the record as "Confidential."[3] The motion is brought following a conference of counsel, and is based on this Notice, the Memorandum of Points and Authorities set forth below, the Declaration of Meaghan Bird, and the Declaration of Tracie L. Bryant, P.C.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Narrow portions of the deposition transcript of Meaghan Bird (an Abbott Marketing Director) and certain related deposition exhibits reflect Abbott's competitively sensitive business strategies, draft, non-public Ensure® marketing materials and advertisements, and Abbott's internal market research. Accordingly, and consistent with the Protective Order the Court entered on June 8, 2023, Abbott designated this information as "Confidential" "to protect [Abbott] from annoyance, embarrassment, oppression, or undue burden or expense [by] requiring that a trade secret or other confidential research, development, or commercial information [] be revealed." Fed. R. Civ. P. 26(c)(1)(G); ECF No. 50

---

[1] The challenged portions of Meaghan Bird's deposition transcript for which Abbott seeks to retain its confidentiality designations are 92:2-4, 11-15; 95:25–96:6; 126:17-19; 148:10-14; 154:2-14; 184:16-20; 184:23–185:1; 185:11-22; 187:1-3; 187:11–188:16; 189:3-6; 190:13–191:3; 213:1-10; 220:10-12, 16-20; 221:6-14, 17-19; 228:14-17, 23-25.

[2] The challenged portions of Exhibit 59 to Meaghan Bird's deposition for which Abbott seeks to retain its confidentiality designations are ABBOTT-ENSURE-000294231, 33–35, 37–40, 42.

[3] Abbott has not filed the at-issue testimony under seal because Abbott has provided a description of the testimony and the information at-issue. *See* T. Bryant Decl., Ex. A (12/5/2024 M. Bird Decl.) ¶¶ 16-17 & M. Bird Decl., Ex. A.2. Further, filing these documents under seal could risk unsealing and disclosure of Abbott's competitively sensitive information in the future. *See* Civil Local Rule 79-5(g)(3) ("Parties or non-parties may, at any time, file a motion requesting that the Court unseal a document. If a motion to unseal is filed more than 3 years after the case is closed, there will be a strong presumption that the document will be unsealed."). Should the Court prefer to review the documents at issue, Abbott requests that it be allowed to submit the documents to the Court for in camera review.

(permitting parties to designate as "Confidential" "information that qualif[ies] for protection under Federal Rule of Civil Procedure 26(c).").

Plaintiff complained that several of Abbott's confidentiality designations were inappropriate. The parties met and conferred, which resulted in Abbott downgrading some of its designations and Plaintiff withdrawing some of her challenges. But the parties disagree on whether 17 portions of Ms. Bird's deposition testimony and nine pages of one deposition exhibit should be designated "Confidential" under the Protective Order.

The disputed items reflect Abbott's confidential (1) business and marketing strategies for Ensure®[4]; (2) draft marketing materials and advertisements for Ensure®[5]; and/or (3) internal consumer research and related market research data regarding Ensure®[6]. All of these categories are textbook examples of competitively sensitive materials that courts commonly keep confidential. *See, e.g.*, *Lin v. Solta Med., Inc.*, 2024 WL 2112893, at *3 (N.D. Cal. Apr. 11, 2024) (granting motion to retain confidentiality of internal documents revealing "internal [business] processes" because "exposing them would give competitors insight into these processes"); *see also Muench Photography, Inc. v. Pearson Educ., Inc.*, 2013 WL 4475900, at *4 (N.D. Cal. Aug. 15, 2013) (granting motion to retain confidentiality of business reports because disclosure would allow competitors to use "[the designating party's] business strategies to their own benefit"). Indeed, making public these categories of information would cause Abbott competitive harm by giving competitors insight into Abbott's marketing strategy, including Abbott's planned or potential marketing materials and Abbott's internal market research. Competitors could use this information to, among other things, emulate Abbott's marketing and advertising; pursue Abbott's marketing targets; and capitalize on Abbott's yet-to-be-announced innovation plans. In sum, public disclosure would harm Abbott.

