UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONDALISA LEGRAND,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | Case No. 22-cv-05815-TSH<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(h)(3)**<br><br>Re: Dkt. No. 172 |

## I. INTRODUCTION

Condalisa LeGrand brings this putative class action against Abbott Laboratories ("Abbott"), alleging certain statements on the labels of Abbott's Ensure® nutrition drinks are false and misleading. ECF No. 116 (Second Amended Complaint). Pending before the Court is Abbott's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(h)(3).[1] ECF No. 172 ("Mot."). Abbott argues that dismissal is warranted because LeGrand lacks Article III standing, and LeGrand does not have standing to pursue injunctive relief. *Id.* The Court finds this matter suitable for disposition without oral argument and **VACATES** the August 7, 2025, hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **DENIES** the motion.[2]

## II. BACKGROUND

**A. Factual Background**

Abbott is an Illinois corporation that manufactures, markets, and distributes several

---

[1] For precision's sake, citations herein are to the unredacted version of Abbott's Motion to Dismiss (ECF No. 173-4).

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 9, 27.

different "nutrition" shakes and drinks under its Ensure brand. Second Amended Complaint ("SAC") ¶¶ 1, 9 (ECF No. 116); Answer ¶¶ 1, 9 (ECF No. 156). LeGrand is a California resident who purchased Ensure products on multiple occasions. SAC ¶¶ 8, 107.

In this putative class action, LeGrand alleges that certain statements on the labels of Ensure products are false and misleading. *Id.* ¶¶ 2, 46, 66, 77, 80, 104.

**B.     Factual Support For Jurisdiction**

In her motion for class certification, currently pending before the Court, LeGrand moves to certify a class of persons who purchased certain Ensure products in California from October 6, 2018, to the time the class is notified (the "Class Period"). Motion for Class Certification ("Mot. Cert.") at 1 (ECF No. 137-3). LeGrand's proposed class involves three Ensure products (the "Challenged Products"): Ensure Original Nutrition Shake; Ensure Plus Nutrition Shake; and Ensure Complete Nutrition Shake. *Id.* LeGrand is a California resident who purchased Ensure Original on multiple occasions during the Class Period. SAC ¶¶ 8, 107. LeGrand also purchased Ensure Plus during the Class Period. Mot. Cert. at 13:7–15 (citing Declaration of Condalisa LeGrand ("LeGrand Decl.") ¶ 2 (ECF No. 136-4)). In purchasing the products, LeGrand was exposed to and relied on Abbott's label representations, such as that the products were "Doctor Recommended" and "nutrition shake[s]." SAC ¶ 108.

LeGrand first learned about Ensure in 1994, when she purchased Ensure Plus for her grandfather who was terminally ill. Declaration of Jack Fitzgerald in Support of LeGrand's Opposition, Ex. 1 ("LeGrand Dep. Tr."), at 18:16–25, 19:1–3 (ECF No. 177-1). LeGrand began purchasing Ensure for herself in the late 1990's. *Id.* at 21:10–22. LeGrand first purchased Ensure at Walgreens and usually purchased Ensure Plus. *Id.* at 11:24–25, 22:16–23:6, 94:20–23. LeGrand consistently purchased Ensure products for her own use between the late 1990's and early 2022. *Id.* at 23:8–15, 228:13–229:11. Overall, LeGrand made over 500 Ensure purchases since the late 1990's and more than 100 Ensure purchases since 2019. *Id.* at 29:15–18, 43:20–23, 48:11–49:16.

During the Class Period, LeGrand purchased the Challenged Products multiple times a month, once a month, or every few months between October 2018 and around April 2022,

