UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CONDALISA LEGRAND,

Plaintiff,

v.

ABBOTT LABORATORIES,

Defendant.

Case No.  22-cv-05815-TSH

**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANT'S MOTION IN LIMINE (PUBLIC VERSION OF ECF NO. 185)**

Re: Dkt. Nos. 136, 160

## I.    INTRODUCTION

Condalisa LeGrand brings this putative class action against Abbott Laboratories ("Abbott"), alleging certain statements on the labels of Abbott's Ensure® nutrition drinks are false and misleading.  ECF No. 116 (Second Amended Complaint).  Pending before the Court are LeGrand's Motion for Class Certification (ECF No. 136) and Abbott's Motion in Limine (ECF No. 160).[1]  The Court finds this matter suitable for disposition without oral argument and **VACATES** the August 7, 2025, hearing.  *See* Civ. L.R. 7-1(b).  For the reasons set forth below, the Court **DENIES** LeGrand's Motion for Class Certification and **GRANTS** Abbott's Motion in Limine.[2]

_____

[1] For precision's sake, citations herein are to the unredacted versions of LeGrand's Motion for Class Certification (ECF No. 137-3), Abbott's Opposition to the Motion for Class Certification (ECF No. 162-15), and Abbott's Reply in Support of its Motion in Limine (ECF No. 170-4).  Most sections of these documents cited within this order can be found in redacted versions the parties filed on the public docket.  *See* ECF Nos. 136 (redacted Mot. Cert.), 159 (redacted Def.'s Opp.), 169 (redacted Def.'s Reply, Mot. Lim.).

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 9, 27.

## II.    BACKGROUND

### A.    Factual Background

Abbott is an Illinois corporation that manufactures, markets, and distributes several different "nutrition" shakes and drinks under its Ensure brand.  Second Amended Complaint ("SAC") ¶¶ 1, 9; Answer ¶¶ 1, 9 (ECF No. 156).  LeGrand is a California resident who purchased Ensure products on multiple occasions.  SAC ¶¶ 8, 107.

Among the Ensure products sold by Abbott, seven are at issue in this litigation:  Ensure Original Nutrition Shake; Ensure Complete Nutrition Shake; Ensure Compact Therapeutic Nutrition Shake; Ensure Clear Nutrition Drink; Ensure Original Nutrition Powder; Ensure Enlive Advanced Nutrition Shake; and Ensure Plus Nutrition Shake.  *Id.* at ¶ 1, n.1.  Abbott markets the products with health and wellness labeling such as "#1 Doctor Recommended Brand" and "Complete, Balanced Nutrition for everyday health."  *Id.* at ¶¶ 1, 12, 14.

In this putative class action, LeGrand alleges that certain statements on the labels of Ensure products are false and misleading.  *Id.* at ¶¶ 2, 46, 66, 77, 80, 104.

### B.    Substantive Claims of Proposed Class

LeGrand's Motion for Class Certification involves three Ensure products (the "Challenged Products"):  Ensure Original Nutrition Shake, Ensure Plus Nutrition Shake, and Ensure Complete Nutrition Shake.  Motion for Class Certification ("Mot. Cert."), at 1 (ECF No. 137-3).  Overall, LeGrand challenges several different labeling statements as false and misleading across the Challenged Products.  SAC ¶¶ 12–21, 103–06.  For Ensure Original Nutrition Shake, LeGrand challenges four statements.[3]  *Id.* at ¶ 14.  For Ensure Plus Nutrition Shake, LeGrand challenges three statements.[4]  *Id.* at ¶ 17.  And for Ensure Complete Nutrition Shake, LeGrand challenges

---

[3] The statements are:  "nutrition shake"; "Complete, Balanced Nutrition"; "Complete, Balanced Nutrition for everyday health"; and "#1 Doctor Recommended Brand."

[4] The statements are:  "nutrition shake"; "350 calories to help gain or maintain a healthy weight"; and "#1 Doctor Recommended Brand."  In her SAC, LeGrand also challenged the statement "Complete, Balanced Nutrition."  SAC ¶ 17.  However, the Court ruled that LeGrand cannot challenge this statement on the Ensure Plus label.  *See* ECF No. 154.

United States District Court
Northern District of California

eight statements.[5]  *Id.* at ¶ 19–20.

LeGrand is a California resident who purchased the Ensure Original Nutrition Shake on multiple occasions during the Class Period.  SAC ¶¶ 8, 107.  LeGrand also purchased Ensure Plus during the Class Period.  Mot. Cert. at 13:7–15 (citing Declaration of Condalisa LeGrand ("LeGrand Decl.") ¶ 2 (ECF No. 136-4)).  In purchasing the products, LeGrand was exposed to and relied on Abbott's label representations, such as that the products were "Doctor Recommended" and "nutrition shake[s]."  SAC ¶ 108.  The Challenged Products contain between 9 and 21 grams of added sugar per serving.  *Id.* ¶¶ 13, 16, 18.  There is scientific evidence demonstrating that consuming sugar-sweetened beverages harms, rather than supports, overall health.  *Id.* ¶¶ 2, 37–45, 47–65.  Because of this scientific evidence and the sugar content of the Challenged Products, LeGrand alleges Abbott's representations that the Challenged Products are balanced, nutritious, and healthy are false and misleading.  *Id.* at ¶¶ 2, 46, 66, 77, 80, 104.

