United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CONDALISA LEGRAND,
Plaintiff,

v.

ABBOTT LABORATORIES,
Defendant.

Case No. 22-cv-05815-TSH

**ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANT'S MOTION IN LIMINE**

**PUBLIC VERSION OF ECF NO. 236**

Re: Dkt. Nos. 204, 212

## I. INTRODUCTION

Plaintiff Condalisa LeGrand brings this putative class action against Defendant Abbott Laboratories ("Abbott"), alleging certain statements on the labels of Abbott's Ensure® nutrition drinks are false and misleading. ECF No. 116 (Second Amended Complaint). Pending before the Court are LeGrand's Renewed Motion for Class Certification (ECF No. 204) and Abbott's Motion *in Limine* (ECF No. 212).[1] The Court heard oral argument on April 2, 2026. For the reasons stated below, the Court **DENIES WITH PREJUDICE** LeGrand's Renewed Motion for Class Certification and **GRANTS** Abbott's Motion *in Limine*.[2]

[1] For precision's sake, citations herein are to the unredacted versions of LeGrand's Renewed Motion for Class Certification (ECF No. 205-3) and Abbott's Opposition to the Renewed Motion for Class Certification (ECF No. 210-4). Most sections of these documents cited within this order can be found in redacted versions the parties filed on the public docket. *See* ECF Nos. 204 (redacted Renew. Mot. Cert.), 211 (redacted Def.'s Opp.).

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 9, 27.

## II. BACKGROUND

The Court has previously summarized this case's background but recounts it again here for clarity. *See* Order Denying Class Certification ("Class Cert. Order") (ECF No. 185).[3] The Court incorporates by reference its order denying class certification and LeGrand's original motion for class certification ("Mot. Cert.") (ECF No. 137-3).

### A. Factual Background

Abbott is an Illinois corporation that manufactures, markets, and distributes several different "nutrition" shakes and drinks under its Ensure brand. Second Amended Complaint ("SAC") ¶¶ 1, 9; Answer ¶¶ 1, 9 (ECF No. 156). LeGrand is a California resident who purchased Ensure products on multiple occasions. SAC ¶¶ 8, 107.

Among the Ensure products sold by Abbott, seven are at issue in this litigation: Ensure Original Nutrition Shake; Ensure Complete Nutrition Shake; Ensure Compact Therapeutic Nutrition Shake; Ensure Clear Nutrition Drink; Ensure Original Nutrition Powder; Ensure Enlive Advanced Nutrition Shake; and Ensure Plus Nutrition Shake. *Id.* ¶ 1, n.1. Abbott markets the products with health and wellness labeling such as "#1 Doctor Recommended Brand" and "Complete, Balanced Nutrition for everyday health." *Id.* ¶¶ 1, 12, 14.

In this putative class action, LeGrand alleges that certain statements on the labels of Ensure products are false and misleading because they "are all designed and intended to convince consumers Ensure Nutrition Drinks are healthy food choices." *Id.* ¶¶ 1, 2, 46, 66, 77, 80, 104.

### B. Substantive Claims Of Proposed Class

LeGrand's Renewed Motion for Class Certification involves three Ensure products (the "Challenged Products"): Ensure Original Nutrition Shake, Ensure Plus Nutrition Shake, and Ensure Complete Nutrition Shake. Renewed Motion for Class Certification ("Renew. Mot. Cert.") at 2:22–25 (ECF No. 205-3). Overall, LeGrand challenges several different labeling statements as false and misleading across the Challenged Products because they all falsely convey that Ensure is a healthy food choice (collectively, the "Challenged Statements"). SAC ¶¶ 1–2, 12–21, 103–06.

[3] A public version of the Court's order denying class certification was filed at ECF No. 187.

For Ensure Original Nutrition Shake, LeGrand challenges four statements, "both individually and in combination."[4] *Id.* ¶ 14. For Ensure Plus Nutrition Shake, LeGrand challenges three statements, "both individually and in combination."[5] *Id.* ¶ 17. And for Ensure Complete Nutrition Shake, LeGrand challenges eight statements, "both individually and in combination."[6] *Id.* ¶ 19–20.

LeGrand is a California resident who purchased the Ensure Original Nutrition Shake on multiple occasions during the Class Period. *Id.* ¶¶ 8, 107. LeGrand also purchased Ensure Plus during the Class Period. Mot. Cert. at 13:7–15 (citing Declaration of Condalisa LeGrand ¶ 2 (ECF No. 136-4)). In purchasing the products, LeGrand was exposed to and relied on Abbott's label representations, such as that the products were "Doctor Recommended" and "nutrition shake[s]." SAC ¶ 108. The Challenged Products contain between 9 and 21 grams of added sugar per serving. *Id.* ¶¶ 13, 16, 18. There is scientific evidence demonstrating that consuming sugar-sweetened beverages harms, rather than supports, overall health. *Id.* ¶¶ 2, 37–45, 47–65. Because of this scientific evidence and the sugar content of the Challenged Products, LeGrand alleges Abbott's representations that the Challenged Products are balanced, nutritious, and healthy are false and misleading. *Id.* ¶¶ 2, 46, 66, 77, 80, 104. Based on the "label claims, and the context of the labels as a whole," LeGrand "reasonably believed that consuming Ensure Original Nutrition Shakes would provide her with complete, balanced nutrition and would be beneficial rather than detrimental to her health when consumed regularly." *Id.* ¶ 108.