---

[4] M. Bird Dep. at 92:2-4, 11-15; 95:25–96:6; 126:17-19; 148:10-14; 154:2-14; 213:1-10; 220:10-12, 16-20; 221:6-14, 17-19; 228:23-25.

[5] M. Bird Dep. at 92:2-4, 11-15; 95:25–96:6; 184:16-20; 184:23–185:1; 185:11-22; 187:1-3, 187:12–188:16; 189:3-6; 190:13–191:3; 228:14-17; Exhibit 59 at ABBOTT-ENSURE-000294231, 33–35, 37–40, 42.

[6] M. Bird Dep. at 126:17-19; 148:10-14; 154:2-14; 213:1-10; 220:10-12, 16-20; 221:6-14, 17-19.

Likewise, Abbott's significant interest in retaining the confidentiality of this information far outweighs any minimal public interest in it. This is not a high-profile case implicating emergent public health or safety concerns. Instead, as Plaintiff has acknowledged, this is a false advertising case challenging the labeling of certain Ensure® products where Plaintiff's only alleged injury is economic in nature. 12/5/2024 T. Bryant Decl., Ex. B (Plaintiff's Resps. & Objs. to Abbott's 1st Set of Interrogs.) at 6 ("[T]his is a false advertising case where the injury is economic, rather than physical in nature."). There is simply no public need for the disputed materials.

Abbott therefore respectfully requests that the Court order that Abbott may retain its Confidential designation for the following lines of Meaghan Bird's deposition transcript: 92:2-4, 11-15; 95:25–96:6; 126:17-19; 148:10-14; 154:2-14; 184:16-20; 184:23–185:1; 185:11-22; 187:1-3; 187:11–188:16; 189:3-6; 190:13–191:3; 213:1-10; 220:10-12, 16-20; 221:6-14, 17-19; 228:14-17, 23-25. Abbott also requests that the Court order that Abbott may retain its Confidential designations for the following pages of Exhibit 59 to Meaghan Bird's deposition: ABBOTT-ENSURE-000294231, 33–35, 37–40, 42.

## II.   BACKGROUND

On June 8, 2023, the Court issued a protective order providing that certain sensitive documents can be designated as "Confidential" or "Highly Confidential." ECF No. 50. To be designated as Confidential, materials must include "information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c)." *Id.* ¶ 2.2. If a party challenges another party's confidentiality designations, the parties must attempt to resolve each challenge in good faith through a meet-and-confer process. *Id.* ¶¶ 6.1, 6.2. If no resolution is reached, the designating party may file a motion to retain confidentiality of the challenged documents. *Id.* ¶¶ 6.2, 6.3. Until the Court rules on the challenge, all parties are to continue to afford the material in question the level of protection pursuant to its designation. *Id.* ¶ 6.3.

Abbott designated as "Confidential" specific lines of Ms. Bird's deposition transcript as well as portions of related deposition exhibits. Pursuant to Paragraph 6.2 of the Protective Order, Plaintiff challenged the majority of Abbott's confidentiality designations. 12/5/2024 T. Bryant Decl. ¶ 2. In response to Plaintiff's challenge, Abbott expended significant resources re-reviewing and reassessing the confidentiality of the challenged lines of testimony and documents. *Id.* ¶ 4. In an effort to resolve the

dispute, Abbott offered to further narrow its already limited confidentiality designations. For example, Abbott reduced its designations to only specific pages of a challenged deposition exhibit. *See, e.g.*, *id.* ¶ 6 (limiting confidentiality designations to only a few pages in Deposition Exhibit 59). Abbott further agreed to downgrade the confidentiality designations for much of the challenged deposition testimony. *Id.* ¶ 8. For her part, Plaintiff decided to forego her challenge to other confidentiality designations.