depending on various factors. *Id.* at 29:12–30:22, 32:2–13; LeGrand Decl. ¶ 2. Most often, LeGrand purchased Ensure Plus, but Ensure Original represented one out of every twenty or thirty purchases. LeGrand Dep. Tr. at 56:7–16, 57:2–13. LeGrand also purchased Equate[3] when Ensure was not available. *Id.* at 96:3–21, 116:3–9. But LeGrand did not purchase Ensure Complete at all. Declaration of Tracie L. Bryant in Support of Abbott's Motion ("Bryant Decl."), Ex. A (LeGrand Deposition), at 12:24–13:1 (ECF No. 173-3). On average, LeGrand consumed Ensure three times a day during the times she used Ensure within the Class Period. LeGrand Dep. Tr. at 32:2–13, 33:9–34:11. During this time, LeGrand usually purchased the Challenged Products at Walgreens or Walmart stores in Richmond or Oakland, California, but also made purchases at other Walmart stores and possibly at CVS, Safeway, and Raley's. *Id.* at 49:19–50:3, 291:15–20; SAC ¶ 107; LeGrand Decl. ¶ 2; Bryant Decl., Ex. A, at 360:25–361:9, 406:5–12. LeGrand made both in-person purchases and online purchases for in-store pickup and typically purchased with cash. LeGrand Dep. Tr. at 50:23–51:12, 184:7–22, 186:20–187:7. She occasionally used a debit card to purchase the Challenged Products but did not use a credit card. *Id.* at 185:8–13, 186:20–187:25.

LeGrand purchased and consumed the Challenged Products because she needed calories and nutrition and because it was recommended for her grandfather as a healthy option. *Id.* at 42:20–43:3. LeGrand recalls seeing the statements, "#1 Doctor Recommended" and "Complete, Balanced Nutrition," on the Challenged products when she purchased them and thought Ensure "was always advertised as a meal replacement, something that is complete, balanced, and nutritious." *Id.* at 70:13–71:3, 98:9–99:16, 322:11–18.

In 2022, after speaking with counsel and doing her own research, LeGrand learned that the Challenged Products were harmful and not healthy because of their added sugars. *Id.* at 155:7–157:14, 162:19–25. LeGrand "felt defrauded" because she had "purchased Ensure thinking that it was a healthy and nutritious alternative for [her] meal replacement-wise, and that's not what [she] got." *Id.* at 142:13–25, 193:19–24. The last time that LeGrand purchased the Challenged

---

[3] Equate is "a brand manufactured and marketed by Walmart." Mot. at 7:14–18; *see also* LeGrand's Opposition to Motion to Dismiss ("Opp.") at 8:18–9:2 (stating that Equate is described as a "nutritional shake") (ECF No. 176).

3

Products for herself was around January or February 2022. *Id.* at 228:13–229:11; *see also* LeGrand Decl. ¶ 2 (averring that Ensure purchases for herself stopped April 2022). By 2022, LeGrand had stopped consuming all nutritional shakes. LeGrand Dep. Tr. at 35:12–22. Because LeGrand is "not a nutritionist or a medical provider," she does not understand the meaning of the levels of sugar in the Challenged Products, even though the amount of sugar is displayed on the nutrition facts panel on the Ensure bottle. *Id.* at 207:22–208:1, 212:2–19.

Between 2022 and 2024, LeGrand served as a conduit for her then husband—she used his money to buy Ensure and Equate products for him but did not consume the products herself during this time. *Id.* at 35:23–36:11, 46:21–47:4, 143:1–144:7, 281:20–23. In 2024, LeGrand stopped buying these products for her husband when they divorced. *Id.* at 37:8–13.

During discovery, LeGrand produced receipts from the Walmart in Solano County illustrating 39 online purchases made between January 2020 and October 2023. *Id.* at 291:15–292:6; *see* Abbott's Reply in Support of Motion to Dismiss ("Reply") at 3 n.1 (ECF No. 180) (citing Mot., Ex. 6 (Walmart Receipts Compilation) (ECF No. 172-7)). The receipts that were produced show that LeGrand purchased Equate but not Ensure products. Mot., Ex. 6; LeGrand Dep. Tr. at 276:2–9. During that time, LeGrand purchased the Challenged Products at other Walmart stores which involved in-person purchases and paper receipts. LeGrand Dep. Tr. at 291:15–25, 292:1–6. LeGrand does not keep paper receipts after a purchase clears her account, and she deletes emailed receipts once she verifies that her online order is completed. *Id.* at 292:1–6, 364:22–365:9. Although LeGrand searched, she did not locate any other paper or emailed receipts showing her purchases of the Challenged Products. Bryant Decl., Ex. A, at 188:17–190:11; 302:9–303:7.