## C.    Procedural Background

On October 6, 2022, LeGrand filed the initial complaint in this matter, along with a co-plaintiff, Larissa Bates, who is a resident of New York that purchased Ensure Complete Nutrition Shakes in New York.  Compl. ¶¶ 9, 108 (ECF No. 1).  LeGrand and Bates sought to bring a class action on behalf of themselves and other consumers who bought the products, defining members of a nationwide class, as well as California and New York subclasses, to include persons who purchased any of the following six Ensure brand nutrition drinks for personal or household use during the class period:  Ensure Original Nutrition Shake; Ensure Complete Nutrition Shake; Ensure Compact Therapeutic Nutrition Shake; Ensure Clear Nutrition Drink; Ensure Original Nutrition Powder; and Ensure Enlive Advanced Nutrition Shake.  *Id.* at ¶¶ 1 n.1, 124.  Plaintiffs brought the following causes of action:  violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 et seq.); violation of California's False Advertising

---

[5] The statements are:  "Complete"; "nutrition shake";  "Immune," "Digesti[ve]" and "Heart," "health"; "Complete, Balanced Nutrition—For. . . Heart . . . Immune"; "#1 Doctor Recommended Brand"; "Learn About Ensure Complete's Nutrition and Benefits"; "Chat Live with a Registered Dietitian About Nutrition"**;** and "with Nutrients for Immune System Support."

United States District Court
Northern District of California

Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500 et seq.); violation of California's Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 et seq.); Breach of Express Warranties (Cal. Com. Code § 2313(1)); Breach of Implied Warranty of Merchantability (Cal. Com. Code § 2314); violation of New York General Business Law § 349; violation of New York General Business Law § 350; Unjust Enrichment; Negligent Misrepresentation; and Intentional Misrepresentation. *Id.* at ¶¶ 133–214.

In December 2022, Abbott moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), arguing the Court lacked jurisdiction as to New York resident Bates's claims and that Plaintiffs' claims failed under several grounds, including statutory standing and preemption. ECF No. 18.  In February 2023, the Court granted in part and denied in part Abbott's motion.  ECF No. 33.  The Court dismissed Bates's claims for lack of personal jurisdiction.  *Id*. at 8.  The Court found LeGrand may have standing to assert claims for unnamed class members based on products she did not purchase "'so long as the products and alleged misrepresentations are substantially similar.'"  *Id.* at 9–10 (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868-69 (N.D. Cal. 2012)).  The Court granted Plaintiffs leave to amend.  *Id.* at 28.

On March 10, 2023, LeGrand (alone) filed her first amended complaint ("FAC"), seeking to represent a class of all persons in the United States, and a subclass of all persons in California, who purchased any of the six Ensure brand nutrition drinks named in her initial complaint during the class period.  FAC ¶ 122 (ECF No. 37).  In her FAC, LeGrand alleged unjust enrichment, negligent misrepresentation, and intentional misrepresentation on behalf of all class members.  *Id.* at ¶¶ 179–99.  On behalf of the California subclass, LeGrand alleged violations of the UCL, FAL, and CLRA; Breach of Express Warranties (Cal. Com. Code § 2313(1)); and Breach of Implied Warranty of Merchantability (Cal. Com. Code § 2314).  *Id.* ¶¶ at 131–78.

In April 2023, Abbott filed a partial motion to dismiss LeGrand's FAC.  ECF No. 40.  In May 2023, the Court granted Abbott's motion to dismiss the FAC to the extent the FAC challenges the statement "All-in-One blend to support your health."  ECF No. 46.  The Court denied leave to amend on the ground that it would be futile.  *Id.*

On December 3, 2024, the Court granted LeGrand leave to file a file a Second Amended

United States District Court
Northern District of California

Complaint ("SAC") against Abbott.  ECF No. 113.  LeGrand filed her SAC on December 11, 2024.  ECF No. 116.  In her SAC, LeGrand added the Ensure Plus Nutrition Shake to the list of challenged products and added two paragraphs pertaining to Ensure Plus.  SAC ¶¶ 1 n.1, 16–17.

On January 15, 2025, Abbott filed a partial motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), arguing LeGrand failed to state a claim with respect to two statements on the Ensure Plus label:  "Complete, Balanced Nutrition" and "350 calories to help gain or maintain a healthy weight."  ECF No. 131.  On March 14, 2025, the Court granted Abbott's motion to dismiss the SAC to the extent the SAC challenges the statement "Complete, Balanced Nutrition" on the Ensure Plus label.  ECF No. 154.  The Court denied leave to amend on the ground that it would be futile.  *Id.*  On March 28, 2025, Abbott filed an Answer to the SAC.  ECF No. 156.

On January 23, 2025, LeGrand filed her instant Motion for Class Certification.  ECF No. 137-3 ("Mot. Cert.").  LeGrand moves to certify the following class:

> [A]ll persons who purchased Ensure Original Nutrition Shake, Ensure Plus Nutrition Shake, or Ensure Complete Nutrition Shake ('Ensure') in the State of California from October 6, 2018, to the time the Class is notified (the 'Class Period').