---

[4] The statements are: "nutrition shake"; "Complete, Balanced Nutrition"; "Complete, Balanced Nutrition for everyday health"; and "#1 Doctor Recommended Brand." SAC ¶ 14.

[5] The statements are: "nutrition shake"; "350 calories to help gain or maintain a healthy weight"; and "#1 Doctor Recommended Brand." SAC ¶ 17. In her SAC, LeGrand also challenged the statement "Complete, Balanced Nutrition." *Id.* However, the Court ruled that LeGrand cannot challenge this statement on the Ensure Plus label. *See* ECF No. 154.

[6] The statements are: "Complete"; "nutrition shake"; "Immune," "Digesti[ve]" and "Heart," "health"; "Complete, Balanced Nutrition—For—. . . Heart . . . Immune"; "#1 Doctor Recommended Brand"; "Learn About Ensure Complete's Nutrition and Benefits"; "Chat Live with a Registered Dietitian About Nutrition"**;** and "with Nutrients for Immune System Support." SAC ¶ 19.



United States District Court
Northern District of California

**C. Procedural Background**

On October 6, 2022, LeGrand filed the initial complaint in this matter, along with a co-plaintiff, Larissa Bates, who is a resident of New York that purchased Ensure Complete Nutrition Shakes in New York. Compl. ¶¶ 9, 108 (ECF No. 1). LeGrand and Bates sought to bring a class action on behalf of themselves and other consumers who bought the products, defining members of a nationwide class, as well as California and New York subclasses, to include persons who purchased any of the following six Ensure brand nutrition drinks for personal or household use during the class period: Ensure Original Nutrition Shake; Ensure Complete Nutrition Shake; Ensure Compact Therapeutic Nutrition Shake; Ensure Clear Nutrition Drink; Ensure Original Nutrition Powder; and Ensure Enlive Advanced Nutrition Shake. *Id.* ¶¶ 1 n.1, 124. Plaintiffs brought the following causes of action: violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 et seq.); violation of California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500 et seq.); violation of California's Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 et seq.); Breach of Express Warranties (Cal. Com. Code § 2313(1)); Breach of Implied Warranty of Merchantability (Cal. Com. Code § 2314); violation of New York General Business Law § 349; violation of New York General Business Law § 350; Unjust Enrichment; Negligent Misrepresentation; and Intentional Misrepresentation. *Id.* ¶¶ 133–214.

In December 2022, Abbott moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), arguing the Court lacked jurisdiction as to New York resident Bates's claims and that Plaintiffs' claims failed under several grounds, including statutory standing and preemption. ECF No. 18. In February 2023, the Court granted in part and denied in part Abbott's motion. ECF No. 33. The Court dismissed Bates's claims for lack of personal jurisdiction. *Id*. at 8. The Court found LeGrand may have standing to assert claims for unnamed class members based on products she did not purchase "'so long as the products and alleged misrepresentations are substantially similar.'" *Id.* at 9–10 (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868–69 (N.D. Cal. 2012)). The Court granted Plaintiffs leave to amend. *Id.* at 28.

On March 10, 2023, LeGrand (alone) filed her first amended complaint ("FAC"), seeking

to represent a class of all persons in the United States, and a subclass of all persons in California, who purchased any of the six Ensure brand nutrition drinks named in her initial complaint during the class period. FAC ¶ 122 (ECF No. 37). In her FAC, LeGrand alleged unjust enrichment, negligent misrepresentation, and intentional misrepresentation on behalf of all class members. *Id.* ¶¶ 179–99. On behalf of the California subclass, LeGrand alleged violations of the UCL, FAL, and CLRA; Breach of Express Warranties (Cal. Com. Code § 2313(1)); and Breach of Implied Warranty of Merchantability (Cal. Com. Code § 2314). *Id.* ¶¶ 131–78.

In April 2023, Abbott filed a partial motion to dismiss LeGrand's FAC. ECF No. 40. In May 2023, the Court granted Abbott's motion to dismiss the FAC to the extent the FAC challenges the statement "All-in-One blend to support your health." ECF No. 46. The Court denied leave to amend on the ground that it would be futile. *Id.*

On December 3, 2024, the Court granted LeGrand leave to file a file a Second Amended Complaint ("SAC") against Abbott. ECF No. 113. LeGrand filed her SAC on December 11, 2024. ECF No. 116. In her SAC, LeGrand added the Ensure Plus Nutrition Shake to the list of challenged products and added two paragraphs pertaining to Ensure Plus. SAC ¶¶ 1 n.1, 16–17.

On January 15, 2025, Abbott filed a partial motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), arguing LeGrand failed to state a claim with respect to two statements on the Ensure Plus label: "Complete, Balanced Nutrition" and "350 calories to help gain or maintain a healthy weight." ECF No. 131. On March 14, 2025, the Court granted Abbott's motion to dismiss the SAC to the extent the SAC challenges the statement "Complete, Balanced Nutrition" on the Ensure Plus label. ECF No. 154. The Court denied leave to amend on the ground that it would be futile. *Id.* On March 28, 2025, Abbott filed an Answer to the SAC. ECF No. 156.