What remains in dispute are 17 portions of Ms. Bird's deposition testimony and 9 pages of a deposition exhibit that reflect Abbott's competitively sensitive business information, draft marketing materials and advertisements, and/or internal market research. Because Plaintiff persists in her unreasonable position that this plainly confidential business information should be made public, Abbott now files this motion to retain its proper confidentiality designations. *Id.* ¶ 9; ECF No. 50 ¶ 6.3.

### III. STATEMENT OF ISSUE TO BE DECIDED

Whether certain excerpts from Ms. Bird's deposition testimony and related deposition exhibit concerning Abbott's competitively sensitive information should be protected as "Confidential" under the Protective Order, given that (A) Abbott will suffer particularized harm if this information is publicly disclosed, and (B) Abbott's significant interest in retaining the confidentiality of these documents far outweighs any minimal public interest in them.

### IV. LEGAL STANDARD

Courts considering whether there is good cause for maintaining the protection of discovery material apply a two-part test. *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011); *see also, e.g.*, *Doe 1 v. Wolf*, 2020 WL 2745266, at *2 (N.D. Cal. May 27, 2020). *First*, the court determines whether "particularized harm will result from disclosure of information to the public." *In re Roman*, 661 F.3d at 424 (quoting *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). "*Second*, if the court concludes that such harm will result from disclosure," "then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'" *Id.* at 424 (quoting *Phillips*, 307 F.3d at 1211) (emphasis added).

## V. ARGUMENT

### A. Abbott Will Suffer Particularized Harm If Its Internal Marketing Documents Are Disclosed to the Public

Materials are protected when public disclosure could interfere with a party's competitive interests in the marketplace. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (noting that protection of "business information that might harm a [company]'s competitive standing" constitutes an overriding interest). Courts in this district have found that "business strategies and internal decisionmaking, product formulations, and confidential finances (i.e., information about [a company's] costs)" are among the types of information that may cause a company competitive harm if publicly disclosed. *Hadley v. Kellogg Sales Co.*, 2018 WL 7814785, at *2 (N.D. Cal. Sept. 5, 2018). That is because competitors could use these documents to determine how to target advertising spending, recruiting, or other competitive strategies to reduce a party's market share. Competitors could also use these documents to "gain[] insight into the [party's] business model and strategy," and "[s]uch insight could harm" the disclosing party. *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017).

***Internal Business and Marketing Strategy.***[7] Abbott seeks to keep confidential information about its internal business and marketing strategy related to Ensure®, such as Abbott's brand prioritization, strategy on messaging and promotional materials, and product development information. Disclosing these materials would give Abbott's competitors a significant and unfair advantage. T. Bryant Decl., Ex. A (12/5/2024 M. Bird Decl. ("M. Bird Decl.")), Ex. A.1 (11/21/2024 M. Bird Decl.), ¶¶ 7-9. Public disclosure would give Abbott's competitors insight into Abbott's marketing strategy and potential new products. Abbott invests significant resources in its internal marketing development and research, which differentiates Abbott's products in the market. Public disclosure would permit non-parties such as Abbott's competitors to access Abbott's proprietary information. *Id.* ¶ 9. Disclosure of the marketing documents and related testimony would also give competitors the opportunity to gain unfair advantage by simply using Abbott's internal marketing documents as a shortcut rather than spending their own resources to assess and improve the effectiveness of their own advertising and marketing efforts. *Id.*

---

[7] M. Bird Dep. at 92:2-4, 11-15; 95:25–96:6; 126:17-19; 148:10-14; 154:2-14; 213:1-10; 220:10-12, 16-20; 221:6-14, 17-19; 228:23-25.

Courts have upheld confidentiality designations in similar cases where public disclosure of the designating party's confidential information, "cultivated from its internal research and thought processes," would put the party at a serious competitive disadvantage. *See, e.g.*, *Venti v. Xerox Corp.*, 2022 WL 3446104, at *6 (D. Idaho Aug. 17, 2022) (maintaining confidentiality designation where "any competitive advantage Defendant had cultivated from its internal research and thought processes used to develop the Defendant's own corporate strategies contained in the document, would be adversely affected by the public disclosure of the document"); *Muench*, 2013 WL 4475900, at *4 (finding designating party would be harmed when disclosure would allow competitors to use "[the designating party's] business strategies to their own benefit"). Here, as in those cases, Abbott's competitors would obtain "internal research and thought processes" without having to spend the time and resources that Abbott incurred, thereby achieving another competitive advantage over Abbott. *See Venti*, 2022 WL 3446104 at *6.