C.   **Procedural Background[4]**

On October 6, 2022, LeGrand filed the initial complaint in this matter, seeking to bring a class action. Compl. ¶¶ 1 n.1, 124 (ECF No. 1). In her complaint, LeGrand's proposed class

---

[4] The Court discusses only the procedural history that is pertinent to Abbott's Motion to Dismiss. The Court's previous orders in this case contain a complete procedural history. *See, e.g.,* ECF No. 154.

4

included persons who purchased any of the following six Ensure brand nutrition drinks for personal or household use during the Class Period: Ensure Original Nutrition Shake; Ensure Complete Nutrition Shake; Ensure Compact Therapeutic Nutrition Shake; Ensure Clear Nutrition Drink; Ensure Original Nutrition Powder; and Ensure Enlive Advanced Nutrition Shake. *Id.* On March 10, 2023, LeGrand filed her first amended complaint. ECF No. 37.

LeGrand filed her operative Second Amended Complaint ("SAC") on December 11, 2024. ECF No. 116. In her SAC, LeGrand added the Ensure Plus Nutrition Shake to the list of challenged products and added two paragraphs pertaining to Ensure Plus. SAC ¶¶ 1 n.1, 16–17. In her SAC, LeGrand brought the following causes of action on behalf of the California subclass: violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 et seq.); violation of California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500 et seq.); violation of California's Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 et seq.); Breach of Express Warranties (Cal. Com. Code § 2313(1)); and Breach of Implied Warranty of Merchantability (Cal. Com. Code § 2314). *Id.* ¶¶ 132–79. LeGrand brought the following causes of action on behalf of all class members: Unjust Enrichment; Negligent Misrepresentation; and Intentional Misrepresentation. *Id.* ¶¶ 180–200. LeGrand seeks, *inter alia*, damages and injunctive relief. *Id.* ¶ 201.

On January 23, 2025, LeGrand filed a motion for class certification which is currently pending before the Court. ECF No. 137-3 ("Mot. Cert."). LeGrand moves to certify the following class:

> [A]ll persons who purchased Ensure Original Nutrition Shake, Ensure Plus Nutrition Shake, or Ensure Complete Nutrition Shake ('Ensure') in the State of California from October 6, 2018, to the time the Class is notified (the 'Class Period').

*Id.* at 1. On April 24, 2025, Abbott filed an opposition. ECF No. 162-15 ("Opp., Mot. Cert."). On June 20, 2025, LeGrand filed a reply. ECF No. 168.

On July 2, 2025, Abbott filed its instant Motion to Dismiss pursuant to Rule 12(h)(3) arguing that dismissal is warranted because LeGrand does not have Article III standing. ECF No. 172 ("Mot."). On July 16, 2025, LeGrand filed an Opposition. ECF No. 176 ("Opp."). On July

5

1  23, 2025, Abbott filed a Reply.  ECF No. 180 ("Reply").

## III.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (cleaned up); *accord Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. Pro. 12(h)(3).  As such, "the deadline for making a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is prolonged by Rule 12(h)(3)." *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (explaining that a party or a court may inquire into federal subject matter jurisdiction at any stage in the litigation).  Moreover, lack of Article III standing is properly raised in a Rule 12(b)(1) motion. *Iten v. Los Angeles*, 81 F.4th 979, 985 (9th Cir. 2023).  Thus, challenges to Article III standing are properly raised in a Rule 12(h)(3) motion. *Id.*; *see Caselman v. Pier 1 Imports (U.S.), Inc.*, No. 14-CV-02383-LHK, 2015 WL 106063, at *2 (N.D. Cal. Jan. 7, 2015).  The party asserting federal subject matter jurisdiction must establish standing by a preponderance of the evidence. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

A jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039.  In resolving a factual dispute as to the existence of subject matter

jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *Id.*; *see Gordon v. United States*, 739, F. App'x 408, 411 (9th Cir. 2018) (explaining that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction") (cleaned up). To overcome a factual challenge, a plaintiff must "support their jurisdictional allegations with competent proof." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (cleaned up). Further, dismissal of a complaint without leave to amend should only be granted where the jurisdictional defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## IV. DISCUSSION

Abbott argues that the Court should dismiss LeGrand's claims for lack of jurisdiction because (1) LeGrand cannot establish Article III standing; and (2) LeGrand cannot establish that a threat of future harm exists as required for her claim for injunctive relief. Mot. at 1:13–26. LeGrand contends that the uncontroverted evidence demonstrates that LeGrand purchased Ensure for decades and that she stopped purchasing Ensure for herself once she was aware of Abbott's false advertising of the product. Opp. at 1:2–4, 16:11–13.