*Id.* at 1.  On April 24, 2025, Abbott filed an Opposition to the Motion for Class Certification.  ECF No. 162-15 ("Def.'s Opp.").  On June 20, 2025, LeGrand filed a Reply.  ECF No. 168 ("Pl.'s Reply").

On April 24, 2025, Abbott filed its instant Motion in Limine to exclude the expert opinions of LeGrand's experts, Steven Gaskin and Colin Weir.  ECF No. 160 ("Def.'s Mot. Lim.").  In support of her Motion for Class Certification, LeGrand submitted declarations from Mr. Gaskin and Mr. Weir.  *See* Declaration of Steven P. Gaskin ("Gaskin Decl.") (ECF No. 136-6); Declaration of Colin B. Weir ("Weir Decl.") (ECF No. 137-21).  Mr. Gaskin and Mr. Weir propose a model for calculating price premium damages for the putative class.  Mot. Cert. at 23:22–24:27.  Abbott seeks to exclude portions of Mr. Gaskin's Declaration and Mr. Weir's Declaration that are related to price premium damages.  Def.'s Mot. Lim. at 3:10–13.  LeGrand filed an Opposition to Abbott's Motion in Limine on May 29, 2025.  ECF No. 166 ("Pl.'s Opp.,

1    Mot. Lim.").  Abbott filed a Reply on June 20, 2025.  ECF No. 170-4 ("Def.'s Reply, Mot. Lim.").

## III.    MOTION IN LIMINE

Abbott moves to exclude expert opinion from two of LeGrand's expert witnesses, Mr.

Gaskin and Mr. Weir, under Rule 702 and *Daubert*.  ECF No. 160.  Abbott argues that the experts'

opinions related to price premium damages are inadmissible because the proffered damages model

"would calculate classwide damages using irrelevant information in an unreliable way."  Def.'s

Mot. Lim. at 3:10–13.

### A.    Legal Standard

When evaluating class certification, a "court may consider whether the plaintiff's proof is,

or will likely lead to, admissible evidence."  *Sali v. Corona Regional Medical Ctr.*, 909 F.3d 996,

1006 (9th Cir. 2018).  Moreover, when an expert's testimony in support of class certification is

challenged, "a district court should evaluate admissibility under the standard set forth in *Daubert*."

*Id*.  However, "admissibility must not be dispositive.  Instead, an inquiry into the evidence's

ultimate admissibility should go to the weight that evidence is given at the class certification

stage." *Id*.

### B.    Federal Rule of Evidence 702 and *Daubert*

The Federal Rules of Evidence allow a qualified expert to testify "in the form of an opinion

or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge
> will help the trier of fact to understand the evidence or to determine a
> fact in issue; (b) the testimony is based on sufficient facts or data; (c)
> the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles
> and methods to the facts of the case.

Fed. R. Evid. 702.  Expert testimony is admissible under Rule 702 if the expert is qualified and if

the testimony is both relevant and reliable.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579,

597 (1993); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004).  The

proponent of expert testimony must demonstrate by a preponderance of evidence "that the

proffered testimony meets the admissibility requirements" of Rule 702.  Fed. R. Evid. 702, Adv.

Comm. Notes (2023).

United States District Court
Northern District of California

6

Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1018 (emphasis in original). Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702. Relevance, in turn "means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (quotation omitted). Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* at 564 (alteration added). In this role, the "judge is a gatekeeper, not a fact finder," and the "gate [should] not be closed to [a] relevant opinion offered with sufficient foundation by one qualified to give it." *Id.* at 568 (alteration added) (cleaned up).

The purpose of the Court's gatekeeping role is to ensure that expert testimony is "properly grounded, well-reasoned and not speculative." Fed. R. Evid. 702, Adv. Comm. Notes (2000) (quoting *Daubert*, 509 U.S. at 595). However, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Teradata Corp. v. SAP SE*, 124 F.4th 555, 566 (9th Cir. 2024) (quoting *Primiano*, 598 F.3d at 564). Thus, "[a]fter an expert establishes admissibility to the judge's satisfaction, challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014); *see also* Fed. R. Evid. 702, Adv. Comm. Notes (2000) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'") (quotation omitted).

**C.    Discussion**

Abbott moves to exclude opinions from Mr. Gaskin and Mr. Weir relating to price

premium damages and requests that the Court not consider these opinions in deciding the Motion for Class Certification.  Def.'s Mot. Lim. at 3:10–13.  Abbott argues that the experts' proposed damages model is inadmissible because (1) it is too underdeveloped for the Court to determine whether the model can reliably calculate classwide damages; (2) it uses methodology that "is irrelevant in light of Plaintiff's theory of deception"; and (3) it "cannot reliably calculate price premium damages."  *Id.* at 1:1–3:13.