On January 23, 2025, LeGrand filed a motion for class certification. ECF No. 137-3 ("Mot. Cert."). LeGrand moved to certify the following class:

> [A]ll persons who purchased Ensure Original Nutrition Shake, Ensure Plus Nutrition Shake, or Ensure Complete Nutrition Shake ('Ensure') in the State of California from October 6, 2018, to the time the Class is notified (the 'Class Period').

*Id.* at 1. On August 4, 2025, the Court denied LeGrand's motion for class certification. ECF No. 185 ("Class Cert. Order").

On April 24, 2025, Abbott filed a motion *in limine* to exclude the expert opinions of LeGrand's experts, Steven Gaskin and Colin Weir. ECF No. 160. In support of her motion for class certification, LeGrand submitted declarations from Gaskin and Weir. *See* Declaration of Steven P. Gaskin ("Gaskin Decl.") (ECF No. 136-6); Declaration of Colin B. Weir ("Weir Decl.") (ECF No. 137-21). Gaskin and Weir propose a model for calculating price premium damages for the putative class. Mot. Cert. at 23:22–24:27. Abbott requested that the Court exclude portions of Gaskin's Declaration and Weir's Declaration that are related to price premium damages. ECF No. 160 at 3:10–13. On August 4, 2025, the Court granted Abbott's motion *in limine* and declined to give any weight to Gaskin and Weir's expert opinions in its analysis of class certification. ECF No. 185.

On September 19, 2025, LeGrand requested leave to file a renewed motion for class certification. ECF No. 192. Abbott opposed the request. ECF No. 199. On October 10, 2025, the Court granted LeGrand's request to file a renewed motion. ECF No. 203. On October 13, 2025, LeGrand filed her instant Renewed Motion for Class Certification. ECF No. 205-3 ("Renew. Mot. Cert."). Because LeGrand does not indicate otherwise, the Court presumes that LeGrand moves to certify the same class as proposed in her original motion for class certification. *See generally id.* On November 7, 2025, Abbott filed an Opposition to the Renewed Motion for Class Certification. ECF No. 210-4 ("Def.'s Opp."). On November 21, 2025, LeGrand filed a Reply. ECF No. 217 ("Pl.'s Reply").

On November 7, 2025, Abbott filed its instant Motion *in Limine* to exclude the expert opinions of Gaskin and Weir. ECF No. 212 ("Def.'s Mot. Lim."). LeGrand submits supplemental declarations from Gaskin and Weir to support her Renewed Motion for Class Certification. *See* Supplemental Declaration of Steven P. Gaskin ("Gaskin Supp. Decl.") (ECF No. 204-1); Supplemental Declaration of Colin B. Weir ("Weir Supp. Decl.") (ECF No. 204-2). Gaskin and Weir again propose a model for calculating price premium damages for the putative class. Renew. Mot. Cert. at 2:17–25. Abbott seeks to exclude portions of Gaskin and Weir's Supplemental

Declarations that are related to price premium damages. Def.'s Mot. Lim. at 1:2–2:8. Abbott submits a Supplemental Expert Report from its damages expert, Michael Kheyfets. *See* ECF No. 212-2 ("Kheyfets Supp. Rep."). LeGrand filed an Opposition to Abbott's Motion *in Limine* on November 21, 2025. ECF No. 216 ("Pl.'s Opp., Mot. Lim."). Abbott filed a Reply on November 28, 2025. ECF No. 220 ("Def.'s Reply, Mot. Lim.").

On April 2, 2026, the Court heard oral argument on the instant Renewed Motion for Class Certification and Motion *in Limine*. ECF No. 228. At the hearing, the Court requested supplemental briefing on the following three questions: (1) Is LeGrand pivoting from the second amended complaint to a net impression theory?; (2) Can LeGrand do that in light of the preemption concerns?; and (3) If LeGrand is doing that, then does that introduce a *Comcast* damages fit problem because, short of full refund, there's no damages model? ECF No. 231 at 46:14–19 (Hearing Transcript from 4/2/2026). On April 30, 2026, LeGrand filed a Supplemental Brief. ECF No. 232 ("Pl.'s Supp. Br."). On May 28, 2026, Abbott filed a Supplemental Opposition. ECF No. 233 ("Def.'s Supp. Opp."). On June 11, 2026, LeGrand filed a Supplemental Reply. ECF No. 234 ("Pl.'s Supp. Reply").

## III. MOTION IN LIMINE

Abbott moves to exclude expert opinion from two of LeGrand's expert witnesses, Gaskin and Weir, under Rule 702 and *Daubert*. ECF No. 212. Abbott argues that the experts' opinions related to price premium damages are inadmissible because the proffered damages model is unreliable and irrelevant. Def.'s Mot. Lim. at 1:2–2:8.