***Draft Marketing Materials and Advertisements.***[8] Much of the information at issue in this motion consists of or refers to Abbott's draft marketing materials and advertisements related to Ensure®. The testimony and related documents describe nonpublic draft materials as well as substantive feedback on those drafts and the reason why specific advertisements or promotional materials or strategies were revised or rejected. M. Bird Decl. ¶ 14. Abbott expends significant resources to vet and revise its marketing materials. These draft documents often undergo an extensive development process, which may take weeks, if not longer, to complete. The draft marketing materials then require approval from various Abbott subject-matter experts, who evaluate the materials using an evidence-based approach to confirm the scientific accuracy and regulatory and legal compliance of the advertising and marketing content. *Id.* ¶ 11. This process results in substantive comments and feedback about the proposed marketing materials. *Id.* ¶ 14.

The rationale for changes and substantive feedback on the proposed marketing materials is sensitive, preliminary information that would cause Abbott competitive harm if disclosed. Disclosure of this information would essentially allow Abbott's competitors to freeride on Abbott's significant

---

[8] M. Bird Dep. at 92:2-4, 11-15; 95:25–96:6; 184:16-20; 184:23–185:1; 185:11-22; 187:1-3, 187:12–188:16; 189:3-6; 190:13-191:3; 228:14-17; Exhibit 59 at ABBOTT-ENSURE-000294231, 33–35, 37–40, 42.

investment. Disclosure could also lead to misunderstandings, misinterpretations, or misrepresentations of the company's intentions or capabilities. *Id.* ¶¶ 15-16. For example, internal documents may contain rejected or unapproved claims as part of internal marketing strategy discussions. If these documents became public, it could cause consumer misunderstanding about the claims that Abbott makes in regard to Ensure® products.

Courts have previously found such consequences of public disclosure a compelling reason to protect similar information from public disclosure. *See, e.g.*, *Lin*, 2024 WL 2112893, at *3 (granting motion to retain confidentiality of internal documents which "reveal internal [business] processes" because "exposing them would give competitors insight into these processes"). Courts have also acknowledged that disclosure of internal marketing materials carries the risk of competitive harm. *See, e.g.*, *Darisse v. Nest Labs, Inc.*, 2016 WL 11474174, at *1–2 (N.D. Cal. June 2, 2016) (sealing defendant exhibits containing confidential analysis related to advertising and marketing because disclosure could harm its competitive standing); *Bauer Bros. LLC v. Nike, Inc.*, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012) (granting Nike's motion to seal where "public disclosure of Nike's confidential business materials, including marketing strategies … and detailed testimony regarding the same, could result in improper use by business competitors seeking to replicate Nike's business practices and circumvent the considerable time and resources necessary in product and marketing development"); *Algarin v. Maybelline, LLC*, 2014 WL 690410, at *3 (S.D. Cal., Feb. 21, 2014) (granting L'Oréal's motion to seal where "[p]ublic disclosure of L'Oréal's confidential business material, marketing strategies, [and] product development plans could result in improper use by business competitors seeking to replicate L'Oréal's business practices and circumvent the time and resources necessary in developing their own practices and strategies.").

***Internal Market Research.***[9] Nor should Abbott's internal market research be publicly disclosed. Abbott uses that research to assess and improve the effectiveness of its advertising and marketing efforts. T. Bryant Decl., Ex. A (12/5/2024 M. Bird Decl.), Ex. A.1 (11/21/2024 M. Bird Decl.), ¶ 11. Abbott also invests significant resources in its internal marketing research and consumer insight studies, which help

---

[9] M. Bird Dep. at 126:17-19; 148:10-14; 154:2-14; 213:1-10; 220:10-12, 16-20; 221:6-14, 17-19.

differentiate Abbott's products in the market. *Id.* ¶ 12. Public disclosure of this information could cause Abbott competitive harm. *Id.* ¶ 9. For example, Abbott's competitors could gain competitive intelligence without having to spend the time and resources Abbott incurred, thus achieving a competitive advantage over Abbott. *Id.* ¶ 13.