Where there is a single named class representative, a court must determine that the representative has Article III standing prior to certifying the class. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("Standing is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue.") (cleaned up). "If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Id.* (cleaned up).

Here, Abbott launches a factual jurisdictional attack against the lone named class representative, LeGrand. Mot. at 5:1–14; *see generally* Mot. Cert. Thus, the Court must determine whether LeGrand has Article III standing prior to ruling on LeGrand's motion for class certification.

In sum, the Court concludes that federal subject matter jurisdiction exists because LeGrand

1  has established Article III standing, and that LeGrand has standing to pursue claims for injunctive
2  relief.   Accordingly, dismissal is not warranted.

3  **A.     Article III Standing**

4  Abbott argues that LeGrand lacks Article III standing "because she has no evidence that
5  she purchased Ensure products and therefore could not have been injured in the course of any such
6  alleged purchases." Mot. at 5:26–28.  LeGrand contends that the uncontested evidence shows that
7  LeGrand "is a *bona fide* purchaser with standing."  Opp. at 9:5–23.

8  "To establish Article III standing, a plaintiff must have (1) suffered an injury in fact, (2)
9  that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be
10  redressed by a favorable judicial decision." *NEI*, 926 F.3d at 532 (citing *Spokeo, Inc. v. Robins*,
11  578 U.S. 330, 338 (2016)) (internal quotation marks omitted).  The familiar injury-in-fact
12  requirement mandates that a plaintiff show they "suffered an invasion of a legally protected
13  interest that is concrete and particularized and actual or imminent, not conjectural or
14  hypothetical." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (cleaned up).

15  Here, the Court finds that LeGrand has established by a preponderance of the evidence that
16  she has Article III standing to pursue her claims.  Abbott argues that LeGrand cannot demonstrate
17  that she suffered an injury-in-fact because the preponderance of the evidence—including the
18  absence of documentary evidence proving Ensure purchases, LeGrand's receipts showing
19  purchases of Equate, and "LeGrand's ever-changing allegations regarding her supposed
20  purchases"—"shows LeGrand did not make any purchases of Ensure products at all." Mot. at
21  5:26–10:6.  LeGrand contends that her testimony and Declaration together provide "ample
22  evidence" of her Ensure purchases.  Opp. at 9:5–15.  The Court agrees—not only does Abbott
23  repeatedly mischaracterize LeGrand's testimony, but its arguments also fail to pump up its
24  deflated motion.

25  Most importantly, despite its repeated assertions, Abbott cannot establish that LeGrand did
26  not purchase Ensure during the relevant Class Period. *See, e.g.,* Reply at 4:6–7 ("No receipts
27  reflect Ensure purchases because she *never* actually purchased Ensure.") (emphasis added).
28  Abbott pronounces that LeGrand must have never purchased Ensure because the only receipts

8

1 produced by LeGrand show that she purchased Equate products and not Ensure. Mot. at 7:12–18.
2 But these receipts are from the time between January 2020 and October 2023. Mot., Ex. 6. In
3 comparison, the proposed Class Period is "from October 6, 2018, to the time the Class is notified."
4 Mot. Cert. at 1. Even if Abbott could show—and it has not—that LeGrand did not purchase
5 Ensure between 2020 and 2023, Abbott's Motion is devoid of evidence showing that LeGrand did
6 not purchase Ensure *at all* during the Class Period.