Mr. Gaskin is an independent survey expert who holds a Master's Degree in Management from Massachusetts Institute of Technology.  Gaskin Decl. ¶ 1.  He has served as an expert witness in several legal disputes and has authored several conference presentations on conjoint analysis.  *Id.* at ¶ 2.  Mr. Weir is President at a research and consulting firm who holds a Master's Degree in Business Administration from Northeastern University.  Weir Decl. ¶ 1.  He has provided expert testimony in several legal disputes and has expertise in the design, execution, and determination of the economic suitability of conjoint surveys.  *Id.* at ¶¶ 1–2.  Abbott does not challenge the qualifications of either Mr. Gaskin or Mr. Weir.

Together, the two experts propose a conjoint analysis for measuring price premium damages in this case.  Pl.'s Opp., Mot. Lim. at 1:1–21.  LeGrand describes the proposed methodology as follows:

> First, Gaskin will conduct a conjoint survey to measure the portion of the overall price of Ensure attributable to certain representations and omissions on the Ensure label that convey the product is healthy and nutritious. Second, Weir will multiply the percentage consumers overpaid by the total sales to arrive at an aggregate overpayment for the Class.

*Id.* at 1:23–28.

Abbott argues that the price premium damages model proposed by Mr. Gaskin and Mr. Weir is underdeveloped because it relies on an "illustrative survey focused on only two of the Challenged Statements on only one of the challenged Ensure Products."  Def.'s Mot. Lim. at 6:20–22.  Abbott asserts that this proposed model is not practical because Mr. Gaskin would need "to run tens of thousands of surveys" to account for all Challenged Statements across all Challenged Products.  *Id.* at 6:20–7:9.

United States District Court
Northern District of California

At class certification, "[p]laintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1032 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025). However, "an underdeveloped expert model is far less likely to be able to establish that a particular element is susceptible to common proof." *Id.* at 1029 n.5. For an unexecuted model to establish predominance, it "must chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case." *Id.* at 1032.

Mr. Gaskin describes his proposed survey that focuses on two of the Challenged Statements as an "illustrative survey." Gaskin Decl. ¶ 11. Mr. Gaskin states:

> While, for illustration purposes, this Declaration describes a conjoint survey for Ensure Original Nutrition Shake, should the class be certified, I can and will conduct conjoint surveys at the Merits stage using a similar methodology, with any necessary adjustments to the attributes, for the additional Class Products at issue in this lawsuit.

*Id.* at 3 n.2. Abbott's damages expert, Mr. Kheyfets, opines that Mr. Gaskin's "'illustration' obscures the implication of his proposed method for assessing Plaintiff's actual claims." Expert Report of Michael Kheyfets ¶ 38 ("Kheyfets Rep.") (ECF No. 162-12). Mr. Kheyfets opines that under Mr. Gaskin's proposed survey methodology, Mr. Gaskin would need to run at least six surveys for Ensure Plus, at least twenty-four surveys for Ensure Original, and at least 40,320 surveys for Ensure Complete to account for all Challenged Statements. *Id.* at ¶¶ 13–14, 35–42. In Mr. Kheyfets's opinion, "[g]iven Mr.Gaskin's claim that he will survey only 300 people, it will be impossible for him to run tens of thousands of surveys." *Id.* at ¶ 14.

Here, the Court finds that LeGrand has not shown that the price premium damages model proposed by Mr. Gaskin and Mr. Weir is capable of reliably calculating classwide damages. The parties do not dispute whether a conjoint analysis could ever be used in a price premium damages model. The question is whether LeGrand's experts "will properly apply the method to the facts of the case." *Lytle*, 114 F.4th at 1033. As discussed above, LeGrand challenges several different labeling statements as false and misleading across the Challenged Products. SAC ¶¶ 12–21, 103–06; *see also* Def.'s Reply, Mot. Lim. at 3:8–9 ("Plaintiff challenges *eleven* different labeling statements across those three products") (emphasis in original). LeGrand asserts that the statement

"Complete, Balanced Nutrition" "has appeared prominently on every Ensure label throughout the Class Period." Mot. Cert. at 4:9–11. Thus, LeGrand posits that Mr. Gaskin does not plan "to test every possible variation of the Ensure labels" because he will measure the "price impact of the primary representations that are consistent across" the Challenged Products: "Complete, Balanced Nutrition® - for everyday health" and "#1 Doctor Recommended Brand." Pl.'s Opp., Mot. Lim. at 4:3–16 (citing Gaskin Decl. ¶ 11). But Mr. Gaskin's declaration contradicts this claim—he states that he will conduct additional surveys "for the additional Class Products at issue in this lawsuit." Gaskin Decl. at 3 n.2. Moreover, the Court previously ruled that LeGrand cannot challenge the statement "Complete, Balanced Nutrition" on the Ensure Plus label. ECF No. 154. LeGrand does not explain how her proposed damages model will measure damages for Ensure Plus using only the two Challenged Statements she relies on.

Importantly, LeGrand does not respond to Abbott's argument that thousands of surveys are necessary to address the myriad of Challenged Statements identified by LeGrand. Def.'s Mot. Lim. at 6:20–7:9 (citing Kheyfets Rep. ¶ 14). Nor has LeGrand indicated that she is narrowing her claims regarding the Challenged Statements. Because LeGrand's proposed damages model cannot practically account for all the Challenged Statements, she has failed to show "that the model will be able to reliably calculate damages in a manner common to the class at trial." *Lytle*, 114 F.4th at 1024.