### A. Legal Standard

When evaluating class certification, a "court may consider whether the plaintiff's proof is, or will likely lead to, admissible evidence." *Sali v. Corona Regional Medical Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). Moreover, when an expert's testimony in support of class certification is challenged, "a district court should evaluate admissibility under the standard set forth in *Daubert*." *Id*. However, "admissibility must not be dispositive. Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id*.

**B. Federal Rule of Evidence 702 and *Daubert***

The Federal Rules of Evidence allow a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). The proponent of expert testimony must demonstrate by a preponderance of evidence "that the proffered testimony meets the admissibility requirements" of Rule 702. Fed. R. Evid. 702, Adv. Comm. Notes (2023).

Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1018 (emphasis in original). Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702. Relevance, in turn "means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (quotation omitted). Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* at 564 (alteration added). In this role, the "judge is a gatekeeper, not a fact finder," and the "gate [should] not be closed to [a] relevant opinion offered with sufficient foundation by one qualified to give it." *Id.* at 568 (alteration added) (cleaned up).

The purpose of the Court's gatekeeping role is to ensure that expert testimony is "properly

grounded, well-reasoned and not speculative." Fed. R. Evid. 702, Adv. Comm. Notes (2000) (quoting *Daubert*, 509 U.S. at 595). However, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Teradata Corp. v. SAP SE*, 124 F.4th 555, 566 (9th Cir. 2024) (quoting *Primiano*, 598 F.3d at 564). Thus, "[a]fter an expert establishes admissibility to the judge's satisfaction, challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014); *see also* Fed. R. Evid. 702, Adv. Comm. Notes (2000) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'") (quotation omitted).

**C. Discussion**

Abbott moves to exclude opinions from Gaskin and Weir relating to price premium damages and requests that the Court not consider these opinions in deciding the Renewed Motion for Class Certification. Def.'s Mot. Lim. at 2:5–8. Abbott argues that the experts' proposed damages model is inadmissible because (1) it does not account for all eleven Challenged Statements yet LeGrand refuses to narrow her claims; (2) "two of the selected 'primary' statements that Mr. Gaskin proposes testing never appeared on the at-issue Ensure labels, and [LeGrand] does not challenge them in her operative Complaint"; and (3) it is incapable of calculating a price premium because it assumes "that prices would be the same in the but-for world as in the real world" and it does not account for key distinctions between purchasers. *Id.* at 1:1–2:8.

Gaskin is an independent survey expert who holds a Master's Degree in Management from Massachusetts Institute of Technology. Gaskin Decl. ¶ 1. He has served as an expert witness in several legal disputes and has authored several conference presentations on conjoint analysis. *Id.* ¶ 2. Weir is President at a research and consulting firm who holds a Master's Degree in Business Administration from Northeastern University. Weir Decl. ¶ 1. He has provided expert testimony in several legal disputes and has expertise in the design, execution, and determination of the

economic suitability of conjoint surveys. *Id.* ¶¶ 1–2. Abbott does not challenge the qualifications of either Gaskin or Weir. *See generally* Def.'s Mot. Lim.

Together, the two experts propose a conjoint analysis for measuring price premium damages in this case. ECF No. 166 at 1:1–21. LeGrand describes the proposed methodology as follows:

> First, Gaskin will conduct a conjoint survey to measure the portion of the overall price of Ensure attributable to certain representations and omissions on the Ensure label that convey the product is healthy and nutritious. Second, Weir will multiply the percentage consumers overpaid by the total sales to arrive at an aggregate overpayment for the Class.

*Id.* at 1:23–28.

Previously, the Court found that LeGrand's proposed damages model was unreliable because LeGrand failed to show how it could practically account for all the Challenged Statements. Class Cert. Order at 10. Abbott argues that LeGrand's proposed model fails again because it "still does not test all the Challenged Statements." Def.'s Mot. Lim. at 6:9–23. LeGrand contends that Gaskin need only test a subset of the Challenged Statements because "the selected representations act as a proxy for the advertising message that consumers take away from the entire label and [Abbott's] long-term marketing campaign." Pl.'s Opp., Mot. Lim. at 3:19–4:23.

At class certification, "[p]laintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1032 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025). However, "an underdeveloped expert model is far less likely to be able to establish that a particular element is susceptible to common proof." *Id.* at 1029 n.5. For an unexecuted model to establish predominance, it "must chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case." *Id.* at 1032.

In his supplemental declaration, Gaskin explains that he plans to

> assess the market price premia, if any, (measured in dollars and/or percentage terms) associated with the overall advertising message(s) allegedly conveyed for Ensure Original Nutrition Shakes, Ensure

> Complete Nutrition Shakes, and Ensure Plus Nutrition Shakes that they provide healthy, complete, and balanced nutrition.