Courts commonly find such consequences of public disclosure a compelling reason to seal similar information. *E.g.*, *McMorrow v. Mondelēz Int'l, Inc.*, 2020 WL 406314, at *2 (S.D. Cal., Jan. 24, 2020) (finding compelling reasons to seal information where disclosure would harm the relevant party "by providing for free what IRI has expended resources collecting"); *see also Algarin*, 2014 WL 690410, at *3 (sealing confidential business material and marketing strategies where public disclosure "could result in improper use by business competitors seeking to replicate [the company's] business practices and circumvent the time and resources necessary in developing their own practices and strategies"); *Bauer Bros. LLC*, 2012 WL 1899838, at *2 (same).

### B. Abbott's Interest in Protecting Its Internal Marketing Documents Outweighs Any Public Interest in Disclosure

Because Abbott would suffer competitive harm from the disclosure of the materials at issue, the Court must next balance "the public and private interests to decide whether [maintaining] a protective order is necessary." *In re Roman*, 661 F.3d at 424 (quoting *Phillips*, 307 F.3d at 1211). In balancing the public and private interests, courts consider the following factors (known as the *Glenmede* factors):

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Id.* at 424 n.5 (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir.1995)).

Three of the *Glenmede* factors are inapplicable in this case (*i.e.*, Factors #1-3). There are no constitutional privacy interests at issue here (Factor #1). Abbott does not dispute that Plaintiff has requested Ms. Bird's deposition testimony for a legitimate purpose (Factor #2). Testimony concerning internal business and marketing strategies, draft marketing materials and advertisements, and consumer research is not the type of information that would embarrass Abbott or any other person or entity (Factor

#3).

The remaining factors—Factors #4, #5, #6, and #7—do not support public disclosure. The fourth *Glenmede* factor—"whether confidentiality is being sought over information important to public health and safety"—counsels in favor of maintaining confidentiality because there is no danger to public health or safety at issue in this case. In addressing this factor, courts have made clear that the bar for disclosure due to public health or safety issues is quite high, such as protecting children from sexual abuse, *see, e.g.*, *In re Roman*, 661 F.3d at 428, or access to police body camera footage in a case alleging that a police officer used excessive force, *Harmon v. City of Santa Clara*, 323 F.R.D. 617, 625 (N.D. Cal. 2018). Plaintiff cannot portray this case as one that compels disclosure for public health or safety reasons. As Plaintiff has made clear, "this is a false advertising case **where the injury is economic, rather than physical in nature**." 12/5/2024 T. Bryant Decl., Ex. B (Plaintiff's Resps. & Objs. to Abbott's 1st Set of Interrogs.) at 6 (emphasis added).

Moreover, the fifth *Glenmede* factor—"whether the sharing of information among litigants will promote fairness and efficiency"—also weighs in favor of retaining confidentiality. Because Plaintiff already has access to the challenged deposition testimony and deposition exhibit, there is no concern about fairness or efficiency of sharing information among the parties. *See, e.g.*, *Muench*, 2013 WL 4475900, at *5 (finding that the fifth *Glenmede* factor "does not weigh in favor of disclosure since [plaintiff] already has access to the information"); *see also Shelley v. Cnty. of San Joaquin*, 2015 WL 2082370, at *5 (E.D. Cal. May 4, 2015) (finding that consideration of the fifth *Glenmede* factor weighed "slightly in favor of maintaining the stipulated protective order" because "[a]ll of the litigants in this action already possess the discovery materials at issue here.").