7  Abbott hangs its hat on the fact that LeGrand lacks documentary evidence proving the
8 existence of her Ensure purchases. But Abbott's argument rests on a false dichotomy: either (1)
9 LeGrand does not have receipts for Ensure purchases because she did not purchase Ensure; or (2)
10 LeGrand has receipts for Ensure purchases because she did purchase Ensure. *See* Mot. at 8:10–11
11 ("LeGrand's Walmart receipts *would* evidence any purchase of Ensure nutrition shakes had she
12 actually made any.") (emphasis in original). To the contrary, LeGrand's proffered evidence
13 supports a third option—LeGrand made the averred purchases despite her lack of receipts.
14 LeGrand consistently avers that she purchased the Challenged Products monthly during the Class
15 Period, purchased from several different stores, used varying methods of payment and purchase
16 options, and discarded receipts after purchases. *See, e.g.,* LeGrand Dep. Tr. at 23:8–15, 49:19–
17 51:12, 184:7–22, 185:8–13, 186:20–187:25, 228:13–229:11, 291:15–292:6, 364:22–365:9; SAC ¶
18 107; LeGrand Decl. ¶¶ 2–3. LeGrand further provides details about her purchase locations,
19 Ensure's labeling and advertising, and cost of Ensure products relevant to their packaging options.
20 *See* Opp. at 4–8. Abbott offers no evidence that contradicts these statements by LeGrand, nor
21 does it explain how a snapshot of receipts involving a single debit card from a single store (the
22 Solano County Walmart) captures LeGrand's entire purchase history. And Abbott wholly ignores
23 LeGrand's testimony that during the time covered by LeGrand's receipts, she also made in-store
24 purchases at the Richmond and Oakland Walmart stores and usually paid cash. LeGrand Dep. Tr.
25 at 186:20–187:7, 291:15–25; *see also* Opp. at 10:20–21 ("Abbott does not dispute Ensure was
26 available at the locations and times Ms. LeGrand testified she purchased it[.]"). By Abbott's own
27 proffered evidence, these cash purchases—made at any Walmart store—would not be in
28 LeGrand's online purchase history from Walmart. *See* Reply at 3:8–12 (citing Mot., Ex. 8

1   (Walmart Website) (ECF No. 172-9)).

2   Moreover, Abbott cites to no legal authority for its proposition that LeGrand's "own testimony claiming that she purchased Ensure products . . . is not enough to establish standing by a preponderance of evidence at this stage." Mot. at 6:5–10. Indeed, federal courts have held the opposite: receipts are not a prerequisite to a cognizable consumer class action. *See, e.g., In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 968 (C.D. Cal. 2015) (holding that plaintiffs' lack of receipts "does not deprive them of standing" and that "named plaintiffs' failure to produce evidence of the specific price that each paid does not compel the conclusion that they cannot show injury in fact and lack Article III standing"). In short, LeGrand's testimony and Declaration constitute admissible evidence that set forth specific facts that establish her standing. *See Gerlinger v. Amazon.com Inc., Borders Grp., Inc.*, 526 F.3d 1253, 1255–56 (9th Cir. 2008) (explaining that at the post-pleading stage, a plaintiff "must set forth by affidavit or other admissible evidence 'specific facts' as delineated in Federal Rule of Civil Procedure 56(e) as to the existence of such standing"); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions . . . affidavits or declarations . . . or other materials."). Therefore, because the preponderance of evidence shows that LeGrand purchased the Challenged Products during the Class Period, LeGrand has established an injury-in-fact sufficient for Article III standing. *Leite*, 749 F.3d at 1121.

Further, Abbott's cited cases are inapposite. Abbott claims the cases are on point because they conclude "documentary evidence affirmatively shows that a plaintiff failed to purchase the product at issue *at all*." Mot. at 9:14–16 (emphasis added). But here, Abbott does not point to affirmative evidence that LeGrand did not purchase the Challenged Products during the Class Period.[5] In *Bargetto v. Walgreen Co.*, the plaintiff testified that she purchased, or at least received

---

[5] In its Reply, Abbott asserts that LeGrand misinterprets its cited cases as mandating dismissal only where the *defendant* adduces evidence showing that the plaintiff did not purchase the challenged product, and not where evidence produced by the *plaintiff* shows a lack of purchase. Reply at 4:8–26. The Court does not understand this to be LeGrand's proposition. The Court considers all evidence presented by both parties concerning LeGrand's purchase history, whether produced by Abbott or LeGrand.