Accordingly, the Court finds that the opinions from Mr. Gaskin and Mr. Weir relating to price premium damages are unreliable and declines to give them weight in its analysis of class certification. Given the Court's ruling, it need not address Abbott's remaining arguments.

**D.    Conclusion**

For the reasons stated above, the Court **GRANTS** Abbott's Motion in Limine.

## IV.    MOTION FOR CLASS CERTIFICATION

LeGrand argues that she meets the requirements of Rule 23 and seeks certification of a California Class. Mot. Cert. at 1:8–10, 2:8–11. Abbott contends that LeGrand does not meet the requirements of either Rule 23(a) or Rule 23(b)(3). Def.'s Opp. at 1:1–2:18.

In sum, the Court concludes that LeGrand has met the requirements of Rule 23(a) but has

United States District Court
Northern District of California

1  not met the requirements of Rule 23(b)(3).  Therefore, class certification is not warranted.

2  **A.    Legal Standard**

3       "The class action is an exception to the usual rule that litigation is conducted by and on

4  behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)

5  (cleaned up).  Plaintiffs must "affirmatively demonstrate" compliance with Federal Rule of Civil

6  Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Plaintiffs "bear[] the

7  burden of demonstrating that [they] have met each of the four requirements of Rule 23(a) and at

8  least one subsection of Rule 23(b)." *Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1186

9  (9th Cir. 2001) (alteration added).  Rule 23(a) has four explicit requirements: "(1) the class is so

10  numerous that joinder of all members is impracticable; (2) there are questions of law or fact

11  common to the class; (3) the claims or defenses of the representative parties are typical of the

12  claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

13  the interests of the class."  Fed. R. Civ. Pro. 23(a).

14       If all four Rule 23(a) prerequisites are satisfied, the Court must also find that plaintiffs

15  "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)" to order class

16  certification.  *Comcast*, 569 U.S. at 33.  Here, LeGrand seeks certification under Rule 23(b)(3).

17  Mot. Cert. at 2:13.  Rule 23(b)(3) permits certification if the Court finds "questions of law or fact

18  common to class members predominate over any questions affecting only individual members,

19  and that a class action is superior to other available methods for fairly and efficiently adjudicating

20  the controversy."  Fed. R. Civ. Pro. 23(b)(3).

21       "[A] court's class-certification analysis must be rigorous and may entail some overlap with

22  the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,

23  568 U.S. 455, 465–66 (2013) (cleaned up).  Although "Rule 23 grants courts no license to engage

24  in free-ranging merits inquiries at the certification stage, merits questions may be considered to the

25  extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class

26  certification are satisfied." *Id.* at 466 (cleaned up).  The Court has broad discretion to certify the

27  class if the Court finds Plaintiffs met their burden of proof. *Zinser*, 253 F.3d at 1186.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.      Rule 23(a)**

Le Grand argues that she meets all four requirements of Rule 23(a).  Mot. Cert. at 2:8–11.  *See Sali*, 909 F.3d at 1002 ("A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of Federal Rule of Civil Procedure 23(a):  numerosity, commonality, typicality, and adequacy of representation.").  Abbott contends that LeGrand fails to establish typicality or adequacy.  Def.'s Opp. at 2:17–18.

**1.      Numerosity**

LeGrand argues numerosity is satisfied for the proposed class.  Mot. Cert. at 14:4–8.  Abbott does not address LeGrand's numerosity argument in its Opposition.  *See* Def.'s Opp.

Under Rule 23(a)(1), Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it."  *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589–90 (N.D. Cal. 2015).

Here, the Court finds the numerosity requirement is satisfied.  LeGrand argues that the millions of units of Ensure products sold "suggest at least thousands of class members."  Mot. Cert. at 14:6–7 (citing Weir Decl. ¶ 73).  This is sufficient to establish numerosity.  *See Huynh v. Harasz*, No. 14-cv-02367-LHK, 2015 WL 7015567, *5 (N.D. Cal. Nov. 12, 2015) ("As other district courts have noted, the numerosity requirement is usually satisfied where the class comprises 40 or more members.") (cleaned up).

**2.      Commonality**

LeGrand argues that commonality is satisfied because common questions of law and fact originate from "whether the challenged labeling sent a material message that Ensure is healthy nutrition, and whether that message was deceptive."  Mot. Cert. at 14:9–15:15.  Abbott does not address LeGrand's commonality argument in its Opposition.  *See* Def.'s Opp.

"To show commonality, Plaintiffs must demonstrate that there are questions of fact and law that are common to the class."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)).  "What matters to class certification . . . is not the raising of

12

United States District Court
Northern District of California

common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (quoting *Wal–Mart Stores*, 564 U.S. at 350). To satisfy Rule 23(a)(2)'s commonality requirement, "even a single common question" is sufficient. *Wal-Mart Stores*, 564 U.S. at 359 (cleaned up). "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666–67 (9th Cir. 2022) (en banc) (emphasis in original).