Gaskin Supp. Decl. ¶ 9. To accomplish this goal, Gaskin designed three surveys—one for each of the Challenged Products—that will assess "the marketing message conveyed by the labeling and its elements," as identified in the SAC. *Id.* ¶¶ 12–13 (citing SAC ¶¶ 14, 17, 19–20). Each survey will analyze two statements from the Ensure label.[7] *Id.* ¶¶ 14–16. For Ensure Original, Gaskin will analyze "Complete, Balanced Nutrition® - for everyday health" and "#1 Doctor Recommended Brand." *Id.* ¶ 14. For Ensure Complete, Gaskin will analyze "Complete, Balanced Nutrition®" and "#1 Doctor Recommended Brand." *Id.* ¶ 15. And for Ensure Plus, Gaskin will analyze "#1 Doctor Recommended Brand" and "Calories to help gain or maintain a healthy weight." *Id.* ¶ 16. The survey results will then enable Gaskin to "estimate the market price premium, if any, (measured in dollars and/or percentage terms), resulting from each advertising message element, meaning the difference in market value of Class Products with each element compared to the market value of the Class Products without each element." *Id.* ¶ 19; *see also id.* ¶ 20 ("For each survey, the results will be relied upon to draw inferences about the market price premium attributable to each advertising message element at issue[.]"). According to Gaskin, "[t]esting a subset of the misrepresentations that convey the overall challenged advertising message is a reasonable approach because the elements of a product package often convey the same intended takeaway message." *Id.* ¶ 35.

Abbott's damages expert, Kheyfets, criticizes Gaskin's proposed methodology because it ignores most of the Challenged Statements and tests only a limited subset. Kheyfets Supp. Rep. ¶ 6. Kheyfets opines that while Gaskin plans to measure the price premium for certain Challenged Statements, "there is no basis to assert that they—either individually or together—would represent the value of any other claim that was not shown in the survey, or of some undefined 'overall message' that was also not shown." *Id.* ¶¶ 13, 18. In Kheyfets's opinion, Gaskin does not explain how damages would be assessed for Challenged Statements not analyzed in Gaskin's survey. *Id.* ¶

[7] Gaskin will also separately assess the reduction in market value by analyzing omitted "corrective facts." Gaskin Supp. Decl. ¶¶ 9, 17. However, Gaskin's proposed model involving corrective facts is not material to the Court's analysis here.

19. Nor does Gaskin define, present in his survey, or explain how damages would be assessed for a misleading "overall message." *Id.* ¶¶ 9–13, 17–19. In sum, Kheyfets opines:

> The methodology Mr. Gaskin has outlined in his Supplemental Declaration will not (and does not purport to be able to) generate any 'price premium' associated with each of [LeGrand's] claims individually, or all of them combined. This means there is [a] missing link between [LeGrand's] allegations and the results Mr. Gaskin claims his proposed methodology will generate. An economic model that cannot isolate the effect of the alleged conduct from the effects of other factors cannot reliably assess economic injury and damages.

*Id.* ¶ 20.

Here, the Court finds that LeGrand has not shown that the price premium damages model proposed by Gaskin and Weir is capable of reliably calculating classwide damages. The parties do not dispute whether a conjoint analysis could ever be used in a price premium damages model. *See Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530, 553 (N.D. Cal. 2021) ("In mislabeling cases where the injury suffered by consumers was in the form of an overpayment (or price premium) resulting from the alleged misrepresentation at issue, courts routinely hold that choice-based conjoint models that are designed to measure the amount of overpayment arising out of the alleged malpresentation at issue satisfy *Comcast*'s requirements."). The question is whether LeGrand's experts "will properly apply the method to the facts of the case." *Lytle*, 114 F.4th at 1033.

LeGrand argues that her experts' conjoint analysis satisfies *Comcast* because it measures "the value of the misleading message" conveyed by "Ensure's label as a whole"—that "Ensure is healthy and nutritious when it is not." Pl.'s Supp. Br. at 7:5–7, 11:12–27. She asserts that her SAC does not pivot "to a takeaway message theory" because the "case has always been about the net impression communicated by the label." *Id.* at 1:1–17. According to LeGrand, her conjoint model is reliable because it measures "only price premia associated with portions of the Ensure label that contribute to the challenged takeaway message" which will allow the jury to award "some portion of the purchase price, spanning from a nominal amount to a full refund." Pl.'s Supp. Reply at 6:8–11, 7:19–21.

There are several problems with LeGrand's attempt to match the proposed conjoint

United States District Court
Northern District of California

analysis to her current theory of injury. To start, this case has always involved individual misleading statements. As discussed above, LeGrand challenges several different labeling statements as false and misleading across the Challenged Products. SAC ¶¶ 12–21, 103–06; *see also* Def.'s Mot. Lim. at 2:10–12 ("[LeGrand] challenges 11 statements on three different Ensure products' labels[.]"); Kheyfets Supp. Rep. ¶ 4 ("[LeGrand] has challenged (i) *four* claims on the Ensure Original Nutrition Shake label, (ii) *three* claims on Ensure Plus Nutrition Shake label, and (iii) *eight* claims on Ensure Complete Nutrition Shake label as being allegedly misleading.") (emphasis in original). And the Court's prior rulings on Abbott's motions to dismiss focused on whether particular Challenged Statements were preempted as nutrient content claims. *See* ECF Nos. 33, 154. LeGrand asserts that she "does not challenge individual representations on the Ensure label, *per se*, but instead challenges the overall message conveyed by the label that Ensure is healthy and nutritious." Renew. Mot. Cert. at 14:10–19; *see* Pl.'s Supp. Br. at 2:10–13 ("the case is and always has been a deceptive advertising case challenging the advertised purpose of Ensure, as communicated by the product label as a whole"). It is true that LeGrand alleges that all Challenged Statements are false and misleading "both individually and in combination," and that the "label claims, and the context of the labels as a whole," are misleading. SAC ¶¶ 14, 17, 19–20, 108; *but see id.* ¶ 169 (alleging breach of express warranty based on specific Challenged Statements). As such, the allegations could support challenges to both individual label statements and the overall message conveyed by the label as a whole.