Similarly, the sixth *Glenmede* factor—"whether a party benefitting from the order of confidentiality is a public entity or official"—weighs in favor of maintaining confidentiality because Abbott is not a public entity or official. *See, e.g.*, *Shelley*, 2015 WL 2082370, at *6 ("[W]e are more likely to require disclosure when a party benefitting from the order of confidentiality is a public entity or official.") (quoting *LEAP Systems, Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222 (3rd Cir. 2011)).

Likewise, the seventh *Glenmede* factor—"whether the case involves issues important to the public"—also weighs against disclosure. This "factor alone does not outweigh all of the other interests

and factors considered." *Venti*, 2022 WL 3446104, at *7. Regardless, this is "not a high profile case about which the public is clamoring for information," such as a case protecting children from sexual abuse. *Muench*, 2013 WL 4475900, at *5 (citing *In re Roman*, 661 F.3d at 428). It is a false advertising case alleging economic injury (*i.e.*, an alleged overcharge), purportedly because of a handful of labeling statements on seven Ensure® products' labels. Nor is Abbott advocating that this case be litigated behind closed doors or without the public's knowledge. Abbott has (*e.g.*, ECF Nos. 18, 32, 40, 45) and will continue to explain in full view of the public why the Ensure® labeling claims at issue are not false or misleading in any way. And Plaintiff has (*e.g.*, ECF Nos. 29, 37, 44) and presumably will continue to advance her arguments otherwise. But there is no important public need for this particularly sensitive information to be made public. Nor are the challenged materials being proffered as part of a dispositive motion or on an issue relevant to Abbott's liability. Rather, the information is not "'important' to the public or public health beyond its potential importance to the Parties' legal claims and defenses." Order re: Motion to Retain Confidentiality, ECF No. 76 at 9 (citing *Muench*, 2013 WL 4475900, at *4 ("The Court is unaware of any legitimate purpose for disclosing to the public the 'confidential research, development, [and] commercial information' of a company before that information becomes material to this case.")).

## CONCLUSION

For the foregoing reasons, Abbott respectfully requests that the Court order that following materials may retain their designations as Confidential under the Protective Order: Meaghan Bird's deposition transcript at 92:2-4, 11-15; 95:25–96:6; 126:17-19; 148:10-14; 154:2-14; 184:16-20; 184:23–185:1; 185:11-22; 187:1-3; 187:11–188:16; 189:3-6; 190:13–191:3; 213:1-10; 220:10-12, 16-20; 221:6-14, 17-19; and 228:14-17, 23-25; and the requested pages of Exhibit 59 to Ms. Bird's deposition at ABBOTT-ENSURE-000294231, 33–35, 37–40, and 42.

| | |
|---|---|
| DATED:  December 5, 2024 | Respectfully submitted,<br><br>KIRKLAND & ELLIS LLP<br><br>  /s/ Tracie L. Bryant, P.C.<br>Tracie L. Bryant, P.C.<br><br>Mark McKane, P.C. (SBN 230552)<br>KIRKLAND & ELLIS LLP<br>555 California Street, 27th Floor<br>San Francisco, CA 94104<br>Tel.: (415) 439-1400<br>Washington, D.C. 20004<br>Email:   mark.mckane@kirkland.com<br><br>Tracie L. Bryant, P.C. (SBN 287508)<br>Gregg F. LoCascio, P.C. (admitted *pro hac vice*)<br>Michael A. Glick (admitted *pro hac vice*)<br>Tia T. Trout-Perez (admitted *pro hac vice*)<br>Terence J. McCarrick (admitted *pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Tel.: (202) 389-5000 / Fax: (202) 389-5200<br>Email:   tracie.bryant@kirkland.com<br>Email:   glocascio@kirkland.com<br>Email:   michael.glick@kirkland.com<br>Email:   ttrout-perez@kirkland.com<br>Email:   tj.mccarrick@kirkland.com<br><br>*Attorneys for Defendant Abbott Laboratories* |

**CERTIFICATE OF SERVICE**

On December 5, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

/s/ *Tracie L. Bryant, P.C.*
Tracie L. Bryant, P.C.