10

1    for free, defendant's plastic bag product on two specific dates, both from Walgreens; however,

2    defendant's transaction data "showing the units and retail sales by year" did not show that plaintiff

3    purchased its product. No. 22-CV-02639-TLT, 2024 WL 3493260, at *1–3 (N.D. Cal. June 14,

4    2024). The *Bargetto* court held that the plaintiff did not establish standing to pursue damages

5    because the preponderance of the evidence showed that the plaintiff "did not purchase any plastic

6    bags, but instead, received them for free." *Id.* at *7. In contrast to the plaintiff in *Bargetto*,

7    LeGrand testified that she *purchased* Ensure for decades, with more than 100 Ensure purchases

8    since 2019, that she purchased Ensure at multiple locations, and that she was certain that she

9    purchased the Challenged Products within the Class Period. LeGrand Dep. Tr. at 29:12–30:32,

10   32:2–13, 43:20–23, 48:11–50:3, 291:15–20. And unlike in *Bargetto*, Abbott does not proffer

11   evidence of transaction data showing that LeGrand did not purchase Ensure on any of the

12   occasions she avers to.

13        Similarly, in *Sud v. Costco Wholesale Corp.* and *Gonzalez v. Chattem, Inc.*, the defendants

14   produced affirmative evidence that the plaintiffs had not purchased defendants' products on *any*

15   *occasion*. *See Sud*, No. 15-CV-03783-JSW, 2016 WL 192569, at *3 (N.D. Cal. Jan. 15, 2016)

16   (submitting plaintiff's complete purchase history from Costco, the only store where plaintiff

17   allegedly purchased the defendant's product, showing that plaintiff did not purchase the product);

18   *Gonzalez*, No. 23-CV-00102-HSG, 2023 WL 8101923, at *4 (N.D. Cal. Nov. 21, 2023)

19   (submitting evidence that defendant's product was not available for purchase at the times the

20   plaintiff allegedly purchased the product). But here, that is simply not the case.

21        Finally, Abbott's *ad hominin* attack deserves short shrift. Abbott asserts that the Court has

22   "every reason to doubt the veracity of [LeGrand's] bare allegations." Mot. at 6:18–19. Using an

23   argument repeated from its Opposition to Class Certification, Abbott asserts that LeGrand has

24   "constantly var[ied]" her allegations regarding the type of Ensure products she purchased and the

25   locations where she made purchases.[6] Mot. at 6:18–7:11; *see also* Opp., Mot. Cert. at 24:27–

---

[6] To be sure, Abbott points to a single inconsistency regarding the locations where LeGrand purchased Ensure. Mot. at 6:22–27. LeGrand did indicate on one occasion that she is not certain she purchased the Challenged Products at Walgreens during the Class Period. *Compare* LeGrand Dep. Tr. at 55:1–8 (indicating since October 2018, she "definitely" made in-store purchases, but

11

25:16. However, Abbott mischaracterizes LeGrand's testimony. Contrary to Abbott's claim, LeGrand has not stated—in her Complaint or elsewhere—that she "*only* purchased Ensure Original." Mot. at 7:3–8 (emphasis added); *see* SAC ¶ 107. Nor has LeGrand stated that she "*only* purchased Ensure at Walgreens and Walmart." Mot. at 6:22–23 (emphasis added); *see* SAC ¶ 107. Abbott ignores the fact that LeGrand never stated in her Complaint or Declaration that she did not purchase other Ensure variations or that she did not shop at other stores for Ensure. *E.g.*, Opp. at 2 n.14. Given LeGrand's nearly thirty-year history with Ensure, it is unreasonable to expect her to recall every detail of every purchase made. LeGrand Dep. Tr. at 18:13–18. Therefore, Abbott's attack on LeGrand's credibility fails.

Accordingly, the Court **DENIES** Abbott's Motion to Dismiss for lack of Article III standing.