Here, the Court finds the commonality requirement is satisfied. LeGrand argues that "the challenged packaging was consistent throughout the Class Period, exposing every purchaser to the challenged claims." Mot. Cert. at 15:10–15 (citing Declaration of Melanie R. Monroe ("Monroe Decl.") ¶¶ 17–22 (ECF No. 136-1); Monroe Decl., Exs. 16–18 (ECF No. 136-2)). Thus, LeGrand argues, common questions of law and fact originate from "whether the challenged health statements are unlawful, unfair, deceptive, or misleading when affixed to products containing high amounts of added sugar." *Id.* (citing *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1093–94 (N.D. Cal. 2018)). This is sufficient to establish commonality. *See Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, *5 (N.D. Cal. Sept. 25, 2018) ("Numerous courts have recognized that a claim concerning alleged misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy the commonality requirement because it raises the common question of whether the packaging would mislead a reasonable consumer.").

### 3.    Typicality

LeGrand argues that typicality is satisfied because each putative class member, including herself, "challenges the same Abbott conduct, under the same theory, and seeks relief from the same injury." Mot. Cert. at 16:16–18. Abbott contends that LeGrand fails to establish typicality because she "is subject to unique defenses that threaten to become a litigation focus," and she "is atypical of the proposed class on several other fronts." Def.'s Opp. at 22:10–24:19. Specifically, Abbott contends that LeGrand is not typical of the proposed class because (1) she continued to

purchase the Challenged Products even after learning of the dangers of added sugar; (2) her initial decision to purchase the Challenged Products was not based on the Challenged Statements; and (3) she is not a typical Ensure consumer or user. *Id.*

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality serves to ensure that the interest of the named representative aligns with the interests of the class." *Ruiz Torres*, 835 F.3d at 1141 (cleaned up). "Under the Rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* (cleaned up). "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (cleaned up).

Here, the Court finds the typicality requirement is satisfied. First, LeGrand testified that she stopped consuming Ensure in 2022 after learning that it was not healthy; after this time, she only purchased Ensure products for her then husband who ultimately paid for the products. Pl.'s Reply at 12:25–13:9 (citing Deposition of Condalisa LeGrand ("LeGrand Dep. Tr."), at 44–48, 114–15, 127 (ECF No. 161-3)). Abbott has not pointed to any evidence that LeGrand purchased the Challenged Products for herself or with her own money after learning that they were not healthy. Second, LeGrand's initial reason for purchasing the Challenged Products is immaterial because she testified that she relied on the Challenged Statements after her initial purchase. LeGrand Dep. Tr. at 63, 423; *see Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2010 WL 809579, *6 (N.D. Cal. Mar. 5, 2010) ("There is no requirement under the UCL that Plaintiff rely on the misrepresentation on multiple occasions, or that there is a pattern of reliance. Plaintiff need only prove that he relied on the misrepresentation once."). Finally, that LeGrand chose to use the Challenged Products without a doctor's recommendation and consumed them frequently does not render her claim atypical. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.") (cleaned up). Overall, LeGrand's claims

United States District Court
Northern District of California

1    are consistent with those of proposed class members because they are premised on Abbott's

2    purported misleading statements that the Challenged Products are healthy despite their high added

3    sugar content.  Mot. Cert. at 15:27–16:7.  Therefore, LeGrand has established that her claims are

4    typical.

5        **4.    Adequacy**

6        LeGrand argues that she is an adequate Class Representative and has retained adequate

7    proposed Class Counsel.  Mot. Cert. at 16:19–17:4.  Abbott contends that LeGrand fails to

8    establish adequacy because her "shifting, contradictory sworn discovery responses undermine her

9    credibility."  Def.'s Opp. at 24:20–25:23.  Specifically, Abbott contends that because LeGrand has

10   changed her discovery responses to "add or subtract Ensure products to match" her current theory

11   of liability, she is an inadequate Class Representative.  *Id.* at 24:25–27.  LeGrand responds that

12   Abbott misrepresents the record and that her "statements regarding Ensure [products] are

13   consistent."  Pl.'s Reply at 14:9–15:16 (alteration added).

14       Rule 23(a)(4) requires the Court to determine if "the representative parties will fairly and

15   adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To determine whether

16   named plaintiffs will adequately represent a class, courts must resolve two questions:  (1) do the

17   named plaintiffs and their counsel have any conflicts of interest with other class members and (2)

18   will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

19   *Ellis*, 657 F.3d at 985 (cleaned up).  Further, courts in this district have found that "the honesty

20   and credibility of a class representative is a relevant consideration when performing the adequacy

21   inquiry."  *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 570 (N.D. Cal. 2016)

22   (cleaned up).  However, "lack of credibility renders a class representative inadequate only where

23   the representative's credibility is questioned on issues directly relevant to the litigation or there are

24   confirmed examples of dishonesty, such as a criminal conviction for fraud."  *Id.* (cleaned up).