But even if LeGrand is now only pursuing a net impression theory, she fails to show how her proposed conjoint analysis can reliably calculate damages. Under that theory, LeGrand must proffer a damages model that accounts for Abbott's alleged wrongdoing in communicating a misleading overall message based on the Ensure label as a whole. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (explaining that to establish predominance, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability"). This LeGrand fails to do.

First, LeGrand fails to explain how the conjoint model will *not* include damages from preempted label statements. While the parties agree that LeGrand may use preempted statements

for purposes other than liability, Abbott is correct that she may not include those statements as a basis for liability. Def.'s Supp. Opp. at 7:1–9:12; Pl.'s Supp. Reply at 2:9–5:16. Indeed, the Court previously explained that LeGrand may not rely on preempted statements "to argue that the advertising for Ensure products is misleading because it suggests the products are healthy despite unhealthy added sugar." ECF No. 33 at 15. LeGrand argues that she "does not challenge any content nutrient claim," but only challenges the takeaway message which is not preempted by the presence of label statements that are individually preempted. Pl.'s Supp. Reply at 3:3–4:13. But LeGrand does not explain *how* the proposed conjoint analysis will measure damages from the label as a whole without including damages stemming from preempted statements. Def.'s Supp. Opp. at 13:20–21.

Second, LeGrand fails to explain how the conjoint model will measure damages from an overall misleading message conveyed by the Ensure label as a whole. LeGrand argues that her experts' conjoint model "proposes using certain specific non-preempted label statements as proxies for the takeaway message." Pl.'s Supp. Reply at 4:8–13; *see also* Pl.'s Reply at 4:20–5:2 (arguing LeGrand is not required to narrow her liability claims when "choosing, for manageability or other strategic reasons, to measure the price premium associated with a subset of the challenged statements"); Pl.'s Opp., Mot. Lim. at 7:24–8:5 (citing Gaskin Supp. Decl. ¶ 70) ("Gaskin's conjoint measures the price premium associated with the advertising message by using some of the prominent label components that help convey the overall message, yielding an estimate of the market price premium, if any, associated with the alleged marketing message."). To be sure, Gaskin has clarified the exact number of surveys that he will conduct and which Challenged Statements he will analyze. *See* Gaskin Supp. Decl. ¶¶ 12–16. But it is unclear how Gaskin's price premium calculations from two Challenged Statements can reliably be used to value damages from the alleged misleading "takeaway message" of the label as a whole. Def.'s Supp. Opp. at 9:13–17, 11:8–13:4.

The Court agrees with LeGrand that her experts' methodology is sound to the extent that it asserts the amount of overpayment attributed to a given Challenged Statement represents the price premium for that statement which in turn equates to the measure of damages for that statement.

*See* Pl.'s Supp. Reply at 8:1–2 ("Abbott does not identify any reliability issue with Gaskin's conjoint of the statements tested."); *cf. Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 865 (9th Cir. 2025). But with price premia calculated for only two of the Challenged Statements, how will LeGrand measure damages for the overall message? *See* Def.'s Mot. Lim. at 6:16–23; Def.'s Supp. Opp. at 11:8–13:4. Will she just use the price premium from one of the tested statements to value untested statements? Abbott's expert says that will not work. *See* Kheyfets Supp. Rep. ¶¶ 13, 18. It is possible that data gathered for one statement can be used to generate a price premium for an untested statement; however, the Court cannot evaluate that possibility because neither LeGrand nor Gaskin explain *how* Gaskin's method would accomplish that task. *See* Def.'s Supp. Opp. at 12:20–26 ("[LeGrand] offers *zero* record evidence supporting her claim that the subset of statements her expert would attempt to value are a reliable proxy for other statements or the label as a whole.") (emphasis in original).

Simply put, Gaskin states that he will measure price premia for "each misrepresentation"; he does not describe how these figures will be used to compute a price premium for an overall message. Def.'s Reply, Mot. Lim. at 3:10–21 (citing Gaskin Supp. Decl. ¶¶ 19–20, 27, 32, 63–64, 66, 70). If LeGrand planned to calculate a price premium for the marketing message using *only* the price premia from the Challenged Statements analyzed by Gaskin, then the proposed model would seemingly "chart out a path to obtain all necessary data" to assess damages based on an overall message. *Lytle*, 114 F.4th at 1032. Yet that is not the case; instead, LeGrand's proposed model is devoid of any methodology for determining the harm caused by "the message conveyed by the Ensure label." Pl.'s Opp., Mot. Lim. at 9:9–16. Therefore, because LeGrand's proposed damages model cannot practically account for the alleged misleading overall message, she has failed to show "that the model will be able to reliably calculate damages in a manner common to the class at trial." *Lytle*, 114 F.4th at 1024; *cf. Vizcarra*, 339 F.R.D. at 555 (rejecting expert's testimony where expert's "failure to isolate the price premium caused by the [alleged misrepresentations] renders his proposed conjoint study incapable of measuring damages that are consistent with [plaintiff's] theory of liability").