### B. Standing For Injunctive Relief

Abbott argues that even if Article III standing exists for some claims, LeGrand lacks standing to seek injunctive relief because "she cannot establish any threat of future harm to her or that she can be credibly deceived by Abbott." Mot. at 10:7–9. LeGrand contends that she did not buy Ensure for herself or consume Ensure after learning about the dangers of sugar present in Ensure. Opp. at 16:7–17.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "For injunctive relief, which is a prospective remedy, the threat of injury must be actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (cleaned up). In a consumer class action:

> a previously deceived consumer may have standing to seek an

---

not online purchases, at Walgreens); *id.* at 94:24–95:7 (indicating she made the majority of purchases in 2019 at Walgreens); SAC ¶ 107 (alleging purchases made at Walgreens within the Class Period); LeGrand Decl. ¶ 2 (averring to purchases at Walgreens within the Class Period); Opp. at 7:5–8 (citing LeGrand Dep. Tr. at 52:18–23) (indicating at deposition in 2025 that she had not shopped at Walgreens for some time) *with* Bryant Decl., Ex. A, at 358:15–17 (indicating since October 2018, she "did not believe" that she made purchases at Walgreens). But this one inconsistency is not, as Abbott asserts, tantamount to "ever-changing allegations." Mot. at 6:18–19.

12

> injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm.

*Id.* at 969 (cleaned up). For example, a consumer plaintiff can establish standing for injunctive relief by plausibly alleging "that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," or by plausibly alleging "that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70.

Here, the Court finds that LeGrand has standing to seek injunctive relief. Abbott argues that "LeGrand faces no threat of future harm because she concededly continued to buy Ensure despite knowing about the alleged dangers of sugar." Mot. at 10:19–21. Abbott asserts that these continued purchases demonstrate that LeGrand "will continue to buy the product whether or not the label ever changes."[7] *Id.* at 11:1–3. LeGrand responds that "[t]he uncontroverted testimony is that, as a favor, Ms. LeGrand picked up Ensure for her husband, using his money." Opp. at 16:11–12. The Court agrees. LeGrand testified that she stopped consuming Ensure in 2022 after learning that it was not healthy; after this time, she only bought Ensure products for her then husband who ultimately paid for the products. LeGrand Dep. Tr. at 35:23–36:11, 46:21–47:4, 143:1–144:7, 281:20–23. Abbott has not pointed to any evidence that LeGrand purchased the Challenged Products for herself or with her own money after learning that they were not healthy.[8]

---

[7] Abbott's arguments contradict those regarding LeGrand's Article III standing where Abbott argues that LeGrand did not purchase Ensure during the Class Period at all. Opp. at 10:22–27. In its Reply, Abbott responds that it "has advanced these arguments in the alternative." Reply at 8:10–22. Fair enough. Abbott then asserts that "[i]f the Court credits LeGrand's bald assertion that she purchased the product at all (as would be necessary to allow any part of this case to continue), the Court must also credit her allegations that she continued to do so after she claims to have learned about the dangers of Ensure." *Id.* Not so. As discussed, the Court disagrees with Abbott's interpretation of the evidence.

[8] In contrast to its Motion, where Abbott argued that LeGrand's shopping runs for her husband show that "she continued to buy Ensure products until at least July 2024," Abbott now argues in its Reply that "LeGrand admitted she personally purchased Ensure using joint household funds." *Compare* Mot. at 10:18–28 *with* Reply at 7:18–8:9. The only evidence Abbott surmises of LeGrand's purported use of her own funds for continued purchases—appearing for the first time in its Reply—is her testimony stating, "[o]ur household fund purchased them [Ensure products]. A

13

1    Nor has Abbott adduced evidence contradicting LeGrand's testimony that she stopped consuming

2    *all* nutritional shakes in 2022. *Id.* at 35:12–22. Therefore, because the preponderance of the

3    evidence shows that LeGrand cannot rely on Ensure labeling in the future despite wanting to

4    purchase Ensure, LeGrand has established a threat of future harm sufficient for standing to pursue

5    injunctive relief. *Davidson*, 889 F.3d at 969–70.