25       Here, the Court finds the adequacy requirement is satisfied.  First, Abbott's alleged

26   inconsistencies between LeGrand's filings, discovery responses, and deposition testimony are

27   largely unfounded and exaggerated.  Contrary to Abbott's claim, LeGrand has not stated—in her

28   Complaint or elsewhere—that she "*only* purchased Ensure Original."  Def.'s Opp. at 24:27–25:16

United States District Court
Northern District of California

(citing Compl. ¶ 106) (emphasis added).  And although LeGrand's memory regarding whether she purchased Ensure Plus or Ensure Complete is not perfect, her discrepancies are not "so sharp as to jeopardize the interest of absent class members*." Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (citation omitted); *compare* LeGrand Decl. ¶ 2 *with* Def.'s Opp., Ex. 27 (LeGrand Interrogatory Responses), at 4–5 (ECF No. 159-28).  This is especially true given the Court's finding that LeGrand may have standing to assert claims for unnamed class members based on products she did not purchase "so long as the products and alleged misrepresentations are substantially similar." ECF No. 33 at 10.  Second, LeGrand's lack of receipts has no bearing on her ability to represent the proposed class.  *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 540 (N.D. Cal. 2012) ("the fact that named plaintiffs must rely on their own testimony as proof of their purchases will not put them in conflict with absent class members, many of whom will also lack receipts for such minor purchases, and may have to proceed on the same evidentiary proffer").  Moreover, Abbott has not challenged that LeGrand "has retained adequate proposed Class Counsel, including experienced trial counsel." Mot. Cert. at 17:1–4 (citing Monroe Decl., Ex. 33 (firm resume); Declaration of Timothy G. Blood, Ex. A (firm resume) (ECF No. 136-3)). Accordingly, LeGrand has established that she is an adequate Class Representative who has retained adequate proposed Class Counsel.

**C.    Rule 23(b)(3)**

LeGrand argues that she meets the requirements of Rule 23(b)(3).  Mot. Cert. at 2:13. Abbott contends that LeGrand fails to establish both predominance and superiority.  Def.'s Opp. at 1:20–2:18.

Rule 23(b)(3) requires:  (1) the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. Pro. 23(b)(3).

**1.    Predominance**

LeGrand argues that common questions relating to "whether Ensure, an oral nutritional supplement, provides the health benefits advertised," predominate this litigation.  Mot. Cert. at

United States District Court
Northern District of California

1:19–24.  LeGrand further argues that she has established common proof for her consumer fraud, breach of warranty, and unjust enrichment claims and has provided the Court with a sufficient damages model.  *Id.* at 17:5–24:27.  Abbott contends that LeGrand fails to establish predominance as to damages, deception, uniform exposure, reliance, and unjust enrichment.  Def.'s Opp. at 1:2–2:18.

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast*, 569 U.S. at 34.  Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459 (emphasis in original).  Plaintiffs "must marshal facts showing, by a preponderance of the evidence, that class issues predominate."  *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024).

LeGrand argues that two damages models are sufficient under her liability theory that "Abbott's advertising message is deceptive and consumers did not receive what was advertised."  Mot. Cert. at 22:9–15.  Abbott contends that LeGrand fails to establish predominance as to damages because both of her proffered classwide damages models fail under *Comcast*.  Def.'s Opp. at 2:11–13 (citing *Comcast*, 569 U.S. at 27).

A plaintiff must show that "damages are capable of measurement on a classwide basis"; predominance is absent where "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Comcast*, 569 U.S. at 34.  A plaintiff's proposed damages model "must measure only those damages attributable to" their liability theory.  *Id.* at 35.  Therefore, "[t]he first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." *Id.* at 38 (cleaned up).

For reasons discussed below, the Court finds that LeGrand has not established predominance as to damages.

### a.  Full-Refund Damages Model

LeGrand first argues that a full-refund model is capable of measuring classwide damages

because the Challenged Products have no value to putative class members—due to the misleading claim that the Challenged Products provide healthy nutrition—and she has proof of the cost of the Challenged Products. Mot. Cert. at 23:3–21. Abbott contends that LeGrand cannot establish predominance with her full-refund damages model because she cannot show that the Challenged Products "had *no* value" to proposed class members. Def.'s Opp. at 18:8–20:2 (emphasis in original).

Here, the Court finds that LeGrand's proposed full-refund damages model is not capable of measuring classwide damages. The UCL, FAL, and CLRA "authorize a trial court to grant restitution to private litigants asserting claims under those statutes." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006). Under California law, "[a] full refund *may* be available in a UCL case when the plaintiffs prove the product had *no* value to them." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015) (emphasis in original); *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) (explaining that restitution is equal to the difference between what the plaintiff paid and the value the plaintiff received in return).

LeGrand's liability theory is that the Challenged Products did not provide *healthy nutrition*—she does not allege that the Products provided *no nutrition* or *no benefits* for that matter. Mot. Cert. at 22:9–15. It is undisputed that the Challenged Products contain nutrition in the form of protein, calories, and vitamins. *E.g.*, Def.'s Opp., Ex. 4 (Ensure Labels) (ECF No. 159-5). As such, the Challenged Products were not worthless to putative class members. *See Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (holding that under rules of restitution, "a plaintiff cannot be awarded a full refund unless the product she purchased was worthless"); *see also Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2018 WL 1009257, at *9 (N.D. Cal. Feb. 13, 2018) (rejecting full-refund damages model because baby food provided "benefits in the form of calories, nutrition, vitamins, and minerals"). Moreover, LeGrand received at least some benefit from the Challenged Products because she enjoyed the taste of the Products. LeGrand Dep. Tr. at 44:7–19; *see Khasin v. R. C. Bigelow, Inc.*, No. 12-CV-02204-WHO, 2016 WL 1213767, at *3 (N.D. Cal. Mar. 29, 2016) (finding that enjoyment of a product's taste is a benefit to consumers).