Accordingly, the Court finds that the opinions from Gaskin and Weir relating to price

United States District Court
Northern District of California

premium damages are unreliable and declines to give them weight in its analysis of class certification. Given the Court's ruling, it need not address Abbott's remaining arguments.

**D. Conclusion**

For the reasons stated above, the Court **GRANTS** Abbott's Motion *in Limine*.

## IV. RENEWED MOTION FOR CLASS CERTIFICATION

The Court previously denied class certification because LeGrand failed to show that common questions of law and fact predominate as required by Rule 23(b)(3).[8] Class Cert. Order at 10–11, 17. Therefore, the Court confines its analysis to whether LeGrand establishes predominance in her renewed motion.

Abbott contends that LeGrand fails to establish predominance as to damages, deception, uniform exposure, reliance, and unjust enrichment. Def.'s Opp. at 1:1–3:5. LeGrand responds that she establishes predominance as to all the areas identified by Abbott. *See generally* Pl.'s Reply.

In sum, the Court concludes that because LeGrand still cannot establish predominance as to damages, LeGrand has not met the requirements of Rule 23(b)(3). Therefore, class certification is not warranted.

**A. Legal Standard**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). Plaintiffs must "affirmatively demonstrate" compliance with Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs "bear[] the burden of demonstrating that [they] have met each of the four requirements of Rule 23(a) and at

[8] As a threshold matter, the parties dispute the scope of the Court's prior order. Abbott correctly notes that because the Court found that LeGrand failed to establish predominance as to damages, the Court did not reach Abbott's other arguments regarding predominance. *See* Def.'s Opp. at 1:18–23, 6:16–17, n.3; Class Cert. Order at 16–19. Therefore, LeGrand is incorrect that Abbott tries "to rehash other arguments already decided by the Court." Pl.'s Reply at 1:2–11. However, because the Court again concludes that LeGrand fails to establish predominance as to damages, the Court need not reach Abbott's remaining arguments on predominance. To be clear, the Court does not express any opinion on whether LeGrand can establish predominance as to deception, uniform exposure, reliance, and unjust enrichment. *See* Def.'s Opp. at 1:1–3:5.

least one subsection of Rule 23(b)." *Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (alteration added). Rule 23(a) has four explicit requirements: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a).

If all four Rule 23(a) prerequisites are satisfied, the Court must also find that plaintiffs "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)" to order class certification. *Comcast*, 569 U.S. at 33. Here, LeGrand seeks certification under Rule 23(b)(3). Renew. Mot. Cert. at 1:15–16. Rule 23(b)(3) permits certification if the Court finds "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3).

"[A] court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 465–66 (2013) (cleaned up). Although "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage, merits questions may be considered to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. at 466 (cleaned up). A court has broad discretion to certify the class if it finds a plaintiff meets their burden of proof. *Zinser*, 253 F.3d at 1186.

## B. Predominance

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*, 569 U.S. at 34. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459 (emphasis in original). Plaintiffs "must marshal facts showing, by a preponderance of the evidence, that class issues predominate." *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th

United States District Court
Northern District of California

Cir. 2024).

LeGrand argues that two damages models are sufficient under her liability theory that "Abbott deceptively advertises Ensure as healthy and nutritious." Renew. Mot. Cert. at 4:13–6:23. She asserts that her "damages models, providing a range from a price premium to full refunds," satisfy *Comcast* because they "measure the amount a reasonable consumer would have paid for Ensure absent the deceptive advertising." *Id.* at 6:12–23; Pl.'s Supp. Br. at 10:18–11:11. Abbott contends that LeGrand fails to establish predominance as to damages because both of her proffered classwide damages models fail under *Comcast*. Def.'s Opp. at 7:7–18 (citing *Comcast*, 569 U.S. at 27); Def.'s Supp. Opp. at 9:13–15:16.

A plaintiff must show that "damages are capable of measurement on a classwide basis"; predominance is absent where "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Comcast*, 569 U.S. at 34. A plaintiff's proposed damages model "must measure only those damages attributable to" their liability theory. *Id.* at 35. Therefore, "[t]he first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." *Id.* at 38 (cleaned up).

For reasons discussed below, the Court finds that LeGrand has not established predominance as to damages.

**1. Full-Refund Damages Model**

The Court previously held that LeGrand cannot establish predominance with a full-refund damages model because she has not shown that she can present evidence that the Challenged Products were devoid of value to putative class members. Class Cert. Order at 17–19. Apparently taking little guidance from the Court's first order denying class certification, LeGrand continues to insist that a full refund is available even where "the product has some value." Renew. Mot. Cert. at 2:6–16, 7:1–11:11; *see also* Def.'s Opp. at 7:19–11:2 ("Now LeGrand asks the Court to reconsider that ruling. But nothing has changed on either the facts or the law.").