6    Abbott's cited cases do not compel a different result. This case is unlike *Cabrera v. Bayer*

7    *Healthcare LLC*, "in which the plaintiff's testimony suggested she did not 'place significant

8    weight' on the challenged representation." Opp. at 16:14–15; Mot. at 11:1–17 (citing *Cabrera*);

9    *Cabrera*, No. LA CV17-08525 JAK (JPRX), 2024 WL 1699357, at *6 (C.D. Cal. Feb. 23, 2024)

10   (observing "that Plaintiff has continued to purchase similar products that do not have all essential

11   vitamins and does not place significant weight on whether a product provides a 'complete' range

12   of vitamins"). In its Reply, Abbott faults LeGrand for not even attempting to distinguish several

13   of Abbott's injunctive relief cases. Reply at 9. But these cases were buried in a fourteen-line

14   string site affixed to a one-sentence argument concerning LeGrand's purported continuing

15   purchases. *See* Mot. at 11:1–17 ("By continuing to purchase both Ensure and Equate products

16   after supposedly learning of the dangers of added sugars, LeGrand has demonstrated that she will

17   continue to buy the product whether or not the label ever changes, eviscerating any claim to

18   injunctive relief."). As discussed, LeGrand did address Abbott's argument. *See* Opp. at 16:9–17.

19   Moreover, Abbott's argument that LeGrand cannot be deceived by Ensure labeling is

20   unpersuasive. Mot. at 10:9; Reply at 10:22–25. LeGrand avers that she does not understand the

21   information on Ensure's nutrition panel regarding added sugar or how to reconcile the nutrition

22   panel with statements on Ensure labeling. Opp. at 16:18–17:4 (citing LeGrand Dep. Tr. at

23   207:22–208:1, 212:2–19). Abbott counters that LeGrand's statements are "directly at odds with

---

combined household." Reply at 7:18–8:9 (citing Bryant Decl., Ex. A, at 45:6–9). But LeGrand testified that she and her husband maintained "separate accounts" and that "[h]e would give [her] cash every week" for the store, including to buy Ensure for him "[a]t his request." Opp. at 7:1–2 (citing LeGrand Dep. Tr. at 143:1–144:7). There is no indication that LeGrand considers the "household fund" as something different than her then husband's separate money, along with her separate money, as used for separate purchases carried out by LeGrand. *See, e.g.,* LeGrand Dep. Tr. at 143:14–20 ("He gives me his portion, and I take care of everything.").

her deposition testimony that, in her view as developed over the course of her participation in this litigation, whether a product is healthy depends upon whether its added sugar content exceeds 4 grams per serving." Reply at 10:10–14 (citing Declaration of Tracie L. Bryant in Support of Reply, Ex. 12 (LeGrand Deposition), at 242:16–244:2 (ECF No. 180-3)). But in the testimony cited to by Abbott, LeGrand appears to be comparing different amounts of sugar posed to her. *See* Bryant Decl., Ex. 12 at 242:4–24 (answering "yes" that four grams is an "excessive amount of added sugar," after being asked about three grams, and stating "[b]ecause we're going higher in the grams"). Indeed, the context of the discussion indicates that LeGrand is guessing as to what amount of added sugar would be healthy. *See, e.g., id.* at 242:4–10 ("I believe that the higher in grams you get, the more added sugar it is, which is unhealthy for you. So the lower would be the better."). This is consistent with her testimony that she "does not know the difference between" different amounts of added sugar and does not "know the meaning" of the levels of sugar in Ensure. Opp. at 16:21–25 (citing LeGrand Dep. Tr. at 207:22–208:1, 212:2–10). In short, Abbott has not shown that LeGrand would know from Ensure labeling whether the product's added sugar content was healthy. Therefore, because the preponderance of the evidence shows that LeGrand could reasonably be deceived in the future by Ensure labeling, she has established standing to pursue injunctive relief. *Davidson*, 889 F.3d at 970.

Accordingly, the Court **DENIES** Abbott's Motion to Dismiss LeGrand's claims for injunctive relief.

### V. CONCLUSION

For the reasons stated above, the Court **DENIES** Abbott's Motion to Dismiss pursuant to Rule 12(h)(3).

**IT IS SO ORDERED.**

Dated: July 28, 2025

THOMAS S. HIXSON
United States Magistrate Judge