1    LeGrand's reliance on *Mullins v. Premier Nutrition Corp.* is misplaced.  Mot. Cert. at

2    23:3–14 (citing *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867 (N.D. Cal. 2016)).  In

3    *Mullins*, the plaintiff alleged that "Joint Juice provides no joint health benefits and the only reason

4    to purchase *Joint* Juice is to obtain such benefits."  *Mullins*, 178 F. Supp. 3d at 898 (emphasis in

5    original).  In contrast to *Mullins*, LeGrand does "not claim that the product [she] received was, in

6    fact, valueless."  *Id.* at 899 (alteration added).  And unlike in *Mullins*, LeGrand had not produced

7    evidence supporting the conclusion that not a single consumer purchased the Challenged Products

8    for hydration, taste, nutrients, or energy.  *Id.* at 898–99.  Accordingly, LeGrand cannot establish

9    predominance with a full-refund damages model because she has not shown that she can present

10   evidence that the Challenged Products were devoid of value to putative class members.

### b.        Price Premium Damages Model

12   LeGrand next argues that a price premium model is capable of measuring classwide

13   damages because "the price premia associated with the presence versus the absence" of the

14   misleading claims on the Challenged Products' packaging "is a proper measure of restitution and

15   damages."  Mot. Cert. at 23:22–24:27.  Abbott contends that LeGrand cannot establish

16   predominance with her price premium damages model because (1) LeGrand's only evidence

17   supporting this theory should be excluded; (2) the model "assumes a binary choice that Ensure is

18   either heathy or unhealthy for each consumer in the exact same way"; and (3) the model "does not

19   account for the price effect of non-challenged labeling statements or of Abbott's non-label Ensure

20   advertising."  Def.'s Opp. at 20:3–21:10.

21   Here, the Court finds that LeGrand's proposed price premium damages model is not

22   capable of measuring classwide damages.  As discussed above, the Court declines to give weight

23   to LeGrand's proffered expert testimony regarding their opinions on a proposed price premium

24   model.  Accordingly, LeGrand has not proffered any evidence that a price premium model

25   establishes predominance as to damages.  Given the Court's ruling, it need not address Abbott's

26   remaining arguments.

### 2.        Superiority

28   LeGrand argues that superiority is satisfied for the proposed Class.  Mot. Cert. at 25:1–19.

United States District Court
Northern District of California

1    Abbott contends that LeGrand fails to establish superiority because LeGrand's proposed class

2    definition focuses on individual issues and will result in an unmanageable class action. Def.'s

3    Opp. at 21:23–22:9.

4         Federal Rule of Civil Procedure 23(b)(3) requires Plaintiffs demonstrate "a class action is

5    superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

6    R. Civ. Pro. 23(b)(3). In making this decision, the Rule instructs courts to consider:

7           (A) the class members' interests in individually controlling the
            prosecution or defense of separate actions;

8
            (B) the extent and nature of any litigation concerning the controversy
9           already begun by or against class members;

10          (C) the desirability or undesirability of concentrating the litigation of
            the claims in the particular forum; and

11
            (D) the likely difficulties in managing a class action.
12

13   *Id.* "This list is not exhaustive and other factors may be considered." *Wolin v. Jaguar Land Rover*

14   *N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "The purpose of the superiority requirement is

15   to assure that the class action is the most efficient and effective means of resolving the

16   controversy." *Id.* (citation omitted).

17        LeGrand argues that "given the modest cost of Ensure," putative class members would

18   likely have no interest in litigating individual claims, "[t]here is no other litigation pending

19   concerning these claims," California is a desirable forum because LeGrand seeks certification of a

20   California class, and because the case "involves straightforward claims . . . [m]anageability

21   concerns will be minimal." Mot. Cert. at 25:1–19. Abbott attacks prong four of the superiority

22   analysis, contending that "there is no administratively feasible way to apply LeGrand's proposed

23   exclusion of individuals with potential personal injury claims without conducting a class-member-

24   by-class-member assessment." Def.'s Opp. at 21:23–22:9.

25        Here, the Court finds the superiority requirement is satisfied. LeGrand agrees to a "Class

26   definition excluding 'claims for personal injury.'" Pl.'s Reply at 12:12–21. This assuages

27   Abbott's concern. Moreover, the four superiority factors in Rule 23(b)(3) all weigh in favor of a

28   class action. Therefore, LeGrand has established superiority.

United States District Court
Northern District of California

**D.    Conclusion**

For the reasons stated above, the Court **DENIES** LeGrand's Motion for Class Certification.

**V.    CONCLUSION**

For the foregoing reasons, the Court **DENIES** LeGrand's Motion for Class Certification and **GRANTS** Abbott's Motion in Limine.

**IT IS SO ORDERED.**

Dated: August 4, 2025

THOMAS S. HIXSON
United States Magistrate Judge