The UCL, FAL, and CLRA "authorize a trial court to grant restitution to private litigants asserting claims under those statutes." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006). Under California law, "[a] full refund *may* be available in a UCL case when the

plaintiffs prove the product had *no* value to them." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015) (emphasis in original); *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) (explaining that restitution is equal to the difference between what the plaintiff paid and the value the plaintiff received in return). But the price premium "is the standard measure of damages under the CLRA and of restitution under the FAL and UCL." *Noohi*, 146 F.4th at 865.

Here, because LeGrand proffers no evidence that that the Challenged Products were devoid of value to putative class members, the Court once again finds that LeGrand's proposed full-refund damages model is not capable of measuring classwide damages. Legrand's cited cases do not compel a different conclusion. LeGrand cites *F.T.C. v. Figgie Int'l, Inc.* and *Montera v. Premier Nutrition Corp.* for the proposition that under Ninth Circuit caselaw, "a full refund is appropriate where the product is valueless for its primary advertised purpose." Renew. Mot. Cert. at 2:6–16, 7:10–21, 9:5–20 (citing *Figgie*, 994 F.2d 595 (9th Cir. 1993); *Montera*, 111 F.4th 1018 (9th Cir. 2024)). *Figgie* involved claims brought under the FTC Act and *Montera* involved claims brought under New York state law. *See Figgie*, 994 F.2d at 598; *Montera*, 111 F.4th at 1025. But here, LeGrand's claims are governed by California state law. *See* SAC ¶¶ 132–200. It is axiomatic that a federal court sitting in diversity must apply California substantive law to claims arising under California law. *See In re Cnty. of Orange*, 784 F.3d 520, 523–24 (9th Cir. 2015) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). Thus, the Court must apply California law to LeGrand's claims—not federal unfair competition law and not New York state law.

In sum, LeGrand has pointed to no authority—and the Court is aware of none—holding that California law permits consumers to receive a full refund for a food product they derived some benefit from. *See, e.g., In re Tobacco Cases II*, 240 Cal. App. 4th at 802 ("While a full refund may be proper when a product confers *no* benefit on consumers, such is not the scenario here.") (emphasis in original); *Bruton v. Gerber Prods. Co.*, No. 12-cv-02412-LHK, 2018 WL 1009257, at *9 (N.D. Cal. Feb. 13, 2018) (rejecting full refund model for claims under California law "because it assumes consumers received no benefit from purchasing the products, and this cannot be the case, as consumers received benefits in the form of calories, nutrition, vitamins, and

United States District Court
Northern District of California

minerals"); *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 639 (S.D. Cal. 2015) (explaining full refund not appropriate in food misbranding cases because "[f]ood cases involve a tangible product obtained for sustenance" and "food products have intrinsic value even when stripped of some advertised quality"); *contra Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 898–99 (N.D. Cal. 2016) (allowing full refund model where product at issue was a dietary supplement and not a food product "expressly for consumption, flavor, and hydration").

LeGrand's argument that the "jury is free to find, based on the evidence, that Ensure is valueless for its primary advertised purpose of healthy nutrition" fails. Pl.'s Supp. Reply at 9:5–11. It is the Court, not the jury, that decides what law applies to the facts of a case. A jury cannot award damages on LeGrand's state law claims that are precluded under California law.

Accordingly, LeGrand cannot establish predominance with a full-refund damages model.

**2. Price Premium Damages Model**

The Court previously held that LeGrand cannot establish predominance with a price premium damages model after excluding her experts' declarations on the subject. Class Cert. Order at 19. LeGrand argues that she assuages the Court's concerns, as expressed in the first certification order, and demonstrates that "Gaskin's proposed conjoint analysis measures the price premium associated with Abbott's misleading advertising." Renew. Mot. Cert. at 13:1–16:24. Abbott counters that LeGrand's price premium model fails because (1) after discounting LeGrand's expert testimony, she "has no evidence whatsoever supporting her price premium theory as a means to calculate classwide damages"; and (2) "LeGrand's price premium model fails to calculate classwide damages from her chosen theory of liability because it does not account for the price effect of non-challenged labeling statements or of Abbott's non-label Ensure advertising." Def.'s Opp. at 11:3–13:10.

Here, the Court finds that LeGrand's proposed price premium damages model is not capable of measuring classwide damages. As discussed above, the Court declines to give weight to LeGrand's proffered expert testimony regarding their opinions on a proposed price premium model. Therefore, LeGrand has not proffered any evidence that a price premium model establishes predominance as to damages. *See Bruton*, 2018 WL 1009257, at *9 (rejecting price

premium model because expert "has no way of linking the price difference, if any, to the allegedly unlawful or deceptive label statements"). Given the Court's ruling, it need not address Abbott's remaining arguments.

Accordingly, LeGrand cannot establish predominance with a price premium damages model.

### C. Conclusion

For the reasons stated above, the Court **DENIES WITH PREJUDICE** LeGrand's Renewed Motion for Class Certification.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES WITH PREJUDICE** LeGrand's Renewed Motion for Class Certification and **GRANTS** Abbott's Motion *in Limine*.

**IT IS SO ORDERED.**

Dated: September 25, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California